Nos. 25-1555 through 25-1578; 25-1580 through 25-1593; 25-1676; and 25-1677 (Consolidated)

# In the United States Court of Appeals for the Third Circuit

ATLAS DATA PRIVACY CORP., as assignee of individuals who are Covered Persons, *et al.*,

*Plaintiffs-Appellees*,

*v.*

WE INFORM LLC, *et al.*,

*Defendants-Appellants.*

On Appeal from the Order and Memorandum of the United States District Court for the District of New Jersey, dated November 26, 2024

**BRIEF OF *AMICI CURIAE*
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
AND REPORTERS COMMITTEE FOR FREEDOM OF THE
PRESS IN SUPPORT OF APPELLANTS**

ARLEIGH P. HELFER
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
arleigh.helfer@thefire.org

*Counsel for* Amici Curiae

## RULE 26.1 DISCLOSURE STATEMENT

*Amici Curiae* Foundation for Individual Rights and Expression (FIRE) and Reporters Committee for Freedom of the Press (RCFP), nonprofit organizations, state that they have no parent companies, subsidiaries, or affiliates, and do not issue shares to the public.

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURE STATEMENT ................................................. i

TABLE OF AUTHORITIES ................................................................ iii

INTEREST OF *AMICI CURIAE* ............................................................ 1

INTRODUCTION ................................................................................. 3

ARGUMENT ....................................................................................... 8

I.    DANIEL'S LAW IS A CONTENT-BASED SPEECH
      RESTRICTION PROPERLY SUBJECT TO STRICT
      SCRUTINY. ............................................................................... 8

II.   THE DISTRICT COURT ERRED WHEN IT
      REJECTED STRICT SCRUTINY IN FAVOR OF A
      LESS RIGOROUS TEST BASED ON PRIVACY. ......................... 11

III.  THE DISTRICT COURT CIRCUMVENTED
      SUPREME COURT PRECEDENT DISFAVORING
      SPEECH RESTRICTIONS THAT IMPOSE STRICT
      LIABILITY. ............................................................................. 16

CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Atlas Data Priv. Corp. v. We Inform, LLC,*
  Civ. A. No. 24-4037, 2024 WL 4905924 (D.N.J. Nov. 26, 2024)...passim

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
  591 U.S. 610 (2020) ................................................................ 12

*Brown v. Ent. Merchs. Ass'n,*
  564 U.S. 786 (2011) ............................................................. 6, 9

*Counterman v. Colorado,*
  600 U.S. 66 (2023) ................................................................ 18

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC,*
  518 U.S. 727 (1996) ............................................................ 2, 6

*Elonis v. United States,*
  575 U.S. 723 (2015) .............................................................. 18

*First Nat'l Bank of Bos. v. Bellotti,*
  435 U.S. 765 (1978) ................................................................ 6

*Hill v. Colorado,*
  530 U.S. 703 (2000) .............................................................. 10

*Madsen v. Women's Health Ctr., Inc.,*
  512 U.S. 753 (1994) .............................................................. 10

*Police Dep't of Chi. v. Mosley,*
  408 U.S. 92 (1972) .................................................................. 6

*R.A.V. v. City of St. Paul,*
  505 U.S. 395 (1992) .............................................................. 10

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ......................................................passim

*Reno v. ACLU,*
  521 U.S. 844 (1997) ................................................................ 6

*Romaine v. Kallinger*,
 537 A.2d 284 (N.J. 1988) ................................................... 19, 20

*Sable Commc'ns of Cal., Inc. v. FCC*,
 492 U.S. 115 (1989) ................................................................ 6

*Schrader v. Dist. Att'y of York Cnty.*,
 74 F.4th 120 (3d Cir. 2023) ..........................................passim

*Smith v. California*,
 361 U.S. 147 (1959) .......................................................... 16, 17

*Smith v. Daily Mail Publishing Co.*,
 443 U.S. 97 (1979) .............................................................. 11

*Sorrell v. IMS Health Inc.*,
 564 U.S. 552 (2011) .............................................................. 8

*The Florida Star v. B.J.F.*,
 491 U.S. 524 (1989) ................................................... 7, 11, 13

*U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*,
 489 U.S. 749 (1989) ............................................................. 14

*United Food & Com. Workers Int'l Union v. IBP, Inc.*,
 857 F.2d 422 (8th Cir.1988) ................................................. 19

*United States v. Playboy Ent. Grp., Inc.*,
 529 U.S. 803 (2000) .............................................................. 9

*United States v. X-Citement Video, Inc.*,
 513 U.S. 64 (1994) .............................................................. 18

*Video Software Dealers Ass'n v. Webster*,
 968 F.2d 684 (8th Cir. 1992) ............................................... 19

*Virginia v. Am. Booksellers Ass'n, Inc.*,
 484 U.S. 383 (1988) ............................................................ 19

*Ysursa v. Pocatello Educ. Ass'n*,
 555 U.S. 353 (2009) .............................................................. 9

## Statutes

2020 N.J. Laws ch. 125 ................................................................... 3

N.J. Stat. Ann. § 2C:30-31.1 ........................................................ 3

N.J. Stat. Ann. § 47:1-17 ............................................................... 3

N.J. Stat. Ann. § 56:8-166.1 ................................................... 3, 18

N.J. Stat. Ann. § 56:8-166.3 ........................................................ 12

## Other Authorities

Nate Raymond, *Judge's Criticism of US Supreme Court's Alito over Flags Is Deemed Improper*, Reuters (Dec. 17, 2024, 6:52 P.M.), https://www.reuters.com/legal/government/judges-criticism-us-supreme-courts-alito-over-flags-is-deemed-improper-2024-12-17 ...... 15

## INTEREST OF *AMICI CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended the rights of individuals through public advocacy, strategic litigation, and participation as *amicus curiae* in cases that implicate expressive rights under the First Amendment. In 2022, FIRE expanded its public advocacy beyond the university setting and now defends First Amendment rights both on campus and in society at large. *See, e.g.*, *Texas A&M Queer Empowerment Council v. Mahomes*, Civ. A. No. 25-992, 2025 WL 895836 (S.D. Tex. Mar. 24, 2025); *Flores v. Bennett*, No. 22-16762, 2023 WL 4946605 (9th Cir. Aug. 3, 2023). In doing so, it represents speakers without regard to their political views in lawsuits across the United States, including in matters involving government attempts to regulate speech in the name of personal safety

---

[1] No counsel for a party authored this brief in whole or in part. Further, no person, other than *amici*, their members, or their counsel contributed money intended to fund this brief's preparation or submission. *Amici* sought consent to the filing of this brief. The New Jersey Office of Attorney General consented. *Amici* did not hear back from counsel for Plaintiffs.

or privacy. *See, e.g.*, *NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024); *Volokh v. James*, 656 F. Supp. 3d 431 (S.D.N.Y. 2023).

FIRE has a strong interest in preserving the robust protection for freedom of expression secured by the United States Supreme Court's First Amendment jurisprudence, even when the government invokes those interests. FIRE files this brief in support of Appellants because in rejecting strict scrutiny, the decision below fails to adhere to the "strict categorical rules" that "keep[] the starch in the standards" protecting our freedom of speech. *Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*, 518 U.S. 727, 774 (1996) (Souter, J., concurring).

The Reporters Committee for Freedom of the Press is an unincorporated nonprofit association. The Reporters Committee was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources. Today, its attorneys provide pro bono legal representation, *amicus curiae* support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

# INTRODUCTION

New Jersey's Daniel's Law is a statute with a laudable purpose but also significant constitutional flaws that the district court erroneously excused by treating it as a privacy law. In 2020, a disgruntled attorney found U.S. District Judge Esther Salas's home address online, armed himself then went to her home, and there wounded her husband and murdered her son, Daniel Anderl. In response to this shocking crime, New Jersey's legislature enacted Daniel's Law, which aims to protect certain public officials and their immediate families living with them.[2]

Daniel's Law allows any "covered person"—mainly judges, law enforcement officers, certain other public officials, and their immediate family members in the same household—to send a written "notification" to any person, business or association, which, within 10 days of receiving the notice, shall no longer "disclose or re-disclose on the Internet or otherwise make available" the covered person's "home address or unpublished home telephone number." N.J. Stat. Ann. § 56:8-166.1(a)(1), (d). The law allows private lawsuits to enforce this prohibition and

---

[2] 2020 N.J. Laws ch. 125 (codified at N.J. Stat. Ann. §§ 2C:30-31.1, 47:1-17, :1A-1.1, .5, 56:8-166.1 to .3).

requires awards of actual or liquidated civil damages to successful plaintiffs. It also carries potential criminal liability. The law imposes these restrictions despite the general availability of covered persons' information from the government and public records, which the law leaves intact.

Atlas Data Privacy Corporation gathered assigned claims from almost 20,000 covered persons under Daniel's Law, sent thousands of notices to businesses to depublish its assignees' information, and brought dozens of lawsuits simultaneously against those who failed to comply. In a consolidated motion to dismiss, Defendants (now Appellants) argued in part that Daniel's Law unconstitutionally infringed their rights of free speech under the First and Fourteenth Amendments as a content-based restriction. The district court agreed Daniel's Law is a content-based restriction on speech, which normally draws receives strict scrutiny, but instead held it survived judicial review under lesser scrutiny it believed applies to privacy laws, despite the statute's text characterizing itself as designed to enhance the safety of covered persons.

The district court erred in so holding. Even accepting its misperception of Daniel's Law as aiming to protect privacy rather than safety, there

is no general strict-scrutiny exception for privacy laws, as this Court illustrated in *Schrader v. District Attorney of York County*, 74 F.4th 120 (3d Cir. 2023). Daniel Anderl's murder was tragic, and our public officials deserve protection. But the Court cannot let the misguided sentiment that asserted government interests in privacy can allow content-based laws to receive lesser scrutiny to take root at the expense of the firm protections the First Amendment provides, and must instead reverse, apply strict scrutiny, and hold Daniel's Law unconstitutional.

## SUMMARY OF ARGUMENT

Daniel's Law is a content-based restriction of speech, and thus it must satisfy strict scrutiny. Only by keeping the starch in our constitutional standards—even when targeted speech may be of great concern—can we properly protect First Amendment rights. The Supreme Court has consistently required the government to meet a heavy burden when it regulates speech based on content for that good reason: "The essence of … forbidden censorship is content control. Any restriction on expressive activity because of its content would completely undercut the profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Police Dep't of Chi.*

*v. Mosley*, 408 U.S. 92, 95–96 (1972) (internal quotation marks and citation omitted).

When a court confronts a content-based restriction on speech, strict scrutiny is the proper standard of judicial review, as the Supreme Court has modeled time and again over the decades. *See, e.g.*, *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 786 (1978); *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989); *Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Legislative overreach in response to senseless tragedy may be understandable, even expected. Strict scrutiny ensures "that the inequities of the moment are subordinated to commitments made for the long run." *Denver Area Educ. Telecomms. Consortium, Inc.*, 518 U.S. at 785 (Kennedy, J., concurring in the judgment in part, and dissenting in part). When considering the constitutionality of a motivated legislature's chosen means to seemingly worthy ends, it is perhaps especially important for courts to remember that standards like strict scrutiny "mean little if they can be watered down whenever they seem too strong." *Id.*

Despite the longstanding application of strict scrutiny to content-based restrictions and its necessity to protect free speech, the district court refused to apply it here, despite correctly holding Daniel's Law is content-based, because, in the court's view, it restricts speech to advance privacy interests and is thus analyzed under the test in *The Florida Star v. B.J.F.*, 491 U.S. 524 (1989). But as this Court recently illustrated in applying strict scrutiny to a statute shielding the privacy of child abuse victims, there is no "privacy exception" to the requirement that content-based laws satisfy strict scrutiny. *See Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 126–28 (3d Cir. 2023).

The district court's misconstruction of Daniel's Law as a privacy statute also led it to commit the independent error of reading a scienter requirement into it, using mismatched New Jersey tort law. The Supreme Court broadly rejects content-based speech restrictions that lack scienter requirements as unconstitutional, because they can chill protected speech. The district court doubly erred when it read a scienter requirement into Daniel's Law to save it.

Where the statute on its face included no scienter requirement for standard offenses, the court erred by imposing one. And it further erred

by importing a negligence standard from an inapposite state common-law tort that does not apply to disclosure of information that is otherwise available to the public. This maneuver—like the court's conclusion that Daniel's Law is a privacy statute, and therefore subject to something less than strict scrutiny—waters down the vigilant protections the First Amendment requires for free speech.

## ARGUMENT

### I. DANIEL'S LAW IS A CONTENT-BASED SPEECH RESTRICTION PROPERLY SUBJECT TO STRICT SCRUTINY.

Daniel's Law must withstand strict scrutiny because it restricts the dissemination of home addresses or unpublished home phone numbers of covered persons, which is communicative content. The district court thus correctly concluded Daniel's Law is a content-based restriction on speech because it regulates speech based on subject matter or topic. *Atlas Data Priv. Corp. v. We Inform, LLC*, Civ. A. No. 24-4037, 2024 WL 4905924, at *6 (D.N.J. Nov. 26, 2024); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (holding dissemination of information is protected speech). And because Daniel's Law is content based, the court should have recognized it is a highly

disfavored, presumptively unconstitutional speech restriction that must withstand strict scrutiny's exacting demands. *Reed*, 576 U.S. at 163.

Strict scrutiny's vigilance is necessary to keep the government from censoring disfavored speech. Overcoming the presumption of invalidity of content-based regulation thus "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id*. at 171. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

Strict scrutiny is a nearly insurmountable hurdle. "It is rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (quoting *Playboy*, 529 U.S. at 818); *accord Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 366 (2009) (Breyer, J., concurring in part and dissenting in part) (observing that strict scrutiny is a "categorization that almost always proves fatal to the law in question"). This Court has described strict scrutiny as imposing a "daunting" burden on the government to

justify its content-based restriction of speech. *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023).

Content-based restrictions require strict scrutiny "because they place the weight of government behind the disparagement or suppression of some messages, whether or not with the effect of approving or promoting others." *Hill v. Colorado*, 530 U.S. 703, 735 (2000) (Souter, J., concurring). As Justice Scalia explained, "The vice of content-based legislation—what renders it deserving of the high standard of strict scrutiny—is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 794 (1994) (Scalia, J., concurring in the judgment in part and dissenting in part). The "danger of censorship presented by a facially content-based statute requires that that weapon be employed only where it is *necessary* to serve the asserted compelling interest." *R.A.V. v. City of St. Paul*, 505 U.S. 395, 382 (1992) (cleaned up) (citations omitted).

The district court refused to apply strict scrutiny because Daniel's Law seeks to enhance the safety of judges and other officials following the brutal murder of Mr. Anderl at his home. But salutary government

"motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech." *Reed*, 576 U.S. at 167.

The district court's holding that Daniel's Law is a "privacy" statute and thus not subject to strict scrutiny compromises the Supreme Court's rejection of content-based restrictions. Strict scrutiny is demanding for good reason. And regardless of whether Daniel's Law somehow protects privacy even when the purportedly private information at issue is available from the government in public records, the government's "benign motives" do not save Daniel's Law from strict scrutiny. *Id.* at 165. It may not be evaded because the speech restriction at issue is enacted in the name of public safety.

## II. THE DISTRICT COURT ERRED WHEN IT REJECTED STRICT SCRUTINY IN FAVOR OF A LESS RIGOROUS TEST BASED ON PRIVACY.

Rather than applying strict scrutiny to Daniel's Law, the district court erroneously concluded that—though content-based—it is a privacy statute akin to those issue in *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979). *Atlas Data Priv. Corp.*, 2024 WL 4905524, at *7–8. It did so despite the New Jersey

legislature itself justifying the statute as a public safety measure intended to "enhance the safety and security of certain public officials" and their immediate family members. N.J. Stat. Ann. § 56:8-166.3.

*Reed* makes no privacy-based exceptions for content-based restrictions: All content-based restrictions are subject to strict scrutiny. *Reed*, 576 U.S. at 167. By creating an exception to strict scrutiny for privacy concerns—and by applying the less rigorous analysis *Florida Star* and *Daily Mail* describe—the district court's decision circumvents the most important guardrail against content-based censorship.

Even if Daniel's Law were a privacy statute—which it is not, by its own terms—the Supreme Court has never stated that content-based statutes that protect privacy interests are exempt from strict scrutiny. In fact, it has made clear the opposite is true. *See, e.g., Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621–22 (2020) (applying strict scrutiny to content-based exception to the Telephone Consumer Protection Act, which protects privacy interests and, like Daniel's Law, allows private civil claims for statutory damages). This Court has proceeded accordingly, such as when it recently applied strict scrutiny to

a content-based speech restriction intended to protect privacy interests. *Schrader*, 74 F.4th at 120.

In *Schrader*, a deceased child's grandmother sought a declaratory judgment that Pennsylvania's statute prohibiting release of information in the state's child abuse database to unauthorized persons violated the First Amendment. *Id.* at 123. The Court explained that the government "encourages victims to report abuse by keeping their information private," *id.*, but nonetheless held the law was content-based—and thus strict scrutiny applied—because it restricted disclosure only of information about child abuse. *Id.* at 123, 127.

While the Court observed that states generally have a compelling interest in protecting child-abuse information from disclosure, it noted the strength of privacy interests "fades once information already appears on the public record." *Id.* at 127 (citing *Fla. Star*, 491 U.S. at 532 n.7). As in this case, where there is no dispute that information of public officials empowered to invoke Daniel's Law is generally available in other public records, *Atlas Data Privacy Corp.*, 2024 WL 4905924, at *9, the informa-

tion the grandmother sought to disclose was already publicly available. 74 F.4th at 127.[3]

As the *Schrader* Court explained—germane to this case—when "the government has failed to police itself in disseminating information, prosecuting someone who later publishes that information can hardly be said to be a narrowly tailored means of safeguarding confidentiality." *Id.* (quotation marks and citation omitted). Daniel's Law is even less protective of privacy: under it, the government intentionally—not accidentally—continues to make public records containing covered persons' "private" information generally available. It is difficult to see how a statute that prohibits third parties from republishing information the government continues to make publicly available materially advances any privacy interests.[4]

---

[3] The district court here concluded the availability of the "private" information in public records did not matter given the ostensive difficulty of visiting courthouses and other physical locations to obtain it. In support, it cited *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), a case decided before public records became available on the internet. It is doubtful the public record information now available from government websites is as difficult to obtain today as it was in pre-internet 1989.

[4] The Court in *Schrader* did note *Daily Mail*'s test might apply there because the state was attempting to prohibit republication of lawfully obtained truthful information. However, because the law was not nar-

Despite the clear applicability of this recent precedent, the district court did not consider *Schrader* when it held that strict scrutiny could not apply to Daniel's Law. Instead, it held the test in *Daily Mail* and *Florida Star* applies to all First Amendment cases ostensibly involving a privacy right. *Atlas Data Privacy Corp.*, 2024 WL 4905924, at *8.[5]

By first determining Daniel's Law is a privacy law rather than one designed to advance government interests in the safety of public officers, then applying *Florida Star*'s less-rigorous approach, the district court circumvented strict scrutiny's rigorous demands to save the statute from defendants' facial challenge. In light of the crucial role strict scrutiny

---

rowly tailored, as strict scrutiny analysis revealed, the Court held *Daily Mail* likewise would have prohibited the state from using the statute to punish the grandmother. 74 F.4th at 128.

[5] When applying the *Florida Star* test, the district court held public officials' home addresses are not matters of public concern because they have nothing to do with public oversight. This ignores the oversight need citizens may have to be able to view the homes of public officials, such as when Justice Alito's homes displayed an upside-down American flag and a flag associated with right-wing causes. *See, e.g.*, Nate Raymond, *Judge's Criticism of US Supreme Court's Alito over Flags Is Deemed Improper*, Reuters (Dec. 17, 2024, 6:52 P.M.), https://www.reuters.com/legal/government/judges-criticism-us-supreme-courts-alito-over-flags-is-deemed-improper-2024-12-17. Likewise, the home of a government official—or addresses of a public official's multiple homes—may be relevant to whether they are living beyond their means, suggesting possible illegal behavior or corruption.

plays in prohibiting censorship of speech, the court should not have reached to justify applying *Florida Star*. Where a statute prevents disclosure of speech that remains publicly available to anyone elsewhere, the state has no privacy interest to protect. *Schrader*, 74 F.4th at 127. Under such circumstances, it is proper to avoid undue censorship by forcing the state to justify its law under strict scrutiny.

## III. THE DISTRICT COURT CIRCUMVENTED SUPREME COURT PRECEDENT DISFAVORING SPEECH RESTRICTIONS THAT IMPOSE STRICT LIABILITY.

The Supreme Court has long been skeptical of speech restrictions that, like Daniel's Law, impose strict liability, holding them unconstitutional because of the chilling effect such statutes have. *See Smith v. California*, 361 U.S. 147 (1959). Just as the district court improperly concluded Daniel's Law is a privacy statute to save it from the rigors of strict scrutiny, it further erred when it improperly read a scienter requirement into Daniel's Law to save it. And even if reading a scienter requirement into the law was somehow proper, it was error to land on the purportedly analogous state tort unreasonable publication of private facts that—unlike Daniel's Law—does *not* allow recovery for publication of facts that are matters of public record.

16

In *Smith*, the Supreme Court reviewed an ordinance that made it unlawful for any person to possess an obscene or indecent writing but did not reference any scienter requirement. *Id*. at 148 & n.1. An offender faced imprisonment simply for possessing an obscene book in his store, even if he was unaware of its contents—in other words, the ordinance imposed strict liability.

The Supreme Court found that such an ordinance would tend to chill speech and promote self-censorship because of its lack of a scienter requirement. Booksellers would have to be aware of the contents of every volume in their shops to know they were safe from prosecution. Id. at 153–54. They would thus likely limit the number and variety of books they sell to only those they could personally scrutinize, which would in turn limit public access to protected non-obscene speech.

Although the ordinance in *Smith* regulated obscenity, not protected speech, the Court did not attempt to save it by reading a scienter requirement into it. Instead, it held the ordinance unconstitutional because of the chilling effects its strict liability regime would have on protected speech. *Id*. at 155.

More recently, the Court reaffirmed that scienter requirements are critical to avoid unconstitutional chill in statutes punishing speech. In *Counterman v. Colorado*, it explained that, in various contexts, the First Amendment precludes punishment unless the statute includes a mens rea standard of recklessness or actual intent. 600 U.S. 66, 75–82 (2023) (evaluating mens rea requirements and holding subjective standard of recklessness is required for punishment of "true threats"); *see also Elonis v. United States*, 575 U.S. 723 (2015); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994).

Like the ordinance in *Smith*, Daniel's Law has no facial scienter requirement. Instead, it requires courts to award liquidated damages of $1,000 to any covered person who provided notice to someone who, having received the notice, "discloses" the covered person's home address or telephone number or fails to unpublish it within ten days. N.J. Stat. Ann. § 56:8-166.1(c)(1). It makes no exceptions for negligent disclosures. In fact, to the extent the law includes a scienter requirement at all, it is only for the award of punitive damages, which are available for willful or reckless disregard of the law. Id. § 56:8-166.1(c)(2).

Aware of the Supreme Court's rulings holding speech restrictions

without scienter elements unconstitutional, the district court here took it upon itself to save Daniel's Law by reading a negligence mens rea standard into the law. *Atlas Data Priv. Corp.*, 2024 WL 4905924, at *11–12. That was reversible error. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) (explaining "we will not rewrite a state law to conform it to constitutional requirements"); *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 691 (8th Cir. 1992) (observing that where "there is no state court decision narrowing the statute," courts "lack authority to impose a narrowing construction") (citing *United Food & Com. Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 431 (8th Cir. 1988)).

The district court then compounded its earlier error of deeming Daniel's Law a privacy statute by importing a mens rea requirement from a state privacy tort that it mistakenly deemed analogous. Because strict liability would be unconstitutional, and because Daniel's Law already uses willfulness or recklessness for punitive damages for aggravated violations, the court held negligence applies to non-aggravated violations. To do so, it looked to the Supreme Court of New Jersey's decision in *Romaine v. Kallinger*, 537 A.2d 284, 291–92 (N.J. 1988), which involved

the common-law tort of invasion of privacy by unreasonable publication of private facts. *Atlas Data Priv. Corp.*, 2024 WL 4905924, at *12.

But *Romaine* is inapposite and not analogous. It was not addressing the tort's mens rea requirement—it simply described the cause of action called "invasion of privacy by unreasonable publication of private facts." That tort is distinguishable from Daniel's Law's imposition of liability for publication of phone numbers and home addresses because the tort does *not* allow recovery for publication of facts that are matters of public record, like the information at issue in this case: "If the facts are public information, even though they relate to matters of individual privacy, they cannot for these purposes be considered 'private.'" *Romaine*, 537 A.2d at 298. So not only does *Romaine* fail to support the District Court's mens rea analysis, but it also undermines the court's conclusion that Daniel's Law is analogous to a state law privacy tort in the first place.

## CONCLUSION

The district court's maneuvers to save Daniel's Law by determining it is a privacy statute subject to less stringent review than strict scrutiny and importing a scienter requirement found nowhere in the statute erode

the protections the Supreme Court requires under the First Amendment for content-based, strict liability speech restrictions.

For those reasons, this Court should reverse the district court's dismissal of the constitutional challenge to Daniel's Law.

Dated: April 21, 2025

/s/ *Arleigh P. Helfer*

ARLEIGH P. HELFER
*Counsel of Record*
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
arleigh.helfer@thefire.org

*Counsel for* Amici Curiae

## COMBINED CERTIFICATES

1. **Bar Membership.** Pursuant to L.A.R. 28.3(d), I certify that I am an attorney with filing privileges in the United States Court of Appeals for the Third Circuit.

2. **Type-Volume.** Pursuant to Fed. R. App. P. 29(a)(5), I certify that, according to the word-counting function of Microsoft Word for Mac, Version 16.95.4, this brief contains 3,941 words, including footnotes. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 14-point Century Schoolbook font.

3. **Paper copies.** I certify that the text of the electronic brief filed via ECF is identical to the text of the paper copies mailed to this Court.

4. **Virus check.** Pursuant to L.A.R. 31.1(c), I certify that I have caused a virus check to be performed using SentinelOne Singularity, and no virus was detected.

5. **Service.** I certify that on this date, I am causing this brief to be filed electronically via this Court's CM/ECF system. All participants are

registered CM/ECF users and service will be accomplished using the CM/ECF system.

Dated: April 21, 2025

/s/ *Arleigh P. Helfer*

Arleigh P. Helfer
*Counsel of Record*
Foundation for Individual
    Rights and Expression
510 Walnut Street, Suite 900
Philadelphia, PA 19106
Tel: (215) 717-3473
arleigh.helfer@thefire.org

*Counsel for* Amici Curiae