Nos. 25-1555 through 25-1578; 25-1580 through 25-1593; 25-1676; and 25-1677
(Consolidated)

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

ATLAS DATA PRIVACY CORP., AS ASSIGNEE OF INDIVIDUALS WHO ARE COVERED PERSONS; JANE DOE 1, A LAW ENFORCEMENT OFFICER; JANE DOE 2, A LAW ENFORCEMENT OFFICER; EDWINMAL DONADO; SCOTT MALONEY; JUSTYNA MALONEY; PATRICK COLLIGAN; PETER ANDREYEV; AND WILLIAM SULLIVAN,

PLAINTIFFS / APPELLEES,

*v.*

WE INFORM LLC, ET AL.

DEFENDANTS / APPELLANTS.

On Appeal from the United States District Court
for the District of New Jersey

## CERTIFICATION OF ACCURACY

I, Adam Shaw, am Liaison Counsel with regard to the preparation and filing of the transcript of the oral argument held on July 8, 2025 in the above-captioned matter. I certify that the transcript attached hereto is accurate, with all counsel having had an opportunity to review and to make corrections prior to this filing.

Dated: July 22, 2025          */s/ Adam Shaw*
                              Adam Shaw

**BOIES SCHILLER FLEXNER LLP**
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

*Counsel for Appellees*

                                                      Page 1

1                P E N N S Y L V A N I A   S T A T E:

2        THE ALBERT BRANSON MARIS COURTROOM (19TH FLOOR)

3    --------------------------------x

4    ATLAS DATA PRIVACY CORPORATION   :

5    AS ASSIGNEE OF INDIVIDUALS        :

6    WHO ARE COVERED PERSONS; ET AL.,:

7              Appellants,            :

8         v.                         : Case No. 25-1555

9    WE INFORM, LLC,                  :

10             Appellee.             :

11   --------------------------------x

12   ATLAS DATA PRIVACY CORPORATION   :

13   AS ASSIGNEE OF INDIVIDUALS        :

14   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1556

15             Appellants,            :

16        v.                         :

17   INFOMATICS, LLC,                 :

18             Appellee.             :

19   --------------------------------x

20

21

22

```
                                              Page 2
 1   ATLAS DATA PRIVACY CORPORATION  :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1557

 4             Appellants,            :

 5        v.                          :

 6   THE PEOPLE SEARCHERS, LLC,       :

 7             Appellee.              :

 8   -------------------------------x

 9   ATLAS DATA PRIVACY CORPORATION  :

10   AS ASSIGNEE OF INDIVIDUALS       :

11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1558

12             Appellants,            :

13        v.                          :

14   DM GROUP, INC.,                  :

15             Appellee.              :

16   -------------------------------x

17

18

19

20

21

22
```

Page 3

1  ATLAS DATA PRIVACY CORPORATION  :

2  AS ASSIGNEE OF INDIVIDUALS        :

3  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1559

4            Appellants,            :

5       v.                          :

6  DELUXE CORPORATION,              :

7            Appellee.              :

8  -------------------------------x

9  ATLAS DATA PRIVACY CORPORATION  :

10 AS ASSIGNEE OF INDIVIDUALS        :

11 WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1560

12           Appellants,            :

13      v.                          :

14 QUANTUM ALLIANCE, LLC, and       :

15 QUANTUM GROUP, LLC,              :

16           Appellees.             :

17 -------------------------------x

18

19

20

21

22

Page 4

1  ATLAS DATA PRIVACY CORPORATION  :

2  AS ASSIGNEE OF INDIVIDUALS      :

3  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1561

4           Appellants,            :

5       v.                         :

6  YARDI SYSTEMS, INC,             :

7           Appellee.              :

8  -------------------------------x

9  ATLAS DATA PRIVACY CORPORATION  :

10 AS ASSIGNEE OF INDIVIDUALS      :

11 WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1562

12          Appellants,            :

13      v.                         :

14 DIGITAL SAFETY PRODUCTS, LLC,   :

15          Appellee.              :

16 -------------------------------x

17

18

19

20

21

22

Page 5

1   ATLAS DATA PRIVACY CORPORATION   :

2   AS ASSIGNEE OF INDIVIDUALS        :

3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1563

4            Appellants,             :

5       v.                           :

6   CIVIL DATA RESEARCH, LLC,         :

7            Appellee.                :

8   -------------------------------x

9   ATLAS DATA PRIVACY CORPORATION   :

10  AS ASSIGNEE OF INDIVIDUALS        :

11  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1564

12           Appellants,             :

13      v.                           :

14  SCALABLE COMMERCE, LLC, AND       :

15  NATIONAL DATA ANALYTICS, LLC,     :

16           Appellee.                :

17  -------------------------------x

18

19

20

21

22

Page 6

```
 1  ATLAS DATA PRIVACY CORPORATION  :

 2  AS ASSIGNEE OF INDIVIDUALS       :

 3  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1565

 4              Appellants,          :

 5         v.                        :

 6  LABELS & LISTS, INC.,            :

 7              Appellee.            :

 8  --------------------------------x

 9  ATLAS DATA PRIVACY CORPORATION  :

10  AS ASSIGNEE OF INDIVIDUALS       :

11  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1566

12              Appellants,          :

13         v.                        :

14  INNOVIS DATA SOLUTIONS, INC.,    :

15              Appellee.            :

16  --------------------------------x

17

18

19

20

21

22
```

Page 7

```
 1   ATLAS DATA PRIVACY CORPORATION   :
 2   AS ASSIGNEE OF INDIVIDUALS       :
 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1567
 4              Appellants,           :
 5        v.                          :
 6   ACCURATE APPEND, INC.,           :
 7              Appellee.             :
 8   -------------------------------x
 9   ATLAS DATA PRIVACY CORPORATION   :
10   AS ASSIGNEE OF INDIVIDUALS       :
11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1568
12              Appellants,           :
13        v.                          :
14   ZILLOW, INC., AND ZILLOW GROUP, :
15   INC.,                            :
16              Appellee.             :
17   -------------------------------x
18
19
20
21
22
```

Page 8

```
 1   ATLAS DATA PRIVACY CORPORATION    :
 2   AS ASSIGNEE OF INDIVIDUALS        :
 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1569
 4             Appellants,            :
 5        v.                          :
 6   EQUAMINE, INC.,                   :
 7             Appellee.              :
 8   -------------------------------x
 9   ATLAS DATA PRIVACY CORPORATION    :
10   AS ASSIGNEE OF INDIVIDUALS        :
11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1570
12             Appellants,            :
13        v.                          :
14   THOMSON REUTERS CORPORATION,      :
15   THOMSON REUTERS CANADA LIMITED, :
16   THOMSON REUTERS ENTERPRISE        :
17   CENTER GMBH, AND WEST             :
18   PUBLISHING CORPORATION,           :
19             Appellee.              :
20   -------------------------------x
21
22
```

Page 9

1  ATLAS DATA PRIVACY CORPORATION  :

2  AS ASSIGNEE OF INDIVIDUALS      :

3  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1571

4          Appellants,            :

5      v.                         :

6  MELISSA DATA CORP.,             :

7          Appellee.              :

8  -------------------------------x

9  ATLAS DATA PRIVACY CORPORATION  :

10 AS ASSIGNEE OF INDIVIDUALS      :

11 WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1572

12         Appellants,            :

13     v.                         :

14 RESTORATION OF AMERICA AND      :

15 VOTER REFERENCE FOUNDATION, LLC,:

16         Appellee.              :

17 -------------------------------x

18

19

20

21

22

```
1   ATLAS DATA PRIVACY CORPORATION   :

2   AS ASSIGNEE OF INDIVIDUALS        :

3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1573

4            Appellants,             :

5        v.                          :

6   i360, LLC,                        :

7            Appellee.               :

8   -------------------------------x

9   ATLAS DATA PRIVACY CORPORATION   :

10  AS ASSIGNEE OF INDIVIDUALS        :

11  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1574

12           Appellants,             :

13       v.                          :

14  GOHUNT, LLC, GOHUNT MANAGEMENT    :

15  HOLDINGS, LLC, AND GOHUNT         :

16  MANAGEMENT HOLDINGS II, LLC,      :

17           Appellee.               :

18  -------------------------------x

19

20

21

22
```

Page 11

```
 1   ATLAS DATA PRIVACY CORPORATION   :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1575

 4             Appellants,           :

 5        v.                         :

 6   ACCUZIP, INC.,                   :

 7             Appellee.             :

 8   -------------------------------x

 9   ATLAS DATA PRIVACY CORPORATION   :

10   AS ASSIGNEE OF INDIVIDUALS       :

11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1576

12             Appellants,           :

13        v.                         :

14   SYNAPTIX TECHNOLOGY, LLC, AND    :

15   VOTERRECORDS.COM,                :

16             Appellee.             :

17   -------------------------------x

18

19

20

21

22
```

Page 12

```
 1   ATLAS DATA PRIVACY CORPORATION  :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1577

 4            Appellants,            :

 5        v.                         :

 6   JOY ROCKWELL ENTERPRISES, INC., :

 7            Appellee.              :

 8   -------------------------------x

 9   ATLAS DATA PRIVACY CORPORATION  :

10   AS ASSIGNEE OF INDIVIDUALS       :

11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1578

12            Appellants,            :

13        v.                         :

14   FORTNOFF FINANCIAL, LLC,        :

15            Appellee.              :

16   -------------------------------x

17

18

19

20

21

22
```

Page 13

```
 1   ATLAS DATA PRIVACY CORPORATION   :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1579

 4            Appellants,            :

 5        v.                         :

 6   MYHERITAGE LTD. AND MYHERITAGE   :

 7   (USA), INC.,                     :

 8            Appellee.               :

 9   --------------------------------x

10   ATLAS DATA PRIVACY CORPORATION   :

11   AS ASSIGNEE OF INDIVIDUALS       :

12   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1580

13            Appellants,            :

14        v.                         :

15   E-MERGES.COM, INC.,              :

16            Appellee.               :

17   --------------------------------x

18

19

20

21

22
```

Page 14

```
 1  ATLAS DATA PRIVACY CORPORATION  :

 2  AS ASSIGNEE OF INDIVIDUALS       :

 3  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1581

 4           Appellants,            :

 5       v.                         :

 6  NUWBER, INC.,                    :

 7           Appellee.              :

 8  -------------------------------x

 9  ATLAS DATA PRIVACY CORPORATION  :

10  AS ASSIGNEE OF INDIVIDUALS       :

11  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1582

12           Appellants,            :

13       v.                         :

14  ROCKETREACH, LLC,                :

15           Appellee.              :

16  -------------------------------x

17

18

19

20

21

22
```

Page 15

```
 1   ATLAS DATA PRIVACY CORPORATION  :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1583

 4             Appellants,           :

 5        v.                         :

 6   BELLES CAMP COMMUNICATIONS,      :

 7   INC.,                            :

 8             Appellee.             :

 9   --------------------------------x

10   ATLAS DATA PRIVACY CORPORATION  :

11   AS ASSIGNEE OF INDIVIDUALS       :

12   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1584

13             Appellants,           :

14        v.                         :

15   PROPERTYRADAR, INC.,             :

16             Appellee.             :

17   --------------------------------x

18

19

20

21

22
```

Page 16

```
 1   ATLAS DATA PRIVACY CORPORATION  :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1585

 4              Appellants,          :

 5        v.                         :

 6   THE ALESCO GROUP, LLC, ET AL.,  :

 7              Appellees.           :

 8   -------------------------------x

 9   ATLAS DATA PRIVACY CORPORATION  :

10   AS ASSIGNEE OF INDIVIDUALS       :

11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1586

12              Appellants,          :

13        v.                         :

14   SEARCHBUG, INC.,                 :

15              Appellee.            :

16   -------------------------------x

17

18

19

20

21

22
```

Page 17

```
 1   ATLAS DATA PRIVACY CORPORATION   :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1587

 4              Appellants,          :

 5        v.                         :

 6   AMERILIST, INC.,                :

 7              Appellee.            :

 8   -------------------------------x

 9   ATLAS DATA PRIVACY CORPORATION   :

10   AS ASSIGNEE OF INDIVIDUALS       :

11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1588

12              Appellants,          :

13        v.                         :

14   US DATA CORPORATION,            :

15              Appellee.            :

16   -------------------------------x

17

18

19

20

21

22
```

Page 18

```
 1  ATLAS DATA PRIVACY CORPORATION  :

 2  AS ASSIGNEE OF INDIVIDUALS       :

 3  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1589

 4            Appellants,            :

 5       v.                          :

 6  SMARTY, LLC; SMARTYSTREETS,      :

 7  LLC,                             :

 8            Appellee.              :

 9  --------------------------------x

10  ATLAS DATA PRIVACY CORPORATION  :

11  AS ASSIGNEE OF INDIVIDUALS       :

12  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1590

13            Appellants,            :

14       v.                          :

15  COMPACT INFORMATION SYSTEMS,     :

16  LLC, ET AL.,                     :

17            Appellees.             :

18  --------------------------------x

19

20

21

22
```

Page 19

```
 1   ATLAS DATA PRIVACY CORPORATION   :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1591

 4             Appellants,           :

 5        v.                         :

 6   DARKOWL, LLC,                    :

 7             Appellee.             :

 8   -------------------------------x

 9   ATLAS DATA PRIVACY CORPORATION   :

10   AS ASSIGNEE OF INDIVIDUALS       :

11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1592

12             Appellants,           :

13        v.                         :

14   SPY DIALER, INC.,                :

15             Appellee.             :

16   -------------------------------x

17

18

19

20

21

22
```

Page 20

```
 1   ATLAS DATA PRIVACY CORPORATION   :

 2   AS ASSIGNEE OF INDIVIDUALS       :

 3   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1593

 4            Appellants,            :

 5        v.                         :

 6   LIGHTHOUSE LIST COMPANY, LLC,    :

 7            Appellee.              :

 8   -------------------------------x

 9   ATLAS DATA PRIVACY CORPORATION   :

10   AS ASSIGNEE OF INDIVIDUALS       :

11   WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1676

12            Appellants,            :

13        v.                         :

14   FIRST DIRECT, INC.,              :

15            Appellee.              :

16   -------------------------------x

17

18

19

20

21

22
```

Page 21

1  ATLAS DATA PRIVACY CORPORATION   :

2  AS ASSIGNEE OF INDIVIDUALS       :

3  WHO ARE COVERED PERSONS, ET AL.,: Case No. 25-1677

4           Appellants,            :

5       v.                         :

6  GREENFLIGHT VENTURE CORP.,       :

7           Appellee.              :

8  -------------------------------x

9                              TRIAL

10  DATE:         Tuesday, July 08, 2025

11  TIME:         9:00 a.m.

12  BEFORE:       Judges Bibas, Freeman, and Chung

13  LOCATION:     The Albert Branson Maris Courtroom

14                19th Floor

15                Philadelphia, Pennsylvania 19106

16  JOB No.:      7477969

17

18

19

20

21

22

Page 22

```
 1              A P P E A R A N C E S
 2   ON BEHALF OF APPELLANTS, ATLAS DATA PRIVACY
 3   CORPORATION, ET AL.:
 4        MICHAEL L. BERRY, ESQUIRE
 5        Ballard Spahr, LLP
 6        1735 Market Street, 51st Floor
 7        Philadelphia, Pennsylvania 19103
 8        berrym@ballardspahr.com
 9        (215) 665-8500
10
11   ON BEHALF OF APPELLEE, WE INFORM, LLC:
12        DAVID BOIES, ESQUIRE
13        Boies Schiller Flexner, LLP
14        333 Main Street, Suite 301
15        Armonk, New York 10504
16        dboies@bsfllp.com
17        (914) 749-8201
18
19
20
21
22
```

1          A P P E A R A N C E S (CONT'D)

2 ON BEHALF OF APPELLEE, WE INFORM, LLC:

3      MICHAEL L. ZUCKERMAN, ESQUIRE

4      Office of Attorney General of New Jersey

5      25 Market Street

6      Richard J. Hughes Justice Complex

7      Michael.Zuckerman@njoag.gov

8      (609) 789-8684

9

10 ON BEHALF OF APPELLEE, WE INFORM, LLC:

11      ADAM R. SHAW, ESQUIRE ? LIAISON COUNSEL

12      Boies Schiller Flexner

13      30 South Pearl Street, 12th Floor

14      Albany, New York 12207

15      ashaw@bsfllp.com

16      (518) 434-0600

17

18

19

20

21

22

Page 24

1                    C O N T E N T S

2    ARGUMENT                               PAGE

3        By Mr. Berry                    25,105

4        By Mr. Boies                       55

5        By Mr. Zuckerman                   76

6

7    WITNESS:                  DX   CX  RDX RCX

8

9                  (No witnesses.)

10

11                 E X H I B I T S

12   EXHIBIT  DESCRIPTION            MARKED   ADMITTED

13

14                 (None marked.)

15

16

17

18

19

20

21

22

1                    P R O C E E D I N G S

2            JUDGE BIBAS:  Good morning.  We have in this

3      session one case for argument with a bunch of docket

4      numbers beginning with 25-1555, Atlas Data Privacy

5      versus We Inform.  Mr. Berry, whenever you are ready,

6      please proceed.

7            MR. BERRY:  Good morning, Your Honors.  May

8      it please the Court.  My name is Mike Berry of Ballard

9      Spahr.  I represent Thomson Reuters Enterprise and

10     West Publishing, and I have the privilege today to be

11     speaking on behalf of all of the appellants.  And I'd

12     like to reserve five minutes for rebuttal.

13            JUDGE BIBAS:  Granted.

14            MR. BERRY:  Thank you.  This case addresses

15     whether the current version of New Jersey's Daniel's

16     law is facially unconstitutional.  It is not about the

17     importance of protecting public officials' safety.

18            JUDGE BIBAS:  You don't --

19            MR. BERRY:  Nobody questions that.

20            JUDGE BIBAS:  You do not contesting that that

21     is a compelling governmental interest.

22            MR. BERRY:  That is correct, Your Honor.

Page 26

1          JUDGE BIBAS:  Okay.

2          MR. BERRY:  It is not about the authority of

3   the State to restrict the publication of public

4   servants' addresses in certain circumstances.  It is

5   not about the concept of Daniel's Law or the various

6   Daniel's Laws that have been passed around the

7   country.

8          It is about the specific statute in its

9   current form as enacted by New Jersey, and as amended

10  in 2021 and 2023.  Those amendments expanded the

11  breadth of the law and removed all of its guardrails.

12  The legislature repealed the mens rea standard.  The

13  legislature imposed mandatory damage awards, and it

14  allowed claims to be assigned.  There is no

15  legislative record whatsoever for why New Jersey

16  enacted those amendments or why it alone needed to

17  enact this one-of-a-kind regime.  It is --

18          JUDGE BIBAS:  Counselor, you try to analogize

19  this case to Daily Mail, Florida Star, but those cases

20  are about matters of public interest.  You're not

21  saying that the home address of public servants is

22  categorically or even usually a matter of public

1   interest.  Are you?

2          MR. BERRY:  To be clear, we believe that

3   strict scrutiny applies here, (crosstalk).

4          JUDGE BIBAS:  But we have to -- we -- first

5   of all, we have to figure out are these -- are we

6   talking about a matter of public interest, because

7   that matters here.  Are you saying that in the mine

8   run of cases, the home address of a police officer or

9   a judge is a matter of public interest?

10         MR. BERRY:  We are saying that as a category,

11  addresses and phone numbers are a matter of public

12  concern.

13         JUDGE BIBAS:  Why?  Why the specific address

14  and phone -- unlisted phone number?

15         MR. BERRY:  As Judge Bartle recognized,

16  addresses and phone numbers are necessary for society

17  to function.  They have been publicly available for

18  that reason, for centuries.

19         JUDGE BIBAS:  Well, but I'm asking in terms

20  of Florida Star and that line of cases which you try

21  to fit this case into.  This is about the role that

22  the information plays in public discussion and

Page 28

1   discourse.  How is it that people need to discuss

2   doxing, basically, home phone numbers and home

3   addresses?  How is that like the discussion of the

4   rape at issue in the Florida Star?  How is that -- how

5   is -- how can you say those are the same thing?

6         MR. BERRY:  Florida Star and Daily Mail talk

7   about public concern in a categorical sense

8   (crosstalk).

9         JUDGE BIBAS:  In terms of the discussion.

10  Yes.  The role they play in public discourse.  How --

11  explain to me how in the -- set aside the unusual case

12  like Kratovil, where the question is whether public

13  servant lives within a boundary.  I'm not talking

14  about -- Kratovil construes this law not just to be

15  apparently what city you live in, but your exact home

16  address.  And so, if we take that construction, how is

17  the exact home address something that gets used in

18  public discourse and debate?

19        MR. BERRY:  Under the Supreme Court's

20  precedent in Snyder versus Phelps under City of San

21  Diego, the standard that the Court has set is not just

22  whether it's used in public debate and newsworthy, but

Page 29

1    rather whether it's of a general interest and the

2    Court says of value and concern to the community.  And

3    as we have said in our papers, addresses, as Judge

4    Bartle recognized, are necessary for society to

5    function.  (Crosstalk).

6            JUDGE BIBAS:  That's like Dun & Bradstreet.

7    The information in Dun & Bradstreet had value.  It was

8    useful for functioning.  But you are now saying you

9    can't make a case that this has to be discussed and

10   debated.  You are saying it's valuable in the way that

11   the information in Dun & Bradstreet was valuable.  But

12   Dun & Bradstreet was a matter of private concern.

13           MR. BERRY:  With that particular speech.

14   Categorically, addresses and phone numbers are

15   significant to commerce, they're significant to

16   politic (crosstalk).

17           JUDGE BIBAS:  The same way that the

18   information and Dun & Bradstreet is significant.

19           MR. BERRY:  In Dun & Bradstreet (crosstalk).

20           JUDGE BIBAS:  The public discourse test in

21   Daily Mail and Florida Star is higher.  Those cases are

22   inapposite.

1          MR. BERRY:  In Dun & Bradstreet, the speech

2    at issue was not simply addresses, it was a credit

3    report.

4          JUDGE BIBAS:  Okay.  And you're not saying

5    credit reports are matters of public concern.  Even

6    though they're valuable, the huge sectors of our

7    economy depend on them, but the Supreme Court didn't

8    treat them.  How is a home address more a matter of

9    public concern than credit reporting information?

10          MR. BERRY:  The information has been a public

11    record for centuries, and the Court afforded --

12          JUDGE BIBAS:  Of public record does not mean

13    matter of public concern the way Florida Star

14    discussed it.

15          MR. BERRY:  In Florida Star, the Court said

16    explicitly that if the government places information

17    into the public record, then it is presumed to be a

18    matter of public interest.  And here that information

19    is so for -- because it's necessary for political

20    advocacy, it's necessary for --

21          JUDGE CHUNG:  What could be helpful is, for

22    instance, addressing content context and form, which

Page 31

1   usually is how we determine something is of a matter

2   of public concern.  So in Florida Star, the context

3   was a court case, which is already a matter of public

4   concern.  Can you address Judge Bibas's point as far

5   as content context and form?

6            MR. BERRY:  The context -- content and form

7   analysis is conducted when there is an as applied

8   challenge.  When there is a facial challenge, as in

9   here, the question is categorically, is this matter a

10  public concern?  There may be certain circumstances

11  where particular people's addresses are not, but as a

12  kind of --

13           JUDGE CHUNG:  That's what we're asking.  What

14  is the mine run of cases?

15           JUDGE BIBAS:  Because this is a facial

16  challenge.

17           MR. BERRY:  That's right.  So one example

18  would be for public safety.  My client, Thomson

19  Reuters publishes or makes available a product called

20  CLEAR that is used for -- by law enforcement, by the

21  marshal service here, the U. S Attorney's Office,

22  prosecutors throughout New Jersey to investigate

1  crimes, to prosecute crimes.  There's another of the

2  appellants who provides threat detection services.  So

3  they go into the dark web and protect public officials

4  to see whether there are threats without the

5  information that's you know, blocked by Daniel's Law.

6       JUDGE BIBAS:  That's you -- when I read

7  Florida Star, it's quoting the Daily Mail principle as

8  truthful information about a matter of public

9  significance.  You are -- want to expand public

10  significance.  So it's basically any information other

11  people can use, but the way you're formulating it

12  would overrule Dun & Bradstreet.  I think there are no

13  boundaries on the principle.  You are elaborating.

14  Give me a definition that puts, somehow puts Dun &

15  Bradstreet on the private significance line and

16  explains why your stuff doesn't look like Dun &

17  Bradstreet's information.

18       MR. BERRY:  Because in the context of

19  Daniel's Law, it prohibits the disclosure under any

20  circumstance to any person for any reason with no

21  (crosstalk).

22       JUDGE BIBAS:  That's about tailoring.  That's

Page 33

1   not about public significance.

2           MR. BERRY:  Right.  As a category, however,

3   addresses and phone numbers are a matter of public

4   concern because they're --

5           JUDGE BIBAS:  You're circular.  You're not

6   answering my question.

7           MR. BERRY:  Dun & Bradstreet dealt with a

8   specific circumstance of whether the mens rea that was

9   required under defamation needed to show actual malice

10  in all circumstances.  What the Court held is when

11  there's a matter of private concern from that

12  communication, there still need to be a mens rea

13  requirement.  It was negligence, (crosstalk).

14          JUDGE BIBAS:  But they had a lower one.  And

15  the -- I thought the matter of public -- the mens rea

16  was -- the cases that require a mens rea have been --

17  okay.  That -- mens rea is a separate issue about

18  (crosstalk).

19          MR. BERRY:  But the Court in Dun & Bradstreet

20  was not issuing a categorical rule.

21          JUDGE BIBAS:  Right.

22          MR. BERRY:  That speech of a matter of

1   private concern is less protected.

2        JUDGE CHUNG:  But it does seem that it's more

3   analogous to Dun & Bradstreet than Florida Star Daily

4   Mail.  And I think that's what we're trying to

5   understand.  Why isn't it just a Dun & Bradstreet type

6   of information that is not a matter of public concern?

7        MR. BERRY:  In Dun & Bradstreet, the

8   information was collected directly from consumers as

9   part of a commercial transaction, which makes it a

10  categorically different kind of speech.  This is

11  information that (crosstalk).

12       JUDGE BIBAS:  Okay.  But Florida Star

13  distinguished the two things.  It talked about, both

14  public concern and lawfully obtained.  Okay?

15       MR. BERRY:  Correct.

16       JUDGE BIBAS:  So the method of obtaining is

17  not the same thing here.  And of course, if it's -- if

18  it's lawfully obtained from a public database and it's

19  a matter of public significance, Florida Star kicks

20  in.  All right.  We're go -- we're going around in

21  circles about public concern.  Let's assume you're

22  wrong.  And it's a matter of private concern, your

Page 35

1  strongest argument is this is content based.  And it

2  seemed for a long time, like the Supreme Court

3  content-based equaled strict scrutiny.  But there are

4  a couple of recent cases that cut the other way.

5       Vidal versus Elster says there's this

6  trademarks category, and we'll look at that.

7  Historically it's been treated differently, content-

8  based, but viewpoint neutral.  And then we just had

9  Free Speech Coalition versus Paxton a month ago.

10  Where again, the Supreme Court said, yeah, it's

11  content based, but the way in which you're drawing the

12  lines is, you know, it's still not risking suppressing

13  discourse.

14       And so, the Court did not apply strict

15  scrutiny.  So content-based is a big factor in your

16  favor, but why should we nonetheless apply strict

17  scrutiny even after those precedents?  Why is -- this

18  is not a viewpoint-based law, it's content-based, but

19  viewpoint neutral.  Why should we still apply strict

20  scrutiny?

21       MR. BERRY:  In Vidal, the Court was clear

22  that that was a content-based statute.  The reason

Page 36

1  that it did not apply strict scrutiny was because of

2  the unique history dealing with the use of people's

3  names in selling products.

4         JUDGE BIBAS:  Okay.

5         MR. BERRY:  The Court showed that those

6  things have historically been compatible with First

7  Amendment protections.  And the Court was very clear

8  that in that circumstance, it was not even laying down

9  a rule with respect to all content-based trademarks,

10  let alone in the entire First Amendment jurisprudence.

11  Here, the history and tradition is far different, but

12  setting --

13         JUDGE BIBAS:  Okay.  Well, let's talk about

14  history tradition.  It seems to me like this is just

15  creating a privacy tort.  Well, Warren and Brandeis

16  privacy tort has been around for more than a century.

17  it's not exactly the same.  And maybe the features are

18  different, but you would not suggest that at least,

19  you know, public exposure of embarrassing private

20  facts has been around for more than a century.  That

21  that needs to get strict scrutiny or that that tort is

22  unconstitutional.  Is it?

Page 37

1          MR. BERRY:  No.  It's not a content-based
2    restriction.
3          JUDGE BIBAS:  It's not a content-based
4    restriction.  It's based on particularly -- a feature
5    of the speech that makes it, you know, embarrassing,
6    humiliating, degrading.  It's based on the con -- it's
7    not based on time or place or manner.
8          JUDGE CHUNG:  I mean, in Snyder, that's why
9    they said it was content based.
10          MR. BERRY:  Right.  And it would be -- then
11    it would be subject to strict scrutiny, right?
12    (Crosstalk).
13          JUDGE BIBAS:  So are privacy torts
14    unconstitutional or are they saved by the fact that
15    they've been around for more than a century?
16          MR. BERRY:  Under at common law, there was
17    information that was deemed to be private.  It had to
18    be both actually private and private as a reasonable
19    expectation of privacy.  So in the examples that
20    you're offering something that is purely prurient,
21    that was private, that occurs in somebody's bedroom,
22    that is something that is a private fact.  Here, we're

Page 38

1  not dealing with information that is actually private

2  or -- nor that there's a reasonable expectation of

3  privacy because it has historically been a matter of

4  public record.

5       JUDGE BIBAS:  Okay.  Well, New Jersey is now

6  changing the reasonable expectation of what's private.

7  This is an expansion of a traditional privacy tort.

8       MR. BERRY:  But it would be literally

9  unprecedented in U. S history for the First Amendment

10  to allow the sanctioning of speech that republishes

11  information that the government has made available.

12  If we start to go down that --

13       JUDGE CHUNG:  Well, I'm going to ask you

14  about that because Snyder, where they're talking about

15  these privacy torts or other privacy tort cases there

16  -- they always identify it either as a matter of

17  public concern, which for Judge Bibas' hypothetical,

18  we're assuming this is a matter of private concern.

19  And certainly, Rowan and Frisby recognize a right of

20  privacy around the home, which they allowed a total

21  ban on picketing in front of a home in Frisby, and

22  Rowan was an opt-out for mail to the home.

1          So, you know, there -- the right -- the arena

2     of privacy torts is very large, but it seems this is

3     aimed at one tradition of that penumbra around the

4     home.  And then if you could also talk about it seems

5     to, the purpose of the statute seemed aimed -- seems

6     to be aimed at combining that possible tradition as

7     well as a tradition of protecting against the chill in

8     government functions by government actors.  Which in

9     Nixon they said had been around since the founding

10    certainly operated differently.

11          But I guess that's why I'm interested, you

12    know, there's the deliberative privilege, the

13    investigative privilege other types of traditions in

14    trying to avoid the chilling of government actors in

15    fulfilling their roles.  Could you speak to, you know,

16    are those pertinent here?  If not, why not?  If they

17    are, are they limited?

18          MR. BERRY:  I think there's two components to

19    your question.  The first deals with the privacy in

20    the home and the Court's Snyder case, which dealt with

21    intentional infliction of emotional distress.  In

22    those cases, they're protecting a physical intrusion

Page 40

1  into the home.  The speech at issue, there were many

2  alternatives for the same speech.  And the -- that in

3  this circumstance is not at all allowed.  So it's a

4  very different circumstance.  The Supreme Court in

5  Bartnicki said it would be highly unusual to punish

6  the lawful possessor of or to restrict a lawful

7  possessor of information to disclose that information

8  in order to deter a threat by a third party.  So I

9  think it's a different.

10          JUDGE CHUNG:  But in Bartnicki, they also

11  mused, if these were intercepted calls that were not

12  of a public concern, they weren't really sure what

13  level of scrutiny they would apply.  And again, we're

14  assuming these are not a public concern.  Can you

15  point to -- I guess I'm interested in that

16  distinction, if you have anything to say about that

17  tort in the context of not, of like a -- of a case or

18  some thread of tradition talking about when things are

19  not matters of public concern.

20          MR. BERRY:  Even when speech is not a matter

21  of public concern, it's subject to strict scrutiny.

22  The Supreme Court has been clear about that in case

Page 41

1    after case, whether, you know, the Alvarez case, the

2    Animal Crush video case, the Stevens case.  That does

3    not take it out of strict scrutiny.  And with respect

4    to your question about general chilling and the fear

5    that the officials may be under, New Jersey could have

6    enacted a more narrowly tailored statute.

7         They could have followed the model of the

8    federal government.  They could have followed the

9    model of Wisconsin, which recently came in line, which

10   are much more narrowly tailored.  As I said at the

11   outset, this is not a question of this case is not

12   about just a protecting public officials' safety or

13   whether the government has that authority.

14        JUDGE BIBAS:  Explain to me (crosstalk).

15        MR. BERRY:  It's whether it's --

16        JUDGE BIBAS:  What you think is the main over

17   breadth of the method that's being used here.  How --

18   what is the main thing that should have been tailored

19   more narrowly?

20        MR. BERRY:  I think there's at least three

21   things.  One is with respect to disclosure.  The New

22   Jersey bars any disclosure for any reason without

Page 42

1  exception, right?  It doesn't matter to who, where,

2  when, why.  It doesn't matter if the information is

3  private, it doesn't matter if the information is

4  governed by federal law that protects privacy.  None

5  of that matters.  So that is the definition of

6  disclosure.  In fact, includes that the information is

7  merely made available, not even that it's obtained or

8  looked at that it would be a violation.  So that would

9  be thing one.  It's the broadest by far of any in the

10  country.

11          Second, the fact that it punishes information

12  that the government itself is making available.  And

13  as this Court said in Schrader, as this Court said in

14  Bowley, as the Supreme Court said time and again,

15  whenever the government makes information available,

16  there's always a more narrowly tailored means to

17  prevent its dissemination.  It could police itself.

18  That's not being done here.

19          Again, the federal government, Wisconsin, and

20  a number of other states provide those exemptions.

21  The third thing is the combination of the assignment

22  provision, the lack of a mens rea requirement and the

Page 43

1   mandatory damage awards.  Together, those things have

2   the potential, and in fact, are chilling speech, even

3   protected speech because of the --

4           JUDGE BIBAS:  I do note that you're saying

5   it's -- it does too much to choke off disclosure and

6   it does too much in the way of enforcement.  So you

7   are taking a position on the trade -- on one and

8   three.  The first, you're taking a position on the

9   tradeoff of it's too effective in serving this.  How

10  do we weigh the -- how well tailored something has to

11  be when there's a sacrifice or a tradeoff?  On number

12  two, there's no trade off, but on one and three,

13  there's a tradeoff between how well it's going to stop

14  the spread of this information for bad purposes.  So

15  how do you suggest that we weigh that and say the

16  government ought to sacrifice some efficacy here.

17  Because one and three clearly make the law more

18  effective.

19          MR. BERRY:  What they do is stamp out more

20  speech.  It's hard to think (crosstalk).

21          JUDGE BIBAS:  You stamp out more speech in a

22  way that serves the protecting public servants, right?

Page 44

1  So there's a tradeoff between efficacy and tailoring.

2  And you're saying they should give up some efficacy in

3  order to allow some more legitimate speech.  And I'm

4  just asking what in the precedents tells us about how

5  we should approach that trade off at the tailoring

6  area.  Two, is costless you're saying, right?  I think

7  the government's best response on two is, well, a lot

8  of this information's being given by a different level

9  of government.  Okay?

10         And I'm not sure if the State of New Jersey

11  can tell the counties what to do or maybe that's

12  outside of their controls.  But one and three, there's

13  a real trade off.

14         MR. BERRY:  The Supreme Court has been clear,

15  including just a couple weeks ago in Paxton.  That

16  under strict scrutiny, the statute is presumed to be

17  unconstitutional and has to curtail as little speech

18  as possible to be effective.  Yes, you could be more

19  effective in protecting safety, but only (crosstalk).

20         JUDGE BIBAS:  The dissenters in free speech

21  coalition would've said, "Hey, use content filtering,

22  use other stuff."  And the majority's response

Page 45

1   presumably is, well, kids can get their hands on

2   mobile phones, et cetera.  Content filtering is not

3   going to do as much as age verification.  Free speech

4   cuts the other way where they upheld a restriction

5   that was broader and maybe more burdensome to speech

6   because it served the interest better.  So I --

7            MR. BERRY:  In Paxton, the Court was dealing

8   with the category of speech that it held was

9   unprotected.  So it's very different.

10           JUDGE BIBAS:  Well, for -- as to minors, it

11   was unprotected.  As to adults, it's protected.

12           MR. BERRY:  Here you're dealing with purely

13   protected speech and the risk that is run is that too

14   much speech is stamped out.

15           JUDGE BIBAS:  Okay.  Let's --

16           MR. BERRY:  And that's -- and, I don't want

17   to answer your narrow tailoring question, which is

18   unanswerable.

19           JUDGE BIBAS:  Okay.

20           MR. BERRY:  And that's precisely the issue.

21   One of the issues here (crosstalk).

22           JUDGE BIBAS:  It's unanswerable, especially

Page 46

1   on a facial challenge, which is a problem with

2   bringing it at this stage.

3           MR. BERRY:  No.  It's unanswerable because

4   the New Jersey legislature, there is literally no

5   legislative record about why they had to enact these

6   amendments.  The statute was enacted after the

7   horrific killing of Daniel Anderl in 2020.  In 2021,

8   the New Jersey amended the statute with no

9   explanation.  It did the same in 2023 with no

10  explanation.  If there was a legislative record, which

11  the Court has re -- this Court has required time and

12  again, the Supreme Court has required time again, then

13  maybe you could say that it would be more effective.

14  But we don't know why New Jersey chartered this path.

15          JUDGE BIBAS:  All right.  So you talked about

16  tradeoffs.  We're talking about chilling.  I do want

17  to make sure to focus on one other thing.  When the

18  Supreme Court has insisted on a mens rea, it is

19  basically there to prevent chilling.  That's what the

20  Supreme Court said in Smith.  It said it in Ginsburg.

21  It said it Counterman.  Because Counterman are -- is

22  it a joke?  Is it a real threat?  The mens rea

Page 47

1  protects against that.  Ginsburg obscenity or not the

2  mens rea protects against that.

3         This seems like a case in which there's very

4  little gray area about what's an address or what's a

5  phone number.  Okay?  So it's not like, is it obscene,

6  is it not obscene?  Is it a threat, is it not a

7  threat?  Doesn't that make this distinguishable in

8  terms of how important the mens rea is to protect

9  against chilling?

10         MR. BERRY:  In Counterman, the Court was

11  clear as it has been since Smith and even before that,

12  going back to the 50s.  That in order to sanction

13  speech, there has to be a culpability requirement.

14  (Crosstalk).

15         JUDGE BIBAS:  Okay.  Answer my narrower

16  question before you go to the authority.  Maybe you

17  don't think it depends just on chilling.  But is there

18  ambiguity about what is a home address or what is a

19  home phone number such that you're going to be

20  chilling a lot of other speech that is

21  constitutionally protected?

22         MR. BERRY:  Yes.

1          JUDGE BIBAS:  Okay.  What -- give me an

2    example of where someone would be genuinely unsure

3    about whether he's speaking on some other matter and

4    that he might get punished for it.

5          MR. BERRY:  There is no way under the statute

6    to tell if a person is covered.  There's no way to

7    tell if the address that they're sending is of their

8    residence.  And there's no way to tell if the phone

9    number is unpublished.  But the mens rea requirement

10   that the Court has required over the years says that

11   it always has to be tethered to the harm.  And here,

12   even if it were just the notice, there is no tethering

13   to the harm.  Again, New Jersey stands alone in this

14   respect.

15          JUDGE CHUNG:  Could I ask you a little bit

16   more about your chilling and mens rea argument here?

17   You -- in your exchange with Judge Bibas talked about

18   protected versus unprotected conduct, and I'm just

19   going to call it Paxton because both of them come up

20   so much in case it's kind of -- you don't know what to

21   call it.  But it seems like each of the defendants

22   here as a group have their own voluntary opt-out

Page 49

1   provisions.  And I'm not gleaning from the brief that

2   your position is when someone opts out, whether it's a

3   covered person or just an everyday citizen, that it's

4   protected conduct to nonetheless disclose their

5   address.

6            MR. BERRY:  I think you'd have to go look at

7   the individual companies to see about the opt-out, and

8   what that would apply to.  But the --

9            JUDGE CHUNG:  And that is kind of part of the

10  difficulty here with like such a broad facial

11  challenge.  But can you give me a high-level answer

12  just for a company that has a voluntary opt-out,

13  anyone can use it.  It doesn't seem that the position

14  here is that nonetheless publishing that is protected

15  speech.

16           MR. BERRY:  If a person who has no

17  relationship with one of the appellants here or any of

18  the dozens of others are facing (crosstalk).

19           JUDGE CHUNG:  I'm just talking big picture.

20  Uh-huh.

21           MR. BERRY:  If somebody makes a request to

22  opt out of information that they themselves did not

Page 50

1   disclose, so this is different than the VPPA or the

2   data privacy statutes where information is collected

3   from the individual.  But if an individual makes a

4   request to any company that just has this information,

5   has obtained it from the government and says, "I don't

6   want you to have this," and does it through the

7   website interface, they're not granted a cause of

8   action.  They can't assign their claim to Atlas.

9           JUDGE CHUNG:  But that's not my question.

10  I'm just trying to understand what is chilled, what's

11  not chilled.  So when they do that, is your position

12  that nonetheless it's protected speech to nonetheless

13  disclose that information?  I mean, I'm not talking

14  about a covered person, I'm just talking about anyone,

15  anyone who you --

16          MR. BERRY:  Yeah.  If you've lawfully

17  obtained information, then it can be disclosed.  It

18  does -- people -- the chilling effect here is that

19  people are invoking the statute saying that I am

20  barring you from disclosing this information in any

21  context whatsoever for any reason, regardless of what

22  I myself are doing.

Page 51

```
 1              JUDGE CHUNG:  So the chilling --

 2              MR. BERRY:  And I can get a thousand bucks

 3    for that.

 4              JUDGE CHUNG:  -- so the chilling is for -- it

 5    chills conduct that you are saying is protected, which

 6    is even in the presence of an opt-out, it's still

 7    protected speech to disclose that person's address or

 8    information?

 9              MR. BERRY:  Correct.

10              JUDGE CHUNG:  Okay.

11              JUDGE BIBAS:  Question about mental state.

12    You say there's no mental state in the law, and you're

13    right, there's no mental state term until you get the

14    punitive damages and it'd be kind of awkward to read

15    one in, but there is the requirement of giving notice

16    in ten business days.  So since your client's been put

17    on notice, could we understand that as a form of

18    negligence per se, that you've been notified and then

19    you have taken a volitional act of disclosing after

20    that time.  Isn't that at least negligence not

21    responding to the notice?  Because if you didn't get

22    the notice or you didn't choose to disclose, then
```

Page 52

1    you're not liable.

2         MR. BERRY:  Yes.  And exactly that negligence

3    per se standard is one of the reasons that the Court

4    in Florida Star said that the application was

5    unconstitutional.  It said that there had to be a

6    scienter (ph) requirement and that the analysis had to

7    be made on a case-by-case basis; merely violating the

8    law is what got the newspaper in trouble in Florida

9    Star.

10        JUDGE BIBAS:  Except there was no notice

11   given to the Florida Star.  Set aside there was public

12   concern.  Like, we're talking about a law here where

13   something first has to be brought to your attention.

14   "Hey, I'm warning you, I'm a covered person.  This

15   law's going to require you to take it down."  Right?

16        MR. BERRY:  If I'm not mistaken, the

17   newspaper reporter in that case violated the

18   newspaper's own policies.  They were negligent with

19   respect to their own policies, let alone the law.  And

20   the Court said that that's not sufficient.  This

21   negligence, per se, merely tripping the wire when

22   we're dealing with speech is not sufficient.  You have

Page 53

1  to be able to show a scienter requirement that is

2  applicable on a case-by-case basis.  This law has

3  none.  And as you said, it's beyond awkward to read

4  one in here, (crosstalk).

5          JUDGE BIBAS:  There wouldn't be a negligence

6  requirement for getting declaratory injunctive relief,

7  would there?  The law wouldn't require that for

8  forward-looking relief.

9          MR. BERRY:  Correct.  And I -- and that's how

10 the federal system is set up.  That is how many of the

11 states choose to enact it.

12         JUDGE BIBAS:  This law does allow declaratory

13 and injunctive relief.

14         MR. BERRY:  It does allow that in addition to

15 the mandatory damage awards.

16         JUDGE CHUNG:  If you fix what you assert as

17 the mens rea problem, is that -- does that fix the

18 problem here?

19         MR. BERRY:  Well, I don't think that this

20 court can fix it.  I mean, I think that's the cases

21 from the 6th Circuit, the 8th Circuit, the City of

22 Dearborn case, and the --

Page 54

1           JUDGE CHUNG:  Well, I'm not talking about

2    importing negligence.  Like for instance, could the

3    actual and liquidated damages be severed?  I noticed

4    the punitive damages have a specific mens rea; you

5    just said the equitable damages don't need a mens rea.

6    So that leaves actual and liquidated damages and costs

7    -- attorneys -- as from what I recall of the law.  So

8    if -- can those be severed?  Can the --

9           MR. BERRY:  I think with this particular

10   statute, the whole civil claim would need to be

11   severed because the vast definition of disclose is

12   what makes it over-inclusive.  And in addition,

13   there's the -- we haven't really talked about it.  I'm

14   sorry?

15           JUDGE CHUNG:  The whole cause of action.

16           MR. BERRY:  The whole cause of action because

17   of action, because of the ex -- the fact that the

18   disclosure is, it covers such a broad scope.

19           JUDGE CHUNG:  But that's talking about your

20   narrow tailoring.  But I'm talking about the chilling

21   that -- does it fix the chilling problem?

22           MR. BERRY:  It does not, because this is a

Page 55

1   content-based restriction on speech.  The broad

2   definition of disclose chills any protected speech.

3   In addition to that you have the --

4           JUDGE BIBAS:  If the requirement were just

5   the punitive damages was left and it was you have to

6   be willful or reckless, why isn't willfully or

7   recklessly enough of a mens rea requirement under

8   cases like Counterman and Ginsburg?

9           MR. BERRY:  Willful and recklessness may be

10  enough for the mens rea component, but it doesn't

11  solve the narrow tailing chilling problem that Judge

12  Chung was talking about.  These are --

13          JUDGE BIBAS:  Well, but I thought mens Rea

14  took care of chilling?

15          MR. BERRY:  With respect to Scienter.  But

16  there's two problems with this statute.  One is its

17  lack of mens rea requirement.  It's strict liability,

18  punishment of speech.  And the second is that it's a

19  content-based restriction on speech that can't survive

20  strict scrutiny.  It's chilled on both.  So if it

21  fails for the lack of a mens rea requirement, the

22  statute should be struck.  If it fails for strict

Page 56

1    scrutiny, the statute should be struck.  These are

2    independent reasons.  If there were a mens rea

3    requirement, New Jersey went back to the law as it was

4    written in 2020.  There's a mens rea requirement in

5    there.

6            If that were put back into place, you still

7    have the other problems with the expansive definition

8    of disclose, the under inclusivity of allowing people

9    to recover, even if they themselves are posting the

10   information on social media, as several of the

11   plaintiffs here have done.  You still allow those

12   recoveries, and that is still the chilling effect.

13   That is the problem with the narrow tailoring.  So

14   it's -- they're two independent reasons for striking

15   the statute.

16            JUDGE CHUNG:  What -- I do have one.  Can you

17   tell me what is your position as far as what does the

18   mine run case look like here?  Or not even the mine

19   run case, mine run of uses.  As far in the context of

20   facial challenges, we're supposed to look at what are

21   the constitutional applications and the

22   unconstitutional applications, sort of compare them to

Page 57

1    each other.  What is a mine run use of the services of

2    all of the defendants here?

3            MR. BERRY:  It -- in a facial challenge to a

4    statute that is content-based on its face in its text,

5    where we have a statute that prohibits disclosure by

6    any person, any business, any organization for any

7    reason, that is a content-based statute.  And the

8    Supreme Court has been clear even in the Moody case,

9    and that in the usual First Amendment case we apply

10   the appropriate level of scrutiny.  And then as this

11   court explained in Bruni, when there's a facial

12   challenge like this to a content-based restriction,

13   the Supreme Court and this court do not go out and

14   look for every hypothetical to determine what might be

15   an invalid application.

16           JUDGE CHUNG:  Well, that's why I'm asking

17   you, you tell me what is the mine run?

18           MR. BERRY:  The mine run is literally any

19   person in the country could be subject to this

20   statute.  So the mine run application on its face

21   applies a content-based restriction on the prohibition

22   of addresses unpublished phone numbers in every

Page 58

1    circumstance whatsoever.  And so, as this Court said

2    in Bruni, as the Supreme Court said in Bonta just a

3    few years before the Moody case --

4            JUDGE CHUNG:  On the internet doesn't do any

5    work as far as limiting?

6            MR. BERRY:  This is not limited to just on

7    the internet.

8            JUDGE CHUNG:  Uh-huh.

9            MR. BERRY:  This -- it prohibits mailing,

10   this prohibits posting.  It prohibits exhibiting.

11   This isn't just posting on the internet.  That's

12   another way New Jersey could have been more narrowly

13   tailored as a number of states have done.

14           JUDGE CHUNG:  So you read the -- or otherwise

15   available to expand it beyond the internet?

16           MR. BERRY:  On the face of the statute in the

17   definition of disclosing --

18           JUDGE CHUNG:  It says on the internet, or

19   otherwise available.

20           MR. BERRY:  Yes.

21           JUDGE CHUNG:  And you read that to mean

22   anything outside of the internet?

Page 59

1        MR. BERRY:  Yes.  I mean, the statute itself
2   I think makes that clear.
3        JUDGE BIBAS:  Thank you.  We'll have you back
4   on rebuttal.
5        MR. BOIES:  May it please the Court.  My name
6   is David Boies, and I represent the plaintiff here.  I
7   want to begin by emphasizing what the Court has talked
8   about and what my colleague has, which is this is a
9   facial challenge.  And just last year in Moody against
10  Net Choice, the Supreme Court, and there were a number
11  of opinions, but each one of those opinions emphasizes
12  how disfavored facial challenges are in constitutional
13  cases.
14        Justice Alito in his concurrence says that a
15  facial challenge means that the challenger has to
16  establish that the statute "Can't be applied to anyone
17  at any time under any circumstances without violating
18  the constitution."  Such challenges are strongly
19  disfavored.  And they're disfavored for the exact
20  reason that Counsel had the difficulty answering some
21  of the Court's questions, which is that there are --
22  the vast majority of cases here, there is absolutely

Page 60

1   no issue of public interest or public concern with

2   respect to this information.

3        JUDGE BIBAS:  You don't dispute this is a

4   content-based restriction.

5        MR. BOIES:  Well, Your Honor, I think the

6   question of whether this's a content-based restriction

7   or not, it's complicated.  Because what the Court has

8   said is that the content-based restrictions are those

9   that relate to a topic or an idea that affects the

10  message that is being described.  Now, I think there

11  are applications where this can be content based.

12       JUDGE BIBAS:  It's normally content based.  I

13  mean, Reed versus Town of Gilbert made content based

14  very broad.  If it's not time, it's not place, it's

15  not manner, it's not on versus off premises, it's

16  based on whether you're communicating an address or a

17  phone number of a covered person, right?  You can

18  communicate all kinds of other information.  You can

19  communicate addresses of other people.  It's these

20  particular people.  That's content based.  And content

21  based traditionally gets strict scrutiny.

22       MR. BOIES:  The reason I say I think it may

Page 61

1   be complicated, Your Honor, is for example, in the

2   Supreme Court case in Sorrell, which involved the

3   Vermont statute.  The question there was whether the

4   prescriber identified information was speech or not.

5   And the Court says we don't have to reach that issue.

6   Because what the State of Vermont has done here is

7   they have disfavored particular speakers.

8          Everybody can talk about this except for one

9   particular class of people.  So the fact that the

10  Supreme Court left that open in Sorrell, I think means

11  that there is some issue as to whether something that

12  is as non-message related as somebody's home address.

13  (Crosstalk).

14          JUDGE CHUNG:  How do you square that with

15  Vidal, that said, just the use of a name means that

16  it's content-based?

17          MR. BOIES:  I'm sorry, Your Honor.

18          JUDGE CHUNG:  How do you square that with

19  Vidal?  Where it called that content-based when it was

20  just usage of a name?

21          MR. BOIES:  Yeah.  Now, in Vidal, what the

22  Court holds there of course, is that even though it's

Page 62

```
 1   content-based, it's viewpoint neutral and --
 2           JUDGE CHUNG:  Right.  But it did say it was
 3   content-based?
 4           MR. BOIES:  They did say the name --
 5           JUDGE CHUNG:  And I think that's where we're
 6   focusing right now.
 7           MR. BOIES:  The name was content-based, but I
 8   think --
 9           JUDGE CHUNG:  So why isn't this content
10   based, based on that?
11           MR. BOIES:  Because I think -- I mean, for
12   example, in the context of that case, the name was
13   Trump.  And the trademark was too small.  And I think
14   in that context, there was no doubt that the name in
15   that applied challenge was content based.  Whether a
16   name in an individual case in a facial challenge,
17   whether every name would be content based, I think is
18   a different question.  But my point is, that even if
19   it is content-based, it is as Vidal held, and as the
20   10th Circuit held in the Vote America case that we
21   cite, it is viewpoint neutral.
22           And if you have something that is viewpoint
```

Page 63

1    neutral, I don't think there is an application for the

2    application of what they refer to as -- scrutiny --

3    strict scrutiny.  Now, of course, as the Court pointed

4    out in the Schrader case, I mean, there are two

5    different tests.  You have Daily Mail, Florida Star

6    test, and you have the content-based strict scrutiny

7    test.  They suggest that you have to meet both of

8    those tests.  There's no court that has ever held

9    that.  And if they -- if that was the case, you would

10   see the court opinions very different because they'd

11   have to analyze both of those tests in case.

12             JUDGE BIBAS:  Let's assume we're talking

13   about strict scrutiny here.  We've gotten a concession

14   that there's a compelling governmental interest, you

15   know.  But let's talk about tailoring.  Your friend on

16   the other side argues forcefully that this applies to

17   everyone, who's covered for every reason.  And even if

18   it's some friend telling you an address, why is it

19   that this law shouldn't carve out more exceptions or,

20   you know, how clear is it that people are going to

21   know what's covered, what isn't?

22             They say we don't even know what an unlisted

Page 64

1    phone number is anymore now that there aren't phone

2    books.  So what do you say about the breadth of this

3    law, especially these most recent revisions that your

4    friend pointed out with some force, you know, there's

5    no mens rea, it's automatic, it covers all of these

6    people and doesn't have a bunch of exceptions?

7              MR. BOIES:  First, there has to be notice.

8    And so, people are going to know whether they're

9    violating or not.

10             JUDGE CHUNG:  What kind of notice was

11   provided by Atlas?  For instance, was it just a name

12   and said, "Hey, I'm covered.  Remove me."  Do they

13   actually provide the address and the unpublished phone

14   number?  What kind of notice is given?

15             MR. BOIES:  Your Honor, I don't know that

16   that is in -- I don't know that that is in the record.

17             JUDGE CHUNG:  Uh-huh.

18             JUDGE BIBAS:  The allegation seemed to be

19   that Atlas just sent 19,000 names saying, I am a

20   covered person, and I ask you to remove me without

21   saying what your office is, without providing

22   verification that you are a cop or child protective

Page 65

1    services or a judge.  I mean, what if Atlas get --

2    what if We Inform, gets bombarded with a whole bunch

3    of take down requests?  Doesn't it need more than 10

4    business days to figure out is this legitimate or not?

5              MR. BOIES:  First of all, Your Honor, I would

6    -- I think it is important here in respect to that

7    question to keep in mind the procedural context of

8    this case.

9              JUDGE BIBAS:  Right.

10             MR. BOIES:  This is a Motion to Dismiss and

11   it is a facial challenge.  So the assertions of what

12   might happen under certain circumstances, first of

13   all, are not appropriate on the Motion to Dismiss

14   stage.  And second, I think that is exactly why the

15   Court in Moody said, facial challenges are strongly

16   disfavored in these constitutional cases, because they

17   made a tactical decision here to bring a facial

18   challenge.

19             And they made that because they knew that if

20   they tried to come up with the as applied challenges,

21   it wouldn't protect what they're doing.  So there are

22   -- when you make a tactical decision like they made in

Page 66

1   Moody, and they made here, they're stuck with it.  And

2   as the majority opinion says --

3            JUDGE FREEMAN:  Weren't they directed to

4   raise this challenge at the Motion to Dismiss stage,

5   which as you've pointed out in your brief, is an odd

6   fit for the inquiry we have to do, where we have to

7   weigh the constitutional applications versus the

8   unconstitutional applications of the law.  So what --

9   given, you know, the, the district court's reasonable

10  efforts to kind of streamline the processes here, why

11  shouldn't they be given another opportunity to get

12  discovery on constitutional versus unconstitutional

13  applications?

14           MR. BOIES:  Well, I mean, first of all, I

15  think they'd have to raise that in the context of a

16  facial challenge.  If this were an as applied

17  challenge, I think the discovery issue would be quite

18  different.  But remember --

19           JUDGE FREEMAN:  But even in the facial

20  challenge, right?  I mean, we --

21           MR. BOIES:  This is the facial challenge.

22           JUDGE FREEMAN:  We know that we have to see

Page 67

1   if the unconstitutional applications substantially

2   outweigh the constitutional applications.

3          MR. BOIES:  But what the what the Court, both

4   the majority opinion and the concurring opinions in

5   Moody say, that's the problem of the challenger.  What

6   the challenger has to do in Justice Alito's words,

7   they've got to demonstrate this can't be applied to

8   anyone any time under any circumstances.

9          JUDGE FREEMAN:  That's a little different

10   from the weighing that, you know, we get from the --

11   that we get from the Net Choice kind of line of cases.

12   So you're saying in First Amendment cases, generally

13   speaking, don't we have to look at constitutional

14   applications versus unconstitutional applications and

15   weigh them?

16          MR. BOIES:  I think that if the facial

17   challenger presents the Court with those, the Court

18   can weigh those.  And remember, even if you weigh it,

19   in Justice Kagan's opinion, she says it's got a -- the

20   unconstitutional has got to substantially outweigh the

21   legitimate applications.  Here, they can't give you

22   any illegitimate.  Look at the record in the briefs,

Page 68

1    what are the illegitimate applications they're asking

2    you to weigh?  They are not able to come up with those

3    in any meaningful sense.  So -- and the Court, I'm

4    sure aware of the Supreme Court of New Jersey recently

5    did take up an as applied challenge.  And in that case

6    held that even though that was a situation where it

7    was a matter of public concern, in that particular

8    case, the statute was narrowly tailored to accomplish

9    a legitimate objective.

10             JUDGE FREEMAN:  Well, what if we just -- I

11   mean, given the dearth of the record here and the lack

12   of discovery, what if we just look at the mens rea,

13   the lack of a mens rea requirement?  Why doesn't that

14   make this unconstitutional?

15             MR. BOIES:  I think there are two things,

16   Your Honor.  First is the district court held, and

17   it's obviously this is a matter for appellate review,

18   but the district court held that New Jersey would have

19   a fault standard that they would read a fault standard

20   in to the statute.

21             JUDGE FREEMAN:  Well, they had the

22   opportunity to do that just a couple of weeks ago.

Page 69

1   And they didn't in the Kratovil case.

2          MR. BOIES:  But it wasn't relevant in that

3   case because the way that the Court decided it was

4   based on the narrow tailoring.  So, I would

5   respectfully suggest that New Jersey, like most

6   jurisdictions, will interpret law in a way that makes

7   it constitutional.

8          JUDGE FREEMAN:  Well, if we were to disagree

9   with that, and if we think that this is strict

10  liability, should we strike it down as

11  unconstitutional?

12         MR. BOIES:  Even if you were to conclude, I

13  don't think you could conclude, Your Honor, that it's

14  strict liability in the face of the fact that there

15  has to be a notice requirement.

16         JUDGE CHUNG:  (Crosstalk).

17         JUDGE FREEMAN:  But we know that notice has

18  to be given, right?  But we don't know that, you know,

19  what if someone is on vacation and doesn't receive the

20  notice, and you know, they receive the notice on the

21  11th day, the information is still posted on the

22  internet.  Now, aren't they still liable under the

Page 70

1  statute?

2          MR. BOIES:  Well, again, I remind the Court

3  that this is a facial challenge.  Okay.

4          JUDGE FREEMAN:  But on the face of the

5  statute, there is no mens rea requirement for the

6  liquidated damages.

7          MR. BOIES:  On the face of the statute,

8  there's no mens rea requirement.  However, on the face

9  of the statute, there is a notice requirement.  And I

10  think the courts would normally interpret notice,

11  meaning it's got to be adequate notice.

12          JUDGE FREEMAN:  It has to be sent and

13  received, and therefore someone is negligent if they

14  don't comply within ten days.

15          MR. BOIES:  I think that would be true, Your

16  Honor.  I also think that -- and again, I don't want

17  to beat this horse too much, but what you're talking

18  about is a very narrow set of cases, narrow set of

19  potential cases where that happens.  And this is not a

20  situation in which there is an as applied challenge.

21  Somebody comes in and says, I didn't get notice or I

22  was on vacation or the dog ate the notice.  This is a

Page 71

1    situation in which they -- because they're making a

2    facial challenge, they've got to -- they bear the

3    burden of establishing the run of the mine cases are

4    going to have this problem.  And that's obviously not

5    true.

6              JUDGE CHUNG:  But let's just go with Judge

7    Freeman's assumption that it is strict liability as to

8    actual or liquidated damages and the fees provision.

9    Can those just be severed and then this is

10   constitutional?

11             MR. BOIES:  Yes, Your Honor.  And for

12   example, in the Dun & Bradstreet case, I think at Page

13   763 of the court's opinion.  The Court holds that you

14   can have presumed and punitive damages if you -- if

15   you had -- if it -- if matter is not a matter of

16   public concern.  And this is a situation in which I

17   think under the Court's precedents both the 3rd

18   Circuit and the Supreme Court, this is not a matter of

19   public concern.

20             JUDGE FREEMAN:  Well, setting aside whether

21   it's a matter of public concern or not, and what would

22   exactly could be severed?  I mean, even if you take

Page 72

1   away the liquidated damages, it seems that there's
2   still -- that the Court shall award actual damages.
3   So maybe it's $5 and it's not a thousand dollars plus
4   reasonable attorney's fees and litigation costs.  So
5   even if we take away the liquidated damages piece,
6   don't we still have a problem with this strict
7   liability?
8           MR. BOIES:  I think there is a distinction
9   between strict liability and the imposition of the
10  penalties.  I think you don't have strict liability
11  for two reasons because of the notice.  And because of
12  the way the New Jersey courts would interpret the
13  statute as the district court in this case did.  I
14  think that even if you viewed it as not having a fault
15  element it's still a matter of -- not a matter of
16  public concern.  And because it's not a matter of
17  public concern, you don't get to the next step as to
18  whether it's narrowly tailored or not.
19          JUDGE FREEMAN:  Okay.  I just want to ask a
20  couple questions about your view of the scope of this
21  statute.  If a -- one of the defendants in these cases
22  receive notice and responded and said, you know, the

1    nature of my online database is such that my

2    programmers need 30 days to program -- to write the

3    code necessary to take these names down, would they be

4    liable under the statute or not?

5            MR. BOIES:  If they made an applied challenge

6    that said it's impossible for us to do it for certain

7    circumstances, and they were able to prove that, I

8    think that would -- could be a successful applied

9    challenge to the statute.

10           JUDGE FREEMAN:  That would be a statutory

11   defense to liability.

12           MR. BOIES:  I think it would be a potential

13   applied challenge to the constitutionality of the

14   statute if they're requiring somebody to do something

15   that they can prove it's impossible for them to do.

16           JUDGE FREEMAN:  Okay.  All right.  Let's see.

17   I think that's good for now.

18           JUDGE CHUNG:  What about your position as far

19   as or otherwise make available?  The -- those words in

20   the statute, or otherwise make available?  What does

21   that mean?  Is it just the internet, otherwise make

22   available on the internet, or to your colleague's

Page 74

1   point, is it mailing any type of availability?

2           MR. BOIES:  I think it is any reasonable kind

3   of availability.  Again, we are -- this is complicated

4   because this is a facial challenge.

5           JUDGE CHUNG:  Sure.

6           MR. BOIES:  If this were an applied challenge

7   where that was relevant, there would be a number of

8   things that we might investigate.

9           JUDGE CHUNG:  But just as a matter of

10  statutory interpretation, what does it cover?

11          MR. BOIES:  I think from statutory

12  interpretation standpoint, it's the reasonable

13  availability.

14          JUDGE CHUNG:  Not foreclosed to the internet.

15          MR. BOIES:  Not.  The only other two things

16  I'd like to just keep in mind is they say that this is

17  publicly available.  As the Supreme Court has said in

18  the Department of Justice against Reporters Committee

19  case.  It makes a big difference whether you're

20  talking about something that's available by going out

21  and searching, or whether it's an online database.

22  The Court there said it was plainly a vast difference

Page 75

1    in that situation.  Now that was interpreting a FOIA

2    but the point is that it is related to the question as

3    to whether having something that's publicly available

4    in land records is really comparable to something that

5    is online.

6              JUDGE FREEMAN:  You know, actually one more

7    question about the scope of the statute.  So this

8    covers news media, including newspapers, right?  And

9    many newspapers have past editions available online.

10   So I see there's an exception in here for previously

11   printed physical copies of a newspaper.  If, you know,

12   news newspapers don't have to, you know, recall those

13   if they have -- they've already been printed during

14   the notice period.  But do newspapers also have 10

15   days to remove any past references to a covered

16   person's address or phone number that might be in all

17   of their online archives?

18             MR. BOIES:  I think that that's a question

19   that I hadn't really thought about, Your Honor, to be

20   honest.  I think that in an applied challenge, that is

21   something we'd have to look at.  I come back again

22   that that's not relevant to this case, which is a

Page 76

1   facial challenge, but I think (crosstalk).

2            JUDGE FREEMAN:  Well, but arguably, if we

3   were to be weighing the, you know, constitutional

4   versus unconstitutional applications, might we

5   consider -- what might we consider, you know, archival

6   coverage by newspapers on one side of the scale?

7            MR. BOIES:  I think as I think about the

8   issue, the archival internet probably is not covered

9   by the statute.  But that is one that I think in an as

10  applied challenge you we'd have to look at.

11           JUDGE FREEMAN:  Okay.

12           JUDGE BIBAS:  Thank you, Mr. Boies.

13           MR. BOIES:  Thank you very much, Your Honor.

14           MR. ZUCKERMAN:  Good morning, Your Honors.

15  Michael Zuckerman from the Office of New Jersey

16  Attorney General.  May it please the Court much has

17  already been said this morning, so I'll dive right

18  into the topics that I think are of most interest to

19  the Court.  Let me just start very briefly with some

20  of the points that were brought up by Judge Bibas'

21  colloquy.  I think it's 100 percent correct that the

22  fact that this is a facial challenge, and this got to

Page 77

1   some of Judge Chung's colloquy as well.  Is really

2   important for understanding what is the mine run

3   application.

4          And we would submit that the mine run

5   application here of this law, at least as we

6   understand it on this facial Motion to Dismiss

7   Posture, is a data broker that is monetizing data.

8   It's selling or providing tranches of names,

9   addresses, phone numbers, kind of ones and zeros, with

10  no added expressive value beyond that, so far away

11  from the Florida Star Daily Mail type line of cases

12  that receives notice and has eminent technological

13  tools at its disposal to be able to comply within 10

14  business days or two weeks.

15         That is, in fact, by nature of being a data

16  broker, uniquely able to tell who is the person coming

17  to them?  What is this person -- you know, what do I

18  have on this person?  In fact, I suspect if they renew

19  this at Summary Judgment, Judge Freeman, that we'll

20  learn that they know much more about us, then we

21  probably even want to know.  So I imagine they know

22  quite a bit about myself, my daughter, everybody.  I

Page 78

1   don't think it's actually likely to come out that they

2   have trouble in the mine run case, figuring out if a

3   person is a covered person or not.

4         JUDGE BIBAS:  There is this issue.  They get

5   19,000 of these things.  They submit boilerplate, I am

6   a covered person.  They're entitled do a little bit of

7   verification.  Is this in fact a cop or someone just

8   wants his information down, et cetera.  Can we expect

9   them to do 19,000 of these in 10 business days over

10  the Christmas break?

11        MR. ZUCKERMAN:  So, Your Honor, two answers

12  to that.  I mean, the first is just, I don't think

13  that gets the facial validity of the statute.  That

14  sounds like some sort of fact specific dispute between

15  the parties about these specific requests.  Not a

16  reason to strike down the statute.  But second, I do

17  think two points on the kind of technology, and again,

18  a record at Summary Judgment might show more about

19  this.  My understanding is they do in the main, have

20  very simple tools for automating this and that, in

21  fact, Big Data knows really well how to do this very,

22  very quickly.  Leave aside the rare case where it's a

Page 79

1   mom-and-pop shop and they need 11 days.

2          Again, I want to talk about mens rea because

3   I want to talk about what I think would kick in, in

4   that kind of rare hypothetical.  But to the earlier

5   colloquy, Net Choice tells you everything you need to

6   know about why that can't drive the bus here.  I also

7   just want to note Judge Bibas that I think on the

8   19,000, there are other laws that require them to take

9   down other people's addresses too.  I don't think it's

10  quite -- I don't want to oversell this and suggest

11  it's an Article 3, redressability problem, because the

12  laws are a little bit different.  But the New Jersey

13  Data privacy law already requires them to basically

14  take down information if anybody asks.

15         So it's not as if there's a circumstance

16  where someone says, "Hey, I'm a Jersyan, and please

17  take down my information."  And they say, "Oh, geez,

18  well, I'm not sure that this person is a cop or not,

19  or I'm not sure they live with a cop, so maybe I can

20  ignore it."  I mean, they shouldn't be ignoring it

21  anyway.  The regimes are slightly different.  Again,

22  we're not saying it's quite a redressability problem,

Page 80

1   but it does get to the tailoring.  It does get to the

2   asserted burden they claim to be facing, which in

3   fact, especially on this facial posture, I think has

4   to be understood to be quite, quite low.

5           Judge Bibas, I also just want to agree that I

6   think the history of privacy torts are really

7   important here.  I do think this is in the main, a Dun

8   & Bradstreet case, and not a Smith versus you know,

9   Daily Mail or Florida Star case.  I think Vidal

10  Paxton, I'll add Davenport versus Washington Education

11  Association to the mix there as cases where the

12  Supreme Court tells you pretty clearly that there is -

13  - that we think about how we apply strict scrutiny

14  with some common sense and some historically inflected

15  understanding.  And it doesn't require founding era

16  history.  It doesn't need to be pre ratification

17  history.  Again, Paxton just looked to New York versus

18  Ginsburg, Ginsburg versus New York, which is a 1968

19  precedent as a tradition.  Vidal looked to the Lanham

20  Act from 1946.

21          JUDGE CHUNG:  May I ask you about that.  In

22  Vidal, there was no majority on what level of scrutiny

1   applied.  In Paxton, there is.  And in Vidal, the

2   phrase used over and over was history and tradition.

3   In Paxton, it says history, tradition, and precedent.

4   What does that difference mean, if anything here?

5           MR. ZUCKERMAN:  So at the finer points of

6   First Amendment theory, Judge Chung, I'm not sure.  I

7   think here, it reflects in part the fact that the text

8   of the First Amendment may not tell us very much in

9   this case, of course, because the text of the First

10  Amendment is broad.  I do think, and I'd have to

11  reread Vidal.  I actually thought that Justice Thomas

12  did have five votes for intermediate scrutiny in

13  Vidal.  But I apologize if I'm misremembering that.

14  There was disagreement on --

15          JUDGE CHUNG:  Is where he did scrutiny, and

16  that's where he did not have a majority, if I recall

17  correctly.

18          MR. ZUCKERMAN:  I'd have to go back at it,

19  but I do -- there was disagreement certainly in Vidal

20  and how you do the historical analysis to determine

21  that this is not the kind of situation where you

22  should be applying strict scrutiny.  But it seems to

Page 82

1    me there were a number -- there were, well, more than

2    five votes in Vidal for the idea that you don't just

3    automatically do strict scrutiny.  Even if you think

4    something is formally content-based, you do look at

5    whether some -- there is some realistic possibility

6    that suppression of ideas is afoot.

7            JUDGE FREEMAN:  I get it.  But that this was

8    this very narrow context in Vidal, right?  I mean, you

9    can't do trademark without looking at content like it,

10   right?  So I mean, like how do you then sort of expand

11   that to, it sounds like you're saying, well, privacy

12   torts, like all privacy torts, right?  You can't, you

13   know, therefore don't get strict scrutiny because

14   privacy is important historically.  I mean --

15           MR. ZUCKERMAN:  Judge Freeman, I do think

16   that's -- I think I agree with some of that actually,

17   because I do think the nature of privacy torts tells

18   you that they occupy a unique constitutional space

19   because they like trademark.  Like I'd also commend to

20   the Court, Judge Hart's opinion for the 10th Circuit

21   in Vote America versus Schwab.  It's about voting

22   about prefilled mail-in ballots.  But again, there's

Page 83

1   circumstances where you kind of have to look at

2   content a little bit, and we can debate whether

3   formalistically this is content-based or not.

4           But even if you just assume it is for sake of

5   argument, it's the kind of content-based analysis that

6   is inherent in all sorts of speech related torts,

7   defamation, intentional infliction of emotional

8   distress in Snyder, all of the privacy torts.  You

9   really can't do that analysis without thinking a

10  little bit about content and the idea that you then

11  have to run strict scrutiny on any time a state

12  codifies any kind of privacy tort like that.  I think

13  that way madness lies.  I don't think it's true to the

14  precedent or the history.  Again, this particular law

15  you know, is -- has one purpose.  We have other laws

16  like this.  Lots of states have privacy laws -- for

17  victims of domestic violence, for victims of sex

18  trafficking.

19          JUDGE CHUNG:  This -- if you talk about

20  privacy torts, especially ones that are about the home

21  and the sanctity of the home, they're really aimed at

22  the actual intruder into the home.  This is one step

Page 84

1   removed.  This is aimed at the person who's

2   facilitating a possible intruder.  So does history and

3   tradition and precedent support that?

4          MR. ZUCKERMAN:  Judge Chung, I think it does,

5   because I think it's the New Jersey legislature, like

6   other legislative bodies updating those -- that sort

7   of old wine, putting it in new bottles for evolving

8   problems.  So it was true that in, you know, Martin

9   versus Struthers in whatever the 40s in Rowan in -- I

10   forget if that's the 60s or the 70s, you could kind of

11   say, no solicitation, or please take me off your

12   mailing list.  The evil doers, or would be evil doers

13   that this law is responding to, of course, do not

14   respond to no solicitation signs.  You can't of

15   course, put up a sign that just says, please don't

16   come terrorize my family.  Please don't come assault

17   my family.

18          So preventing them from figuring out where

19   you live, where you are most vulnerable, where you

20   don't have metal detectors and the marshals you know,

21   at you know, around the clock is I think the best way.

22   It's a fully narrowly tailored way as the New Jersey

Page 85

1   Supreme Court held in Kratovil.  We certainly would

2   also urge you not to split with them on that.  So I

3   think here it is, doing that work just for modern

4   problems.

5           JUDGE BIBAS:  You said you were going to get

6   to mens rea and my colleagues had some pointed

7   questions about this.  Your friend on the other side,

8   you know, points out that ordinarily we expect a mens

9   rea in these laws, and Mr. Boies' main response is,

10  well, but you got notice here.  That's enough.  What

11  were you going to add to that discussion?

12          MR. ZUCKERMAN:  Yeah.  I have a -- I think I

13  have a few different -- a slightly different take or

14  let me go through a few different points on the mens

15  rea.  I mean, I do want to start Judge Bibas with the

16  point you raised, which is that mens rea is usually a

17  prophylactic tool.  That's what Counterman makes

18  crystal clear.  We put it in there because we don't

19  want people steering too wide of the zone of

20  restriction.  And so, in true threats, it's really

21  important because you know, you don't know if it's a

22  joke or threat.  Here notice does a lot of work.  And

Page 86

1   so, the legislature would have reasonably understood

2   that by saying, you have two full weeks, 10 business

3   days to comply, you must get valid written notice.

4        And being kind of cognizant of the state of

5   technology in this space they actually increased it,

6   it used to be 72 hours under the older scheme that I

7   think my friend Mr. Berry suggested was better.  It's

8   now 10 days.  So that's one way in which it's actually

9   better for his clients.  I think they could understand

10  that that would in most cases mean you're not going to

11  have real world applications where the person wasn't

12  at least negligent because they've been given all of

13  this notice.  This is not a situation like Florida

14  Star, where the government itself put the information

15  in the press room, the newspaper publishes, and then

16  all of a sudden gets hit with a tort suit and it

17  doesn't know what it's doing.

18        JUDGE FREEMAN:  They also are getting notice

19  that doesn't include any kind of verification that the

20  person making the request is actually a covered

21  person.  They're just getting a bald assertion that

22  this person is a covered person, take it down, and

Page 87

1    then they're being told that they must comply within

2    10 business days.

3                MR. ZUCKERMAN:  So I think that's right.

4    Judge Freeman, I think that's a natural part of all of

5    these kinds of privacy-based laws where you have given

6    someone a take down, you know, opportunity.  It's true

7    of reg -- you know, any New Jersey City citizen, even

8    if they're not a covered person, they didn't have to

9    give you more (crosstalk).

10               JUDGE FREEMAN:  Prior versions of the statute

11   require that the government to provide some sign of a

12   certification that someone was covered.

13               MR. ZUCKERMAN:  It's never required the

14   government to provide some kind of a certification.

15   You've always been able to go in kind of perimetria to

16   go both to the government and to the private entities

17   and say, please take down my information.  I think

18   what my friend Mr. Berry wants is that you have to go

19   to the government, you go through the government

20   process.  As long as that takes, then you get some

21   sort of seal of approval from the government that you

22   can then take to all, you know, 80 to 800 data

Page 88

1  brokers, and then they're going to respect it.  And I
2  think I have two basic problems with that.
3           One, if, you know, you're about to be
4  assigned to investigating a dangerous gang that you
5  think is trying to, you know, intimidate law
6  enforcement you may not want to wait to have to do a
7  two-step process.  You might want to be able to, you
8  know, cover the waterfront at once rather than this
9  kind of two step.  Second of all, if that
10  certification validation that you get from the
11  government has your own -- more of your own data on
12  it, it's quite perverse to say, oh, give these data
13  brokers your social security number so you can prove
14  to them you are who you say you are.
15           Third, they have tools available to
16  themselves that they can use to figure out if you are
17  the person that you say you are anyway.  Fourth, it's
18  very hard to figure out what the real-world example of
19  someone who's fraudulently going to them and saying,
20  please take down my information on behalf of someone
21  else.  It's an odd form of kind of entrepreneurialism.
22  I mean, they're just mostly going to take it down.

Page 89

1    And then, what did you accomplish?  if their theory is

2    that they're going to be unethical lawyers running

3    out, making claims, again, they'll lose those claims

4    if it's a false person and the lawyers are going to be

5    gambling with their bar license.  So that seems really

6    unlikely.  And then fifth I think that --

7            JUDGE CHUNG:  But what if it's there are 400

8    Michael Zuckerman's in my database.  I guess I'm just

9    going to take them all down because I got this notice.

10            MR. ZUCKERMAN:  So again, we made this point

11   in the district court as well.  And I think Judge

12   Chung in that kind of as applied circumstance where

13   there is someone who has a very, very common name,

14   multiple John Smiths, the data broker could have call

15   -- could of course go back to that John Smith and say,

16   we're so sorry we're having trouble figuring this out.

17   We've got a number of John Smiths.

18            JUDGE CHUNG:  Does the law require notice of

19   what is the covered address and what is the covered

20   phone number?

21            MR. ZUCKERMAN:  So if you go to the

22   complaint, there is a redacted -- there is an example

Page 90

1  sample notice attached, and they do -- you are

2  supposed to say what you want taken down.  So my

3  understanding is they do normally say what the

4  information is.  Now, of course, their hypothetical

5  is, well, someone could just lie and say they're

6  covered person X who lives in 123 Main Street, but

7  they're not really that covered person.  I just think

8  that seems unlikely.  And then if it ever did happen,

9  they'll lose that case.  If there is a case where some

10 -- where it's still ambiguous, there's two John Smiths

11 and they both live at 123 Main Street, then I think,

12 you know, maybe that sounds like an as applied

13 challenge or some sort of, you know, unique

14 circumstance.

15         JUDGE FREEMAN:  But we were talking a little

16 while ago about chilling speech and how chilling has

17 to do with ambiguity and people not -- and speakers

18 not knowing whether they're covered or like, it can't

19 -- isn't it quite possible that a defendant would get

20 a -- you know, get an e-mail out of nowhere, say, you

21 know, "I'm a covered person.  My name is John Smith,

22 my phone number is, you know, what -- is such and

1    such?" And for that -- the recipient of that notice

2    to, to not know if they need to take that down and,

3    and be chilled from expressing whatever they were

4    going to express, you know, whether it's a data broker

5    or a journalist or something be chilled because they

6    think they might be covered by this law.  There's some

7    uncertainty there.

8            MR. ZUCKERMAN:  Well, Judge Freeman, again, I

9    think that gets back to the fact that there's a

10   separate law that they're not challenging the New

11   Jersey data privacy law, which they actually say they

12   like.  They think that would be a better model that

13   also independently requires them to take down

14   information.  So it's not as if they get these -- this

15   is what I'm trying to get at with the idea that it's

16   actually quite hypothetical that there's going to be a

17   circumstance where they get a request from a person

18   and they think, oh, maybe this is someone whose

19   information I don't need to take down, whose

20   information I don't want to keep disclosing.

21           I don't disagree, Judge Freeman again, in

22   Kratovil we conceded there would be -- we suspected as

Page 92

1    applied situations where a journalist said, I really

2    want to say that, you know, so and so lives at 123

3    Main Street because 123 Main Street is part of this

4    shady land deal.  And I can't tell my news story

5    unless I point out the exact parcel that the land deal

6    was about.  That's conceivable.  It's just very much

7    the stuff of case-by-case adjudications and --

8              JUDGE BIBAS:  All right.  So your appellant's

9    counsel argues with some force that cases like Florida

10   Star and Daily Mail, say, look, if the government is

11   disclosing this stuff, then the gov -- the lesser

12   restrictive means is government stop disclosing it.

13   Now, Mr. Boies' response was, I think he cited DOJ

14   versus Reporters Committee Freedom of the Press.

15   There is a big difference between saying a whole bunch

16   of paper land records versus making this available

17   online.

18              Help us to understand in terms of addresses

19   and unlisted phone numbers, what it is that New

20   Jersey, the State, and what is it that the counties

21   put out there in electronic form that's already

22   searchable, and what is it that's coming from paper

1   records that the data brokers are getting?  Because I

2   want to understand whether this is a qualitative shift

3   that is being made by the data brokers.

4           MR. ZUCKERMAN:  Sure.  Judge Bibas.  So let

5   me try to answer that at least a medium level of

6   generality, and then we can certainly get into the

7   weeds of the statute because there is a sort of

8   reticulated scheme for making sure the title system

9   can still work, making sure that elections can still

10  happen.  But basically, on that the kind of already

11  government already providing the information, I think

12  I want to make you know, two points.

13          One is you got to understand the structure of

14  Daniel's Law, which is that it devolves autonomy onto

15  the covered persons and says, you know, it's -- we're

16  going to give you the right to go out to someone and

17  say, "Hey, please don't disclose my information

18  anymore."  So that's why you don't really have to

19  worry Judge Chung about the hypos where someone's

20  friend is afraid to share their address.  As long as

21  you haven't said to your friend, "Hey, please don't

22  tell where I live because I'm investigating MS-13 and

1  I'm afraid they're trying to harm my family."  Your

2  friend's not going to be worried about it because they

3  have no, you know, notice.

4       Now, the State provides a kind of a single

5  stop on this.  You can go to the Office of Information

6  Privacy, say, "Please redact my information."  At that

7  point, you have to make some sort of affirmations or

8  understandings that you understand that you're

9  relinquishing or burdening some of your separate civil

10  rights and civic opportunities by virtue of making

11  that request.  If you do that, you go through that

12  system, they then communicate that out too.  And it's

13  sort of a waterfall of information across from the

14  State down to the, you know, regions, counties

15  municipalities.  So --

16       JUDGE BIBAS:  What are the main government

17  sources of the information?  Is it DMV records, voter

18  rolls, and property records?

19       MR. ZUCKERMAN:  I think, again, I mean on a

20  summary judgment record, we could have more evidence

21  about where.

22       JUDGE BIBAS:  We don't know.

Page 95

1          MR. ZUCKERMAN:  I don't -- but I would

2    suspect it's deeds.  I think it's probably county

3    based deeds searches.

4          JUDGE BIBAS:  But the county-based deeds, are

5    those normally searchable by owner's name or just by

6    address or lot or something like that?

7          MR. ZUCKERMAN:  Many of them are searchable.

8    I haven't logged onto all -- to all 21 counties.  Many

9    of them are searchable by name, but you can redact

10   them so a covered person can, through this process,

11   have their name redacted from their mortgage, for

12   example.  There is this one very, very narrow carve

13   out that I don't even think my friends on the other

14   side really dispute or try to claim suggests some kind

15   of overbreadth.

16         JUDGE CHUNG:  And why do you say mortgages

17   can be redacted?  Because it just says encumbrances.

18         MR. ZUCKERMAN:  Yeah.  It's sort of --

19         JUDGE CHUNG:  I mean, I saw the reference

20   that you made to the other law in another section that

21   simply lists mortgages in a different line.  But that

22   doesn't mean it's not an, an encumbrance under

Page 96

1   Daniel's Law, does it?

2            MR. ZUCKERMAN:  I agree.  I mean, so, Judge

3   Chung, I don't think any party is actually disputing

4   that it is only a carve out for non-mortgage liens.

5   But still to answer the question, because of course,

6   theoretically we could all be wrong about that.  We

7   read the cross-reference.  It's -- you kind of -- it's

8   a complicated statute.  So I would also commend to the

9   Court, I think it's Pages 8 to 10 of the Atlas brief,

10  and I think they do this again in the 40s, I want to

11  say 42 to 46 of their briefs.  They go through it in

12  more depth.  They'll probably do it more justice than

13  I can do it from the podium right now.  But it is this

14  cross-reference in 47-1B-3 to other than as provided

15  in Sub-paragraphs D and E of Paragraph 4 of the

16  subsection, which then sends you and tells you that it

17  wants records of liens and assessment lists to be

18  treated differently.

19            There's this thin cross -- I think I'm

20  getting this right.  Again, this is dangerous to try

21  to do from the podium.  The cross reference to, I

22  think it's to 46-26A-2, that then does the listing

Page 97

1    separately.  Does, as we read it, suggest that what

2    the legislature thinks it's doing is treating those

3    other encumbrances as what it means when it says

4    encumbrances, because otherwise, it makes no sense in

5    47-1B-3 to be requiring in-person or to be requiring

6    special authorized individuals like title agents to

7    have some special right to get your unredacted

8    address.  Why would you not -- if that was unredacted

9    to everybody, why would you be giving a special right

10   to the title agents to be able to get it?  It's

11   probably the simplest way to say the inference.

12            JUDGE CHUNG:  For the few remaining, let's

13   say you're right, there's a limited number of things

14   that can be disclosed by the government.  Does the

15   carve out in the section regarding internet

16   disclosures that says if you've obtained it from the

17   government and disclose it consistent with the

18   government's guide rails, then this doesn't apply to

19   you.

20            MR. ZUCKERMAN:  So --

21            JUDGE CHUNG:  Will that cover all government

22   disclosures of someone who opts out of the government?

Page 98

1              MR. ZUCKERMAN:  So, I'm sorry, Judge Chung,

2     just to make sure I understand the question.  So if

3     someone is given a -- has received notice from a

4     covered person.

5              JUDGE CHUNG:  If I opted out with the

6     government.

7              MR. ZUCKERMAN:  Uh-huh.

8              JUDGE CHUNG:  And then someone else gets --

9     and I've also opted out with a data broker.

10             MR. ZUCKERMAN:  Uh-huh.

11             JUDGE CHUNG:  Or a real estate broker, and

12    the real estate broker gets property records pursuant

13    to one of the carve outs.

14             MR. ZUCKERMAN:  Uh-huh.

15             JUDGE CHUNG:  And discloses it consistently

16    with the guide rails of that.  Does that fully cover

17    all government disclosures in, there's a carve out

18    here in Daniel's Law that says if you obtain

19    information in subsections 47-1B-1 through 47-1B-3 and

20    do it consistently with those sections, you're not

21    covered.  However, if you do it inconsistently, you

22    are covered by Daniel's Law.  Does that cover all

Page 99

1   publicly available unredacted information if I opt out

2   with the government?

3            MR. ZUCKERMAN:  I don't know that E would

4   cover, I'm not sure that that Subsection E would cover

5   someone who did not receive the information unredacted

6   pursuant to one of those exceptions.  I think in your

7   hypo, the real estate agent would be receiving it

8   unredacted pursuant to those exceptions.  So they

9   would be covered by E.  E would be the safe harbor for

10  them.

11           JUDGE CHUNG:  Right.  That's my question.

12           MR. ZUCKERMAN:  There's a separate reason

13  that someone, even if the real estate broker weren't

14  saved by E, I think the real estate broker would

15  probably still be saved by the fact that they hadn't

16  independently been asked not to share your information

17  by, you know, share the covered person's information

18  by the covered person.  So, you know, if you had a

19  third party from the real estate agent's office who

20  then found the information and just in total good

21  faith sent out a housewarming party notice for the

22  person, they wouldn't have violated anything because

Page 100

1    they hadn't been asked not to share the information by

2    the covered person.

3         Now, if they sent out that housewarming

4    information -- you know, party invitation and the

5    covered person says, "Oh, I'm so sorry.  Please delete

6    that from E-vite or paperless post immediately because

7    I'm really trying to keep my address private."  Then I

8    think assuming that E wouldn't apply to that kind of

9    third party, maybe you'd have some as applied

10   argument, are they in privity with the real estate

11   agent.  But assuming they're not covered by E then

12   they would probably have to take it down.  But I think

13   that's just consistent with a well-tailored law.

14        JUDGE CHUNG:  And finally, what is your

15   statutory interpretation of or otherwise make

16   available?

17        MR. ZUCKERMAN:  Yeah.  I do think Judge

18   Chung, does go to things otherwise, you know, outside

19   of the internet, I think it requires some sort of

20   external sharing.  So I don't think it covers keeping

21   things on an internal database that, you know, your

22   employees nevertheless continue to have access to.

Page 101

1    But I do think it means that someone who wants to

2    obtain this kind of information can't end run the

3    statute by asking for it by mail.

4          I mean, again, we have people who use lots of

5    different methods to try to obtain this information.

6    I mean, the man who murdered Judge Salas' son was an

7    attorney.  It wouldn't have been as tailored to

8    statute if he could have just gone to one of these

9    data brokers that sells a judge's address for a $1.95

10   and said, "Well, just mail it to me," because then

11   you'll be out of the internet and you'll be safe.

12         So we do think it covers things beyond the

13   internet, but that doesn't make it any -- that's not

14   overbreadth.  That's to Judge Bibas' earlier point

15   that's accurately and adequately protecting the actual

16   interests of the statute.  I think that's also true of

17   the kind of claim assignment sort of claim aggregation

18   possibilities.  I think it just makes it more

19   effective.  I do want to say one more thing if I

20   could, and of course happy to answer any other

21   questions the Court has on mens rea.  If you are not

22   persuaded by what I've said about mens rea, I just

1   want to make two other points.  It -- this is a state

2   law question.  So Judge Bartle's guess was an Erie

3   guess.  We think it was right.  the New Jersey Supreme

4   Court in Kratovil had no occasion to talk about the

5   precise floor of negligence because it was purpose in

6   Kratovil.

7           Mr. Kratovil wanted to publish, Director

8   Caputo's home address.  He said that, so there was no

9   reason to talk about what would happen if he just

10  accidentally published Mr. Caputo's address despite

11  having received notice.  I do think the statutory text

12  and structure are strong here.  We do import sort of

13  backdrop scienter requirements all the time, even when

14  the legislature doesn't make our lives easy and write

15  the exact word in it.  Hanson, which we primarily cite

16  as an over breath case from the Supreme Court in 2023

17  does this for aiding and abetting.  It is totally

18  normal to do that old soil importation.

19          And here you are importing a negligent

20  disclosure tort, you're just codifying in a statute,

21  so it makes total sense.  It would take that old soil.

22  It also makes sense that you wouldn't derogate from

Page 103

1 the common law and create this new species of strict

2 liability, a very rare type of liability in New Jersey

3 Tort law without a clear statement. That's Marshall

4 versus Klebanov, which they cite -- Atlas cites in

5 their brief.

6 JUDGE CHUNG: And ordinarily that might make

7 sense, but since this is a new version that eliminated

8 an explicit mens rea maybe that is not so far field.

9 MR. ZUCKERMAN: Well, I think they -- it's

10 just statutory silence, I guess. Judge Chung, I don't

11 believe they eliminated a form of mens rea that was

12 less -- frankly less covered less because it was -- it

13 served the statute's interest not as well because it

14 required you to be negligent as to the precise harm to

15 the person. So if you went to the data broker and

16 said, "Please take down my information," and they

17 said, "Oh, well, I don't really know if your life is

18 that dangerous or not." That would, I guess, be a

19 defense in that situation.

20 And the legislature, I think quite reasonably

21 assumed, or decided that's not good enough. People

22 should have a right to control their own data. You

Page 104

1    know, even if the data broker isn't aware of the inner

2    facts of their life and what the exact source of the

3    risk is, especially given that this is already low

4    value speech.

5             The final thing I'll just say though, if you

6    have any doubts, Judge Freeman, about the precise, you

7    know, mens rea that you think the New Jersey Supreme

8    Court would apply, I do think that Kratovil's

9    discussion about it not being a trap for the unwary

10   and it being a strict notice requirement is probative.

11   And I would urge you not to split with them on the

12   fact that this is the least restrictive means

13   available.

14             But if you have doubts, I would commend to

15   the Court, Judge Freeman's separate opinion in

16   Zanetich versus Walmart, which is, it's a state law

17   question.  Certification is always available to have

18   them answer.  If you think it's there wouldn't be some

19   negligence defense at the end of the day where some

20   data broker could show, "Look, I needed 11 days and

21   I'm being held liable, even though it was quite

22   reasonable for me to not do this in the first 10."  I

Page 105

1    think the New Jersey Supreme Court would say they can

2    raise that negligence defense despite the statutory

3    silence.  But if you have any doubts I think Judge

4    Bartel's Erie guess was right and you could certify it

5    to the New Jersey Supreme Court and they could give a

6    definitive answer of whether of how to read the

7    statute.

8                    JUDGE BIBAS:  Thank you, Mr. Zuckerman.

9                    MR. ZUCKERMAN:  Thank you.

10                   JUDGE BIBAS:  Mr. Berry, I think you reserved

11   five minutes rebuttal.

12                   MR. BERRY:  Thank you, Your Honor.  I'd like

13   to address four points and then answer any questions

14   that you all have as well.  First, the last point that

15   Mr. Zuckerman was discussing.  I'd like to discuss the

16   privacy questions that came up, the disclosure

17   questions that Judge Chung has been asking each of us.

18   And the facial challenge point last.

19                   With respect to this last question about

20   certification there is -- this isn't a state law

21   question.  This is a First Amendment question, and the

22   courts in both the 6th Circuit and the 8th Circuit in

Page 106

1    the cases that we've cited in our papers, the City of

2    Dearborn case and the Video Software Association case

3    struck the statutes because they were violative of the

4    First Amendment, they created strict liability

5    regimes.

6          The New Jersey Supreme Court has already

7    spoken to this precise situation in the Pomianek case

8    where there was no provision for mens rea in one of

9    the subsections and said that one could not be

10   transplanted in.  In the Goldenhagen case and others

11   that are cited in the Atlas papers, the Court did just

12   the analysis.  I believe Judge Chung was talking about

13   where there was a change in the mens rea requirement

14   for dog bite situations where the owners had been at

15   common law, there was a requirement of mens rea.  The

16   legislature affirmatively changed that to strict

17   liability, and the court said that is now the law.

18   That is the New Jersey court has already answered

19   this, but it's a First Amendment issue reserved for

20   this court.

21          Second, with respect to privacy, there were a

22   number of comments made by both Mr. Boies and Mr.

Page 107

1    Zuckerman about privacy.  Privacy laws are not exempt

2    from strict scrutiny.  There is literally no court has

3    held that a privacy law is exempt when it is content-

4    based.  In Schrader, this court said that strict

5    scrutiny applied to what was a privacy statute because

6    it was content-based.  The 9th Circuit in IMDB held

7    explicitly that privacy statutes are not exempt from

8    strict scrutiny.

9            And if this Court were to hold otherwise, it

10   would be splitting from the 9th.  Here, I think it's

11   difficult to turn this statute a privacy statute

12   because privacy is not actually required here.  There

13   are a bunch of questions about what the government's

14   requirements are.  But those requirements only kick in

15   if a covered person makes a redaction request.  And

16   there is no requirement under the statute for the

17   covered person to do so, to be able to then suppress

18   speech by private actors, that's one of the narrow

19   tailing problems.

20           As a result, even if somebody does make a

21   request, there's no remedy that a person has -- as to

22   the government if they fail to comply.  And here the

1   information is available even on the internet.

2   Several of the plaintiffs, as we've shown in our

3   papers, their information is available through county

4   records.  If a person doesn't in themselves take steps

5   --

6           JUDGE BIBAS:  I think Mr. Zuckerman made the

7   point that people can take it down from the county

8   records through this process, but it's still out there

9   from having previously been on the internet.  So isn't

10  this the least restrictive means of dealing with that

11  problem?

12          MR. BERRY:  No.  Because --

13          JUDGE BIBAS:  Someone wasn't a cop, he

14  becomes a cop, he says, now I've got this dangerous

15  assignment, I want to take it down.  So he gets the

16  government to stop disclosing it.  What's he supposed

17  to do?

18          MR. BERRY:  The law does not require the cop

19  to take that step, and that is the issue.  The cop can

20  say, the government can continue to publish this stuff

21  freely, but I still am going to go after these 200

22  different entity --

1             JUDGE BIBAS:  Because it's not required.

2     Okay.

3             MR. BERRY:  It's not required.  And that's

4     the narrow tailoring problem.

5             JUDGE CHUNG:  Why (crosstalk).

6             MR. BERRY:  And that's why the statute is not

7     a privacy statute.

8             JUDGE CHUNG:  Why does that matter if this is

9     about a person controlling how their own information

10    is disclosed.  So to the point that's been made by

11    some of your colleagues, you know, maybe on some of

12    these counties you can just get it very easily.  Let's

13    say this person lives in a county where you have to go

14    through a lot of hoops to get it and they have a lot

15    of property.  I don't -- you know, go with me on the

16    hypo.

17            MR. BERRY:  Uh-huh.

18            JUDGE CHUNG:  And so, as someone who's

19    controlling their information and it's their own chill

20    that is being addressed, meaning their own chill in

21    doing their job, they have decided that risk is

22    minimal, this risk is very great.  Why is that a

Page 110

1   problem?  If it's it -- in Rowan, the person opted out
2   and the Supreme Court said it's fine for that person
3   to decide what content to them is unwanted or how they
4   want to protect the right of privacy in their home.
5   If someone wants to control what they view as the risk
6   of chill to their own conduct, why can't they do that?
7           MR. BERRY:  I think there's multiple answers
8   to your question.
9           JUDGE CHUNG:  Okay.
10          MR. BERRY:  First, with respect to Rowan, in
11  these cases, again, it's intrusions into the home.
12  It's somebody actually providing information into the
13  home.  Where there are other avenues of speech.  That
14  is not the case here.  Second, with respect to
15  controlling the information.  That is not what New
16  Jersey said was the compelling interest.  The
17  compelling interest here is safety and security.  The
18  controlling your own information it comes up in these
19  cases where the government itself can -- has the
20  information and whether the government can disclose
21  it.  It is a very different than when the information
22  is out there publicly among other people.

1          And that's what sets this apart from things

2     like HIPAA or the Video Privacy Protection Act.

3     Somebody is giving information over to someone to hold

4     that information is a very different situation than

5     addresses and phone numbers, which has historically

6     been public.  Third, with respect to the control in

7     general, again, if somebody makes a decision to say,

8     "I'm going to, you know, not have the government

9     redact my information," and it can put it up there

10    with impunity, that doesn't really address a privacy

11    point.  That just gives them a means to sue other

12    people for using the exact same speech that they've

13    allowed from the government, which is not narrowly

14    tailored under any circumstances regarding --

15    regardless of what the interest is.

16          JUDGE CHUNG:  And what about both -- well, I

17    guess in Vidal it's more like dicta, but also in

18    Paxton it explicitly says in trademark there can be

19    room for innovation, in Vidal, it says, you know, the

20    internet from the Reno days very different than the

21    internet today, and people are allowed to innovate.

22    Can you address that point as far as this may be being

1    more necessary in the new age, so to your colleague's

2    point?

3            MR. BERRY:  As I started with, you know, some

4    time ago at the beginning of the argument here.

5            JUDGE CHUNG:  Uh-huh.

6            MR. BERRY:  Our point is not that the

7    government can't ever restrict the publication of

8    public officials addresses.  That's not our position

9    at all.  The position is whether New Jersey's statute,

10   what they have done and what they have done alone,

11   whether that runs afoul of the First Amendment.  Other

12   states, the federal government have dealt with this in

13   very different ways.  We're not saying that the New

14   Jersey is powerless.  We're saying that it exerted a

15   power that exceeds what is the constitutional limits

16   under the First Amendment.

17           I'd like to just, if I could address the two

18   other points that I said.  The first is with respect

19   to disclosure.  Judge Chung, you've asked each of us

20   this multiple times and I just want to return to it.

21   As I think Mr. Zuckerman just conceded.  It doesn't

22   mean just publish on the internet.  But again, even if

Page 113

1   it means just on the internet, it is broader than

2   simply saying it can't be publicly posted on the

3   internet.  It's any disclosure whatsoever.  So again,

4   returning to Thomson Reuters and the CLEAR product, it

5   is an electronic product that when Your Honor was in

6   the U. S Attorney's office, is made available over the

7   internet.  That information would be barred by this.

8            One of the appellants here provides address

9   information to the New Jersey legislature so that the

10  legislators can communicate with their constituents.

11  They do that by the internet.  The way that

12  information is exchanged today is via the internet.

13  Mr. Zuckerman relatedly said, well, this -- the mine

14  run of these cases deal with data brokers.  But that

15  is not the target of what this statute is about.  It

16  includes any person, any business, any organization,

17  which again, is vastly different than what the federal

18  government has done, what other states have done.

19            Moreover, in a content-based restriction, the

20  question is not who is restricted, but what is

21  restricted.  And the statute is very clear about what

22  is restricted here is based solely on the content.

Page 114

1   And Mr. Zuckerman went on at length about the

2   technology available to, you know, my client, Thomson

3   Reuters, the large companies that are here, but the

4   people who have been sued includes sole

5   proprietorships.  There's appellants who are before

6   you, who are non-profit organizations.  The issue here

7   is that a dis -- information could be disclosed by the

8   government to a real estate broker, but some sole

9   proprietorship who receives a notice cannot provide

10  the same (crosstalk).

11        JUDGE BIBAS:  We are out of time.  I do want

12  to allow you to make your last point -- facial

13  challenge, but you should wrap up.

14        MR. BERRY:  Oh, I apologize.  I apologize.

15  Yes.  On the facial challenge, there seems to be a lot

16  of questions that are tied to the Moody decision.

17  Moody did not overrule the Supreme Court's decisions

18  in Reed.  It did not overrule Brown.  It did not

19  overrule Playboy.  In the context of a facial

20  challenge to a content-based restriction on speech.

21  The law is unconstitutional in all of its

22  applications.

Page 115

1          In Moody, the situation was very different

2    because the text of the statute applied to both First

3    Amendment protected activity like moderating

4    newsfeeds, but it also could apply to other activities

5    where it was questionable whether there was any First

6    Amendment activity filtering e-mail, transmitting

7    direct messages.  Following Moody courts around the

8    country continue to apply strict scrutiny to content-

9    based challenges when the statute as a whole, like

10   this one restricts speech period.  X Corp versus Bonta

11   in the 9th Circuit, the Reyes case in the District of

12   Utah, the Alexander case up in the Southern District

13   of New York.

14          Here, the restriction on speech occurs in

15   every circumstance, applies to all people, all

16   businesses, all organizations, in all circumstances

17   with no exceptions.  It is a content-based restriction

18   that fails strict scrutiny and should be struck as

19   unconstitutional.

20          JUDGE BIBAS:  Thank you.  We thank Counsel

21   all around for their excellent briefing and oral

22   arguments.  We'll take the matter under advisement.

Page 116

1    I'd ask party -- both parties to work together,

2    prepare transcript, and split the cost.  We will go

3    off the record briefly and we'd like to greet arguing

4    Counsel, Mr. Berry.  Mr. Boies, Mr. Zuckerman at

5    sidebar to thank you for coming here and then we'll go

6    back on the record briefly for another --

7               (Whereupon, the proceeding was concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

1               CERTIFICATE OF TRANSCRIBER

2          I, RODIE DEAN, do hereby certify that this

3     transcript was prepared from the digital audio

4     recording of the foregoing proceeding, that said

5     transcript is a true and accurate record of the

6     proceedings to the best of my knowledge, skills, and

7     ability; that I am neither counsel for, related to,

8     nor employed by any of the parties to the action in

9     which this was taken; and, further, that I am not a

10    relative or employee of any counsel or attorney

11    employed by the parties hereto, nor financially or

12    otherwise interested in the outcome of this action.

13

14                                    /s/signature

15                                    RODIE DEAN

16

17

18

19

20

21

22

| & |
|---|
| **&** 6:6 29:6,7,11 |
| 29:12,18,19 |
| 30:1 32:12,14 |
| 32:16 33:7,19 |
| 34:3,5,7 71:12 |
| 80:8 |

| 0 |
|---|
| **08** 21:10 |

| 1 |
|---|
| **1** 98:19 |
| **1.95** 101:9 |
| **10** 65:3 75:14 |
| 77:13 78:9 |
| 86:2,8 87:2 |
| 96:9 104:22 |
| **100** 76:21 |
| **10504** 22:15 |
| **10th** 62:20 |
| 82:20 |
| **11** 79:1 104:20 |
| **11th** 69:21 |
| **12207** 23:14 |
| **123** 90:6,11 |
| 92:2,3 |
| **12th** 23:13 |
| **13** 93:22 |
| **1735** 22:6 |
| **19,000** 64:19 |
| 78:5,9 79:8 |
| **19103** 22:7 |

| **19106** 21:15 |
|---|
| **1946** 80:20 |
| **1968** 80:18 |
| **19th** 1:2 21:14 |

| 2 |
|---|
| **2** 96:22 |
| **200** 108:21 |
| **2020** 46:7 56:4 |
| **2021** 26:10 |
| 46:7 |
| **2023** 26:10 |
| 46:9 102:16 |
| **2025** 21:10 |
| **21** 95:8 |
| **215** 22:9 |
| **25** 23:5 |
| **25,105** 24:3 |
| **25-1555** 1:8 |
| 25:4 |
| **25-1556** 1:14 |
| **25-1557** 2:3 |
| **25-1558** 2:11 |
| **25-1559** 3:3 |
| **25-1560** 3:11 |
| **25-1561** 4:3 |
| **25-1562** 4:11 |
| **25-1563** 5:3 |
| **25-1564** 5:11 |
| **25-1565** 6:3 |
| **25-1566** 6:11 |
| **25-1567** 7:3 |
| **25-1568** 7:11 |

| **25-1569** 8:3 |
|---|
| **25-1570** 8:11 |
| **25-1571** 9:3 |
| **25-1572** 9:11 |
| **25-1573** 10:3 |
| **25-1574** 10:11 |
| **25-1575** 11:3 |
| **25-1576** 11:11 |
| **25-1577** 12:3 |
| **25-1578** 12:11 |
| **25-1579** 13:3 |
| **25-1580** 13:12 |
| **25-1581** 14:3 |
| **25-1582** 14:11 |
| **25-1583** 15:3 |
| **25-1584** 15:12 |
| **25-1585** 16:3 |
| **25-1586** 16:11 |
| **25-1587** 17:3 |
| **25-1588** 17:11 |
| **25-1589** 18:3 |
| **25-1590** 18:12 |
| **25-1591** 19:3 |
| **25-1592** 19:11 |
| **25-1593** 20:3 |
| **25-1676** 20:11 |
| **25-1677** 21:3 |

| 3 |
|---|
| **3** 79:11 96:14 |
| 97:5 98:19 |
| **30** 23:13 73:2 |
| **301** 22:14 |

| **333** 22:14 |
|---|
| **3rd** 71:17 |

| 4 |
|---|
| **4** 96:15 |
| **400** 89:7 |
| **40s** 84:9 96:10 |
| **42** 96:11 |
| **434-0600** 23:16 |
| **46** 96:11 |
| **46-26a** 96:22 |
| **47-1b** 96:14 |
| 97:5 98:19,19 |

| 5 |
|---|
| **5** 72:3 |
| **50s** 47:12 |
| **518** 23:16 |
| **51st** 22:6 |
| **55** 24:4 |

| 6 |
|---|
| **609** 23:8 |
| **60s** 84:10 |
| **665-8500** 22:9 |
| **6th** 53:21 |
| 105:22 |

| 7 |
|---|
| **70s** 84:10 |
| **72** 86:6 |
| **7477969** 21:16 |
| **749-8201** 22:17 |
| **76** 24:5 |
| **763** 71:13 |

| | | | |
|---|---|---|---|
| **789-8684** 23:8 | **accuzip** 11:6 | 75:16 89:19 | **affirmatively** |
| **8** | **act** 51:19 80:20 | 93:20 95:6 | 106:16 |
| **8** 96:9 | 111:2 | 97:8 100:7 | **afforded** 30:11 |
| **80** 87:22 | **action** 50:8 | 101:9 102:8,10 | **afoot** 82:6 |
| **800** 87:22 | 54:15,16,17 | 105:13 111:10 | **afoul** 112:11 |
| **8th** 53:21 | 117:8,12 | 111:22 112:17 | **afraid** 93:20 |
| 105:22 | **activities** 115:4 | 113:8 | 94:1 |
| **9** | **activity** 115:3,6 | **addressed** | **age** 45:3 112:1 |
| **914** 22:17 | **actors** 39:8,14 | 109:20 | **agent** 99:7 |
| **9:00** 21:11 | 107:18 | **addresses** | 100:11 |
| **9th** 107:6,10 | **actual** 33:9 | 25:14 26:4 | **agent's** 99:19 |
| 115:11 | 54:3,6 71:8 | 27:11,16 28:3 | **agents** 97:6,10 |
| **a** | 72:2 83:22 | 29:3,14 30:2 | **aggregation** |
| **a.m.** 21:11 | 101:15 | 31:11 33:3 | 101:17 |
| **abetting** 102:17 | **actually** 37:18 | 57:22 60:19 | **ago** 35:9 44:15 |
| **ability** 117:7 | 38:1 64:13 | 77:9 79:9 | 68:22 90:16 |
| **able** 53:1 68:2 | 75:6 78:1 | 92:18 111:5 | 112:4 |
| 73:7 77:13,16 | 81:11 82:16 | 112:8 | **agree** 80:5 |
| 87:15 88:7 | 86:5,8,20 | **addressing** | 82:16 96:2 |
| 97:10 107:17 | 91:11,16 96:3 | 30:22 | **aiding** 102:17 |
| **absolutely** | 107:12 110:12 | **adequate** 70:11 | **aimed** 39:3,5,6 |
| 59:22 | **adam** 23:11 | **adequately** | 83:21 84:1 |
| **access** 100:22 | **add** 80:10 | 101:15 | **al** 1:6,14 2:3,11 |
| **accidentally** | 85:11 | **adjudications** | 3:3,11 4:3,11 |
| 102:10 | **added** 77:10 | 92:7 | 5:3,11 6:3,11 |
| **accomplish** | **addition** 53:14 | **admitted** 24:12 | 7:3,11 8:3,11 |
| 68:8 89:1 | 54:12 55:3 | **adults** 45:11 | 9:3,11 10:3,11 |
| **accurate** 7:6 | **address** 26:21 | **advisement** | 11:3,11 12:3 |
| 117:5 | 27:8,13 28:16 | 115:22 | 12:11 13:3,12 |
| **accurately** | 28:17 30:8 | **advocacy** 30:20 | 14:3,11 15:3 |
| 101:15 | 31:4 47:4,18 | **affects** 60:9 | 15:12 16:3,6 |
| | 48:7 49:5 51:7 | **affirmations** | 16:11 17:3,11 |
| | 60:16 61:12 | 94:7 | 18:3,12,16 |
| | 63:18 64:13 | | 19:3,11 20:3 |

20:11 21:3
22:3
**albany** 23:14
**albert** 1:2
21:13
**alesco** 16:6
**alexander**
115:12
**alito** 59:14
**alito's** 67:6
**allegation**
64:18
**alliance** 3:14
**allow** 38:10
44:3 53:12,14
56:11 114:12
**allowed** 26:14
38:20 40:3
111:13,21
**allowing** 56:8
**alternatives**
40:2
**alvarez** 41:1
**ambiguity**
47:18 90:17
**ambiguous**
90:10
**amended** 26:9
46:8
**amendment**
36:7,10 38:9
57:9 67:12
81:6,8,10
105:21 106:4

106:19 112:11
112:16 115:3,6
**amendments**
26:10,16 46:6
**america** 9:14
62:20 82:21
**amerilist** 17:6
**analogize** 26:18
**analogous** 34:3
**analysis** 31:7
52:6 81:20
83:5,9 106:12
**analytics** 5:15
**analyze** 63:11
**anderl** 46:7
**animal** 41:2
**answer** 45:17
47:15 49:11
93:5 96:5
101:20 104:18
105:6,13
**answered**
106:18
**answering** 33:6
59:20
**answers** 78:11
110:7
**anybody** 79:14
**anymore** 64:1
93:18
**anyway** 79:21
88:17
**apart** 111:1

**apologize** 81:13
114:14,14
**apparently**
28:15
**appellant's**
92:8
**appellants** 1:7
1:15 2:4,12 3:4
3:12 4:4,12 5:4
5:12 6:4,12 7:4
7:12 8:4,12 9:4
9:12 10:4,12
11:4,12 12:4
12:12 13:4,13
14:4,12 15:4
15:13 16:4,12
17:4,12 18:4
18:13 19:4,12
20:4,12 21:4
22:2 25:11
32:2 49:17
113:8 114:5
**appellate** 68:17
**appellee** 1:10
1:18 2:7,15 3:7
4:7,15 5:7,16
6:7,15 7:7,16
8:7,19 9:7,16
10:7,17 11:7
11:16 12:7,15
13:8,16 14:7
14:15 15:8,16
16:15 17:7,15
18:8 19:7,15

20:7,15 21:7
22:11 23:2,10
**appellees** 3:16
16:7 18:17
**append** 7:6
**applicable** 53:2
**application**
52:4 57:15,20
63:1,2 77:3,5
**applications**
56:21,22 60:11
66:7,8,13 67:1
67:2,14,14,21
68:1 76:4
86:11 114:22
**applied** 31:7
59:16 62:15
65:20 66:16
67:7 68:5
70:20 73:5,8
73:13 74:6
75:20 76:10
81:1 89:12
90:12 92:1
100:9 107:5
115:2
**applies** 27:3
57:21 63:16
115:15
**apply** 35:14,16
35:19 36:1
40:13 49:8
57:9 80:13
97:18 100:8

104:8 115:4,8
**applying** 81:22
**approach** 44:5
**appropriate**
57:10 65:13
**approval** 87:21
**archival** 76:5,8
**archives** 75:17
**area** 44:6 47:4
**arena** 39:1
**arguably** 76:2
**argues** 63:16
92:9
**arguing** 116:3
**argument** 24:2
25:3 35:1
48:16 83:5
100:10 112:4
**arguments**
115:22
**armonk** 22:15
**article** 79:11
**ashaw** 23:15
**aside** 28:11
52:11 71:20
78:22
**asked** 99:16
100:1 112:19
**asking** 27:19
31:13 44:4
57:16 68:1
101:3 105:17
**asks** 79:14

**assault** 84:16
**assert** 53:16
**asserted** 80:2
**assertion** 86:21
**assertions**
65:11
**assessment**
96:17
**assign** 50:8
**assigned** 26:14
88:4
**assignee** 1:5,13
2:2,10 3:2,10
4:2,10 5:2,10
6:2,10 7:2,10
8:2,10 9:2,10
10:2,10 11:2
11:10 12:2,10
13:2,11 14:2
14:10 15:2,11
16:2,10 17:2
17:10 18:2,11
19:2,10 20:2
20:10 21:2
**assignment**
42:21 101:17
108:15
**association**
80:11 106:2
**assume** 34:21
63:12 83:4
**assumed**
103:21

**assuming** 38:18
40:14 100:8,11
**assumption**
71:7
**ate** 70:22
**atlas** 1:4,12 2:1
2:9 3:1,9 4:1,9
5:1,9 6:1,9 7:1
7:9 8:1,9 9:1,9
10:1,9 11:1,9
12:1,9 13:1,10
14:1,9 15:1,10
16:1,9 17:1,9
18:1,10 19:1,9
20:1,9 21:1
22:2 25:4 50:8
64:11,19 65:1
96:9 103:4
106:11
**attached** 90:1
**attention** 52:13
**attorney** 23:4
76:16 101:7
117:10
**attorney's**
31:21 72:4
113:6
**attorneys** 54:7
**audio** 117:3
**authority** 26:2
41:13 47:16
**authorized**
97:6

**automatic** 64:5
**automatically**
82:3
**automating**
78:20
**autonomy**
93:14
**availability**
74:1,3,13
**available** 27:17
31:19 38:11
42:7,12,15
58:15,19 73:19
73:20,22 74:17
74:20 75:3,9
88:15 92:16
99:1 100:16
104:13,17
108:1,3 113:6
114:2
**avenues** 110:13
**avoid** 39:14
**award** 72:2
**awards** 26:13
43:1 53:15
**aware** 68:4
104:1
**awkward** 51:14
53:3

**b**

**b** 24:11
**back** 47:12
56:3,6 59:3

75:21 81:18
89:15 91:9
116:6
**backdrop**
102:13
**bad** 43:14
**bald** 86:21
**ballard** 22:5
25:8
**ballardspahr....**
22:8
**ballots** 82:22
**ban** 38:21
**bar** 89:5
**barred** 113:7
**barring** 50:20
**bars** 41:22
**bartel's** 105:4
**bartle** 27:15
29:4
**bartle's** 102:2
**bartnicki** 40:5
40:10
**based** 35:1,3,8
35:11,15,18,18
35:22 36:9
37:1,3,4,6,7,9
55:1,19 57:4,7
57:12,21 60:4
60:6,8,11,12,13
60:16,20,21
61:16,19 62:1
62:3,7,10,10,15
62:17,19 63:6

69:4 82:4 83:3
83:5 87:5 95:3
95:4 107:4,6
113:19,22
114:20 115:9
115:17
**basic** 88:2
**basically** 28:2
32:10 46:19
79:13 93:10
**basis** 52:7 53:2
**bear** 71:2
**beat** 70:17
**bedroom** 37:21
**beginning** 25:4
112:4
**behalf** 22:2,11
23:2,10 25:11
88:20
**believe** 27:2
103:11 106:12
**belles** 15:6
**berry** 22:4 24:3
25:5,7,8,14,19
25:22 26:2
27:2,10,15
28:6,19 29:13
29:19 30:1,10
30:15 31:6,17
32:18 33:2,7
33:19,22 34:7
34:15 35:21
36:5 37:1,10
37:16 38:8

39:18 40:20
41:15,20 43:19
44:14 45:7,12
45:16,20 46:3
47:10,22 48:5
49:6,16,21
50:16 51:2,9
52:2,16 53:9
53:14,19 54:9
54:16,22 55:9
55:15 57:3,18
58:6,9,16,20
59:1 86:7
87:18 105:10
105:12 108:12
108:18 109:3,6
109:17 110:7
110:10 112:3,6
114:14 116:4
**berrym** 22:8
**best** 44:7 84:21
117:6
**better** 45:6
86:7,9 91:12
**beyond** 53:3
58:15 77:10
101:12
**bibas** 21:12
25:2,13,18,20
26:1,18 27:4
27:13,19 28:9
29:6,17,20
30:4,12 31:15
32:6,22 33:5

33:14,21 34:12
34:16 36:4,13
37:3,13 38:5
38:17 41:14,16
43:4,21 44:20
45:10,15,19,22
46:15 47:15
48:1,17 51:11
52:10 53:5,12
55:4,13 59:3
60:3,12 63:12
64:18 65:9
76:12,20 78:4
79:7 80:5 85:5
85:15 92:8
93:4 94:16,22
95:4 101:14
105:8,10 108:6
108:13 109:1
114:11 115:20
**bibas's** 31:4
**big** 35:15 49:19
74:19 78:21
92:15
**bit** 48:15 77:22
78:6 79:12
83:2,10
**bite** 106:14
**blocked** 32:5
**bodies** 84:6
**boies** 22:12,13
23:12 24:4
59:5,6 60:5,22
61:17,21 62:4

62:7,11 64:7
64:15 65:5,10
66:14,21 67:3
67:16 68:15
69:2,12 70:2,7
70:15 71:11
72:8 73:5,12
74:2,6,11,15
75:18 76:7,12
76:13 85:9
92:13 106:22
116:4
**boilerplate**
78:5
**bombarded**
65:2
**bonta** 58:2
115:10
**books** 64:2
**bottles** 84:7
**boundaries**
32:13
**boundary**
28:13
**bowley** 42:14
**bradstreet** 29:6
29:7,11,12,18
29:19 30:1
32:12,15 33:7
33:19 34:3,5,7
71:12 80:8
**bradstreet's**
32:17

**brandeis** 36:15
**branson** 1:2
21:13
**breadth** 26:11
41:17 64:2
**break** 78:10
**breath** 102:16
**brief** 49:1 66:5
96:9 103:5
**briefing** 115:21
**briefly** 76:19
116:3,6
**briefs** 67:22
96:11
**bring** 65:17
**bringing** 46:2
**broad** 49:10
54:18 55:1
60:14 81:10
**broader** 45:5
113:1
**broadest** 42:9
**broker** 77:7,16
89:14 91:4
98:9,11,12
99:13,14
103:15 104:1
104:20 114:8
**brokers** 88:1
88:13 93:1,3
101:9 113:14
**brought** 52:13
76:20

**brown** 114:18
**bruni** 57:11
58:2
**bsfllp.com**
22:16 23:15
**bucks** 51:2
**bunch** 25:3
64:6 65:2
92:15 107:13
**burden** 71:3
80:2
**burdening** 94:9
**burdensome**
45:5
**bus** 79:6
**business** 51:16
57:6 65:4
77:14 78:9
86:2 87:2
113:16
**businesses**
115:16

| c |
| --- |

**c** 22:1 23:1 24:1
25:1
**call** 48:19,21
89:14
**called** 31:19
61:19
**calls** 40:11
**camp** 15:6
**canada** 8:15

**caputo's** 102:8
102:10
**care** 55:14
**carve** 63:19
95:12 96:4
97:15 98:13,17
**case** 1:8,14 2:3
2:11 3:3,11 4:3
4:11 5:3,11 6:3
6:11 7:3,11 8:3
8:11 9:3,11
10:3,11 11:3
11:11 12:3,11
13:3,12 14:3
14:11 15:3,12
16:3,11 17:3
17:11 18:3,12
19:3,11 20:3
20:11 21:3
25:3,14 26:19
27:21 28:11
29:9 31:3
39:20 40:17,22
41:1,1,2,2,11
47:3 48:20
52:7,7,17 53:2
53:2,22 56:18
56:19 57:8,9
58:3 61:2
62:12,16,20
63:4,9,11 65:8
68:5,8 69:1,3
71:12 72:13
74:19 75:22

78:2,22 80:8,9
81:9 90:9,9
92:7,7 102:16
106:2,2,7,10
110:14 115:11
115:12

**cases**  26:19
27:8,20 29:21
31:14 33:16
35:4 38:15
39:22 53:20
55:8 59:13,22
65:16 67:11,12
70:18,19 71:3
72:21 77:11
80:11 86:10
92:9 106:1
110:11,19
113:14

**categorical**
28:7 33:20

**categorically**
26:22 29:14
31:9 34:10

**category**  27:10
33:2 35:6 45:8

**cause**  50:7
54:15,16

**center**  8:17

**centuries**  27:18
30:11

**century**  36:16
36:20 37:15

**certain**  26:4
31:10 65:12
73:6

**certainly**  38:19
39:10 81:19
85:1 93:6

**certificate**
117:1

**certification**
87:12,14 88:10
104:17 105:20

**certify**  105:4
117:2

**cetera**  45:2
78:8

**challenge**  31:8
31:8,16 46:1
49:11 57:3,12
59:9,15 62:15
62:16 65:11,18
66:4,16,17,20
66:21 68:5
70:3,20 71:2
73:5,9,13 74:4
74:6 75:20
76:1,10,22
90:13 105:18
114:13,15,20

**challenger**
59:15 67:5,6
67:17

**challenges**
56:20 59:12,18
65:15,20 115:9

**challenging**
91:10

**change**  106:13

**changed**
106:16

**changing**  38:6

**chartered**
46:14

**child**  64:22

**chill**  39:7
109:19,20
110:6

**chilled**  50:10
50:11 55:20
91:3,5

**chilling**  39:14
41:4 43:2
46:16,19 47:9
47:17,20 48:16
50:18 51:1,4
54:20,21 55:11
55:14 56:12
90:16,16

**chills**  51:5 55:2

**choice**  59:10
67:11 79:5

**choke**  43:5

**choose**  51:22
53:11

**christmas**
78:10

**chung**  21:12
30:21 31:13
34:2 37:8

38:13 40:10
48:15 49:9,19
50:9 51:1,4,10
53:16 54:1,15
54:19 55:12
56:16 57:16
58:4,8,14,18,21
61:14,18 62:2
62:5,9 64:10
64:17 69:16
71:6 73:18
74:5,9,14
80:21 81:6,15
83:19 84:4
89:7,12,18
93:19 95:16,19
96:3 97:12,21
98:1,5,8,11,15
99:11 100:14
100:18 103:6
103:10 105:17
106:12 109:5,8
109:18 110:9
111:16 112:5
112:19

**chung's**  77:1

**circles**  34:21

**circuit**  53:21,21
62:20 71:18
82:20 105:22
105:22 107:6
115:11

**circular**  33:5

**circumstance**
  32:20 33:8
  36:8 40:3,4
  58:1 79:15
  89:12 90:14
  91:17 115:15
**circumstances**
  26:4 31:10
  33:10 59:17
  65:12 67:8
  73:7 83:1
  111:14 115:16
**cite** 62:21
  102:15 103:4
**cited** 92:13
  106:1,11
**cites** 103:4
**citizen** 49:3
  87:7
**city** 28:15,20
  53:21 87:7
  106:1
**civic** 94:10
**civil** 5:6 54:10
  94:9
**claim** 50:8
  54:10 80:2
  95:14 101:17
  101:17
**claims** 26:14
  89:3,3
**class** 61:9
**clear** 27:2
  31:20 35:21

36:7 40:22
  44:14 47:11
  57:8 59:2
  63:20 85:18
  103:3 113:4,21
**clearly** 43:17
  80:12
**client** 31:18
  114:2
**client's** 51:16
**clients** 86:9
**clock** 84:21
**coalition** 35:9
  44:21
**code** 73:3
**codifies** 83:12
**codifying**
  102:20
**cognizant** 86:4
**colleague** 59:8
**colleague's**
  73:22 112:1
**colleagues** 85:6
  109:11
**collected** 34:8
  50:2
**colloquy** 76:21
  77:1 79:5
**combination**
  42:21
**combining** 39:6
**come** 48:19
  65:20 68:2
  75:21 78:1

84:16,16
**comes** 70:21
  110:18
**coming** 77:16
  92:22 116:5
**commend**
  82:19 96:8
  104:14
**comments**
  106:22
**commerce** 5:14
  29:15
**commercial**
  34:9
**committee**
  74:18 92:14
**common** 37:16
  80:14 89:13
  103:1 106:15
**communicate**
  60:18,19 94:12
  113:10
**communicating**
  60:16
**communication**
  33:12
**communicati...**
  15:6
**community**
  29:2
**compact** 18:15
**companies** 49:7
  114:3

**company** 20:6
  49:12 50:4
**comparable**
  75:4
**compare** 56:22
**compatible**
  36:6
**compelling**
  25:21 63:14
  110:16,17
**complaint**
  89:22
**complex** 23:6
**complicated**
  60:7 61:1 74:3
  96:8
**comply** 70:14
  77:13 86:3
  87:1 107:22
**component**
  55:10
**components**
  39:18
**con** 37:6
**conceded** 91:22
  112:21
**conceivable**
  92:6
**concept** 26:5
**concern** 27:12
  28:7 29:2,12
  30:5,9,13 31:2
  31:4,10 33:4
  33:11 34:1,6

34:14,21,22
38:17,18 40:12
40:14,19,21
52:12 60:1
68:7 71:16,19
71:21 72:16,17
**concession**
63:13
**conclude** 69:12
69:13
**concluded**
116:7
**concurrence**
59:14
**concurring**
67:4
**conduct** 48:18
49:4 51:5
110:6
**conducted** 31:7
**consider** 76:5,5
**consistent**
97:17 100:13
**consistently**
98:15,20
**constituents**
113:10
**constitution**
59:18
**constitutional**
56:21 59:12
65:16 66:7,12
67:2,13 69:7
71:10 76:3

82:18 112:15
**constitutional...**
73:13
**constitutional...**
47:21
**construction**
28:16
**construes**
28:14
**consumers** 34:8
**cont'd** 23:1
**content** 30:22
31:5,6 35:1,3,7
35:11,15,18,22
36:9 37:1,3,9
44:21 45:2
55:1,19 57:4,7
57:12,21 60:4
60:6,8,11,12,13
60:20,20 61:16
61:19 62:1,3,7
62:9,15,17,19
63:6 82:4,9
83:2,3,5,10
107:3,6 110:3
113:19,22
114:20 115:8
115:17
**contesting**
25:20
**context** 30:22
31:2,5,6 32:18
40:17 50:21
56:19 62:12,14

65:7 66:15
82:8 114:19
**continue**
100:22 108:20
115:8
**control** 103:22
110:5 111:6
**controlling**
109:9,19
110:15,18
**controls** 44:12
**cop** 64:22 78:7
79:18,19
108:13,14,18
108:19
**copies** 75:11
**corp** 9:6 21:6
115:10
**corporation**
1:4,12 2:1,9
3:1,6,9 4:1,9
5:1,9 6:1,9 7:1
7:9 8:1,9,14,18
9:1,9 10:1,9
11:1,9 12:1,9
13:1,10 14:1,9
15:1,10 16:1,9
17:1,9,14 18:1
18:10 19:1,9
20:1,9 21:1
22:3
**correct** 25:22
34:15 51:9
53:9 76:21

**correctly** 81:17
**cost** 116:2
**costless** 44:6
**costs** 54:6 72:4
**counsel** 23:11
59:20 92:9
115:20 116:4
117:7,10
**counselor**
26:18
**counterman**
46:21,21 47:10
55:8 85:17
**counties** 44:11
92:20 94:14
95:8 109:12
**country** 26:7
42:10 57:19
115:8
**county** 95:2,4
108:3,7 109:13
**couple** 35:4
44:15 68:22
72:20
**course** 34:17
61:22 63:3
81:9 84:13,15
89:15 90:4
96:5 101:20
**court** 25:8
28:21 29:2
30:7,11,15
31:3 33:10,19
35:2,10,14,21

**[court - data]** Page 10

| | | | **d** |
|---|---|---|---|

36:5,7 40:4,22
42:13,13,14
44:14 45:7
46:11,11,12,18
46:20 47:10
48:10 52:3,20
53:20 57:8,11
57:13,13 58:1
58:2 59:5,7,10
60:7 61:2,5,10
61:22 63:3,8
63:10 65:15
67:3,17,17
68:3,4,16,18
69:3 70:2
71:13,18 72:2
72:13 74:17,22
76:16,19 80:12
82:20 85:1
89:11 96:9
101:21 102:4
102:16 104:8
104:15 105:1,5
106:6,11,17,18
106:20 107:2,4
107:9 110:2
**court's** 28:19
39:20 59:21
66:9 71:13,17
114:17
**courtroom** 1:2
21:13
**courts** 70:10
72:12 105:22

115:7
**cover** 74:10
88:8 97:21
98:16,22 99:4
99:4
**coverage** 76:6
**covered** 1:6,14
2:3,11 3:3,11
4:3,11 5:3,11
6:3,11 7:3,11
8:3,11 9:3,11
10:3,11 11:3
11:11 12:3,11
13:3,12 14:3
14:11 15:3,12
16:3,11 17:3
17:11 18:3,12
19:3,11 20:3
20:11 21:3
48:6 49:3
50:14 52:14
60:17 63:17,21
64:12,20 75:15
76:8 78:3,6
86:20,22 87:8
87:12 89:19,19
90:6,7,18,21
91:6 93:15
95:10 98:4,21
98:22 99:9,17
99:18 100:2,5
100:11 103:12
107:15,17

**covers** 54:18
64:5 75:8
100:20 101:12
**create** 103:1
**created** 106:4
**creating** 36:15
**credit** 30:2,5,9
**crimes** 32:1,1
**cross** 96:7,14
96:19,21
**crosstalk** 27:3
28:8 29:5,16
29:19 32:21
33:13,18 34:11
37:12 41:14
43:20 44:19
45:21 47:14
49:18 53:4
61:13 69:16
76:1 87:9
109:5 114:10
**crush** 41:2
**crystal** 85:18
**culpability**
47:13
**current** 25:15
26:9
**curtail** 44:17
**cut** 35:4
**cuts** 45:4
**cx** 24:7

**d** 25:1 96:15
**daily** 26:19
28:6 29:21
32:7 34:3 63:5
77:11 80:9
92:10
**damage** 26:13
43:1 53:15
**damages** 51:14
54:3,4,5,6 55:5
70:6 71:8,14
72:1,2,5
**dangerous** 88:4
96:20 103:18
108:14
**daniel** 46:7
**daniel's** 25:15
26:5,6 32:5,19
93:14 96:1
98:18,22
**dark** 32:3
**darkowl** 19:6
**data** 1:4,12 2:1
2:9 3:1,9 4:1,9
5:1,6,9,15 6:1,9
6:14 7:1,9 8:1
8:9 9:1,6,9
10:1,9 11:1,9
12:1,9 13:1,10
14:1,9 15:1,10
16:1,9 17:1,9
17:14 18:1,10

19:1,9 20:1,9
21:1 22:2 25:4
50:2 77:7,7,15
78:21 79:13
87:22 88:11,12
89:14 91:4,11
93:1,3 98:9
101:9 103:15
103:22 104:1
104:20 113:14
**database** 34:18
73:1 74:21
89:8 100:21
**date** 21:10
**daughter** 77:22
**davenport**
80:10
**david** 22:12
59:6
**day** 69:21
104:19
**days** 51:16 65:4
70:14 73:2
75:15 77:14
78:9 79:1 86:3
86:8 87:2
104:20 111:20
**dboies** 22:16
**deal** 92:4,5
113:14
**dealing** 36:2
38:1 45:7,12
52:22 108:10

**deals** 39:19
**dealt** 33:7
39:20 112:12
**dean** 117:2,15
**dearborn** 53:22
106:2
**dearth** 68:11
**debate** 28:18
28:22 83:2
**debated** 29:10
**decide** 110:3
**decided** 69:3
103:21 109:21
**decision** 65:17
65:22 111:7
114:16
**decisions**
114:17
**declaratory**
53:6,12
**deeds** 95:2,3,4
**deemed** 37:17
**defamation**
33:9 83:7
**defendant**
90:19
**defendants**
48:21 57:2
72:21
**defense** 73:11
103:19 104:19
105:2
**definition**
32:14 42:5

54:11 55:2
56:7 58:17
**definitive** 105:6
**degrading** 37:6
**delete** 100:5
**deliberative**
39:12
**deluxe** 3:6
**demonstrate**
67:7
**department**
74:18
**depend** 30:7
**depends** 47:17
**depth** 96:12
**derogate**
102:22
**described**
60:10
**description**
24:12
**despite** 102:10
105:2
**detection** 32:2
**detectors** 84:20
**deter** 40:8
**determine** 31:1
57:14 81:20
**devolves** 93:14
**dialer** 19:14
**dicta** 111:17
**diego** 28:21
**difference**
74:19,22 81:4

92:15
**different** 34:10
36:11,18 40:4
40:9 44:8 45:9
50:1 62:18
63:5,10 66:18
67:9 79:12,21
85:13,13,14
95:21 101:5
108:22 110:21
111:4,20
112:13 113:17
115:1
**differently** 35:7
39:10 96:18
**difficult** 107:11
**difficulty** 49:10
59:20
**digital** 4:14
117:3
**direct** 20:14
115:7
**directed** 66:3
**directly** 34:8
**director** 102:7
**dis** 114:7
**disagree** 69:8
91:21
**disagreement**
81:14,19
**disclose** 40:7
49:4 50:1,13
51:7,22 54:11
55:2 56:8

93:17 97:17
110:20
**disclosed** 50:17
97:14 109:10
114:7
**discloses** 98:15
**disclosing**
50:20 51:19
58:17 91:20
92:11,12
108:16
**disclosure**
32:19 41:21,22
42:6 43:5
54:18 57:5
102:20 105:16
112:19 113:3
**disclosures**
97:16,22 98:17
**discourse** 28:1
28:10,18 29:20
35:13
**discovery**
66:12,17 68:12
**discuss** 28:1
105:15
**discussed** 29:9
30:14
**discussing**
105:15
**discussion**
27:22 28:3,9
85:11 104:9

**disfavored**
59:12,19,19
61:7 65:16
**dismiss** 65:10
65:13 66:4
77:6
**disposal** 77:13
**dispute** 60:3
78:14 95:14
**disputing** 96:3
**dissemination**
42:17
**dissenters**
44:20
**distinction**
40:16 72:8
**distinguishable**
47:7
**distinguished**
34:13
**distress** 39:21
83:8
**district** 66:9
68:16,18 72:13
89:11 115:11
115:12
**dive** 76:17
**dm** 2:14
**dmv** 94:17
**docket** 25:3
**doers** 84:12,12
**dog** 70:22
106:14

**doing** 50:22
65:21 85:3
86:17 97:2
109:21
**doj** 92:13
**dollars** 72:3
**domestic** 83:17
**doubt** 62:14
**doubts** 104:6
104:14 105:3
**doxing** 28:2
**dozens** 49:18
**drawing** 35:11
**drive** 79:6
**dun** 29:6,7,11
29:12,18,19
30:1 32:12,14
32:16 33:7,19
34:3,5,7 71:12
80:7
**dx** 24:7

**e**

**e** 1:1,1 13:15
22:1,1 23:1,1
24:1,11 25:1,1
90:20 96:15
99:3,4,9,9,14
100:6,8,11
115:6
**earlier** 79:4
101:14
**easily** 109:12

**easy** 102:14
**economy** 30:7
**editions** 75:9
**education**
80:10
**effect** 50:18
56:12
**effective** 43:9
43:18 44:18,19
46:13 101:19
**efficacy** 43:16
44:1,2
**efforts** 66:10
**either** 38:16
**elaborating**
32:13
**elections** 93:9
**electronic**
92:21 113:5
**element** 72:15
**eliminated**
103:7,11
**elster** 35:5
**embarrassing**
36:19 37:5
**eminent** 77:12
**emotional**
39:21 83:7
**emphasizes**
59:11
**emphasizing**
59:7
**employed**
117:8,11

employee
  117:10
employees
  100:22
enact  26:17
  46:5 53:11
enacted  26:9,16
  41:6 46:6
encumbrance
  95:22
encumbrances
  95:17 97:3,4
enforcement
  31:20 43:6
  88:6
enterprise  8:16
  25:9
enterprises
  12:6
entire  36:10
entities  87:16
entitled  78:6
entity  108:22
entrepreneuri...
  88:21
equaled  35:3
equamine  8:6
equitable  54:5
era  80:15
erie  102:2
  105:4
especially
  45:22 64:3
  80:3 83:20

104:3
esquire  22:4,12
  23:3,11
establish  59:16
establishing
  71:3
estate  98:11,12
  99:7,13,14,19
  100:10 114:8
et  1:6,14 2:3,11
  3:3,11 4:3,11
  5:3,11 6:3,11
  7:3,11 8:3,11
  9:3,11 10:3,11
  11:3,11 12:3
  12:11 13:3,12
  14:3,11 15:3
  15:12 16:3,6
  16:11 17:3,11
  18:3,12,16
  19:3,11 20:3
  20:11 21:3
  22:3 45:2 78:8
everybody  61:8
  77:22 97:9
everyday  49:3
evidence  94:20
evil  84:12,12
evolving  84:7
ex  54:17
exact  28:15,17
  59:19 92:5
  102:15 104:2
  111:12

exactly  36:17
  52:2 65:14
  71:22
example  31:17
  48:2 61:1
  62:12 71:12
  88:18 89:22
  95:12
examples  37:19
exceeds  112:15
excellent
  115:21
except  52:10
  61:8
exception  42:1
  75:10
exceptions
  63:19 64:6
  99:6,8 115:17
exchange  48:17
exchanged
  113:12
exempt  107:1,3
  107:7
exemptions
  42:20
exerted  112:14
exhibit  24:12
exhibiting
  58:10
expand  32:9
  58:15 82:10
expanded
  26:10

expansion  38:7
expansive  56:7
expect  78:8
  85:8
expectation
  37:19 38:2,6
explain  28:11
  41:14
explained
  57:11
explains  32:16
explanation
  46:9,10
explicit  103:8
explicitly  30:16
  107:7 111:18
exposure  36:19
express  91:4
expressing  91:3
expressive
  77:10
external  100:20

**f**

face  57:4,20
  58:16 69:14
  70:4,7,8
facial  31:8,15
  46:1 49:10
  56:20 57:3,11
  59:9,12,15
  62:16 65:11,15
  65:17 66:16,19
  66:21 67:16

70:3 71:2 74:4
76:1,22 77:6
78:13 80:3
105:18 114:12
114:15,19
**facially** 25:16
**facilitating**
84:2
**facing** 49:18
80:2
**fact** 37:14,22
42:6,11 43:2
54:17 61:9
69:14 76:22
77:15,18 78:7
78:14,21 80:3
81:7 91:9
99:15 104:12
**factor** 35:15
**facts** 36:20
104:2
**fail** 107:22
**fails** 55:21,22
115:18
**faith** 99:21
**false** 89:4
**family** 84:16,17
94:1
**far** 31:4 36:11
42:9 56:17,19
58:5 73:18
77:10 103:8
111:22

**fault** 68:19,19
72:14
**favor** 35:16
**fear** 41:4
**feature** 37:4
**features** 36:17
**federal** 41:8
42:4,19 53:10
112:12 113:17
**fees** 71:8 72:4
**field** 103:8
**fifth** 89:6
**figure** 27:5
65:4 88:16,18
**figuring** 78:2
84:18 89:16
**filtering** 44:21
45:2 115:6
**final** 104:5
**finally** 100:14
**financial** 12:14
**financially**
117:11
**fine** 110:2
**finer** 81:5
**first** 20:14 27:4
36:6,10 38:9
39:19 43:8
52:13 57:9
64:7 65:5,12
66:14 67:12
68:16 78:12
81:6,8,9
104:22 105:14

105:21 106:4
106:19 110:10
112:11,16,18
115:2,5
**fit** 27:21 66:6
**five** 25:12
81:12 82:2
105:11
**fix** 53:16,17,20
54:21
**flexner** 22:13
23:12
**floor** 1:2 21:14
22:6 23:13
102:5
**florida** 26:19
27:20 28:4,6
29:21 30:13,15
31:2 32:7 34:3
34:12,19 52:4
52:8,11 63:5
77:11 80:9
86:13 92:9
**focus** 46:17
**focusing** 62:6
**foia** 75:1
**followed** 41:7,8
**following** 115:7
**force** 64:4 92:9
**forcefully**
63:16
**foreclosed**
74:14

**foregoing**
117:4
**forget** 84:10
**form** 26:9
30:22 31:5,6
51:17 88:21
92:21 103:11
**formalistically**
83:3
**formally** 82:4
**formulating**
32:11
**fortnoff** 12:14
**forward** 53:8
**found** 99:20
**foundation**
9:15
**founding** 39:9
80:15
**four** 105:13
**fourth** 88:17
**frankly** 103:12
**fraudulently**
88:19
**free** 35:9 44:20
45:3
**freedom** 92:14
**freely** 108:21
**freeman** 21:12
66:3,19,22
67:9 68:10,21
69:8,17 70:4
70:12 71:20
72:19 73:10,16

75:6 76:2,11
77:19 82:7,15
86:18 87:4,10
90:15 91:8,21
104:6
**freeman's** 71:7
104:15
**friend** 63:15,18
64:4 85:7 86:7
87:18 93:20,21
**friend's** 94:2
**friends** 95:13
**frisby** 38:19,21
**front** 38:21
**fulfilling** 39:15
**full** 86:2
**fully** 84:22
98:16
**function** 27:17
29:5
**functioning**
29:8
**functions** 39:8
**further** 117:9

**g**

**g** 25:1
**gambling** 89:5
**gang** 88:4
**geez** 79:17
**general** 23:4
29:1 41:4
76:16 111:7

**generality** 93:6
**generally** 67:12
**genuinely** 48:2
**getting** 53:6
86:18,21 93:1
96:20
**gilbert** 60:13
**ginsburg** 46:20
47:1 55:8
80:18,18
**give** 32:14 44:2
48:1 49:11
67:21 87:9
88:12 93:16
105:5
**given** 44:8
52:11 64:14
66:9,11 68:11
69:18 86:12
87:5 98:3
104:3
**gives** 111:11
**giving** 51:15
97:9 111:3
**gleaning** 49:1
**gmbh** 8:17
**go** 32:3 34:20
38:12 47:16
49:6 57:13
71:6 81:18
85:14 87:15,16
87:18,19 89:15
89:21 93:16
94:5,11 96:11

100:18 108:21
109:13,15
116:2,5
**gohunt** 10:14
10:14,15
**going** 34:20
38:13 43:13
45:3 47:12,19
48:19 52:15
63:20 64:8
71:4 74:20
85:5,11 86:10
88:1,19,22
89:2,4,9 91:4
91:16 93:16
94:2 108:21
111:8
**goldenhagen**
106:10
**good** 25:2,7
73:17 76:14
99:20 103:21
**gotten** 63:13
**gov** 92:11
**governed** 42:4
**government**
30:16 38:11
39:8,8,14 41:8
41:13 42:12,15
42:19 43:16
44:9 50:5
86:14 87:11,14
87:16,19,19,21
88:11 92:10,12

93:11 94:16
97:14,17,21,22
98:6,17 99:2
107:22 108:16
108:20 110:19
110:20 111:8
111:13 112:7
112:12 113:18
114:8
**government's**
44:7 97:18
107:13
**governmental**
25:21 63:14
**granted** 25:13
50:7
**gray** 47:4
**great** 109:22
**greenflight**
21:6
**greet** 116:3
**group** 2:14
3:15 7:14 16:6
48:22
**guardrails**
26:11
**guess** 39:11
40:15 89:8
102:2,3 103:10
103:18 105:4
111:17
**guide** 97:18
98:16

| h | | | |
|---|---|---|---|

**h**  24:11
**hands**  45:1
**hanson**  102:15
**happen**  65:12
  90:8 93:10
  102:9
**happens**  70:19
**happy**  101:20
**harbor**  99:9
**hard**  43:20
  88:18
**harm**  48:11,13
  94:1 103:14
**hart's**  82:20
**held**  33:10 45:8
  62:19,20 63:8
  68:6,16,18
  85:1 104:21
  107:3,6
**help**  92:18
**helpful**  30:21
**hereto**  117:11
**hey**  44:21
  52:14 64:12
  79:16 93:17,21
**high**  49:11
**higher**  29:21
**highly**  40:5
**hipaa**  111:2
**historical**  81:20
**historically**
  35:7 36:6 38:3

80:14 82:14
111:5
**history**  36:2,11
  36:14 38:9
  80:6,16,17
  81:2,3 83:14
  84:2
**hit**  86:16
**hold**  107:9
  111:3
**holdings**  10:15
  10:16
**holds**  61:22
  71:13
**home**  26:21
  27:8 28:2,2,15
  28:17 30:8
  38:20,21,22
  39:4,20 40:1
  47:18,19 61:12
  83:20,21,22
  102:8 110:4,11
  110:13
**honest**  75:20
**honor**  25:22
  60:5 61:1,17
  64:15 65:5
  68:16 69:13
  70:16 71:11
  75:19 76:13
  78:11 105:12
  113:5
**honors**  25:7
  76:14

**hoops**  109:14
**horrific**  46:7
**horse**  70:17
**hours**  86:6
**housewarming**
  99:21 100:3
**huge**  30:6
**hughes**  23:6
**huh**  49:20 58:8
  64:17 98:7,10
  98:14 109:17
  112:5
**humiliating**
  37:6
**hypo**  99:7
  109:16
**hypos**  93:19
**hypothetical**
  38:17 57:14
  79:4 90:4
  91:16

| i | | | |
|---|---|---|---|

**i360**  10:6
**idea**  60:9 82:2
  83:10 91:15
**ideas**  82:6
**identified**  61:4
**identify**  38:16
**ignore**  79:20
**ignoring**  79:20
**ii**  10:16
**illegitimate**
  67:22 68:1

**imagine**  77:21
**imdb**  107:6
**immediately**
  100:6
**import**  102:12
**importance**
  25:17
**important**  47:8
  65:6 77:2 80:7
  82:14 85:21
**importation**
  102:18
**importing**  54:2
  102:19
**imposed**  26:13
**imposition**  72:9
**impossible**  73:6
  73:15
**impunity**
  111:10
**inapposite**
  29:22
**include**  86:19
**includes**  42:6
  113:16 114:4
**including**  44:15
  75:8
**inclusive**  54:12
**inclusivity**  56:8
**inconsistently**
  98:21
**increased**  86:5
**independent**
  56:2,14

**independently**
91:13 99:16
**individual** 49:7
50:3,3 62:16
**individuals** 1:5
1:13 2:2,10 3:2
3:10 4:2,10 5:2
5:10 6:2,10 7:2
7:10 8:2,10 9:2
9:10 10:2,10
11:2,10 12:2
12:10 13:2,11
14:2,10 15:2
15:11 16:2,10
17:2,10 18:2
18:11 19:2,10
20:2,10 21:2
97:6
**inference** 97:11
**inflected** 80:14
**infliction** 39:21
83:7
**infomatics** 1:17
**inform** 1:9
22:11 23:2,10
25:5 65:2
**information**
18:15 27:22
29:7,11,18
30:9,10,16,18
32:5,8,10,17
34:6,8,11
37:17 38:1,11
40:7,7 42:2,3,6

42:11,15 43:14
49:22 50:2,4
50:13,17,20
51:8 56:10
60:2,18 61:4
69:21 78:8
79:14,17 86:14
87:17 88:20
90:4 91:14,19
91:20 93:11,17
94:5,6,13,17
98:19 99:1,5
99:16,17,20
100:1,4 101:2
101:5 103:16
108:1,3 109:9
109:19 110:12
110:15,18,20
110:21 111:3,4
111:9 113:7,9
113:12 114:7
**information's**
44:8
**inherent** 83:6
**injunctive** 53:6
53:13
**inner** 104:1
**innovate**
111:21
**innovation**
111:19
**innovis** 6:14
**inquiry** 66:6

**insisted** 46:18
**instance** 30:22
54:2 64:11
**intentional**
39:21 83:7
**intercepted**
40:11
**interest** 25:21
26:20 27:1,6,9
29:1 30:18
45:6 60:1
63:14 76:18
103:13 110:16
110:17 111:15
**interested**
39:11 40:15
117:12
**interests**
101:16
**interface** 50:7
**intermediate**
81:12
**internal** 100:21
**internet** 58:4,7
58:11,15,18,22
69:22 73:21,22
74:14 76:8
97:15 100:19
101:11,13
108:1,9 111:20
111:21 112:22
113:1,3,7,11,12
**interpret** 69:6
70:10 72:12

**interpretation**
74:10,12
100:15
**interpreting**
75:1
**intimidate** 88:5
**intruder** 83:22
84:2
**intrusion** 39:22
**intrusions**
110:11
**invalid** 57:15
**investigate**
31:22 74:8
**investigating**
88:4 93:22
**investigative**
39:13
**invitation**
100:4
**invoking** 50:19
**involved** 61:2
**issue** 28:4 30:2
33:17 40:1
45:20 60:1
61:5,11 66:17
76:8 78:4
106:19 108:19
114:6
**issues** 45:21
**issuing** 33:20
**it'd** 51:14

| j | | | jurisprudence |
|---|---|---|---|

**j** 23:6
**jersey** 23:4
  26:9,15 31:22
  38:5 41:5,22
  44:10 46:4,8
  46:14 48:13
  56:3 58:12
  68:4,18 69:5
  72:12 76:15
  79:12 84:5,22
  87:7 91:11
  92:20 102:3
  103:2 104:7
  105:1,5 106:6
  106:18 110:16
  112:14 113:9
**jersey's** 25:15
  112:9
**jersyan** 79:16
**job** 21:16
  109:21
**john** 89:14,15
  89:17 90:10,21
**joke** 46:22
  85:22
**journalist** 91:5
  92:1
**joy** 12:6
**judge** 25:2,13
  25:18,20 26:1
  26:18 27:4,9
  27:13,15,19

28:9 29:3,6,17
29:20 30:4,12
30:21 31:4,13
31:15 32:6,22
33:5,14,21
34:2,12,16
36:4,13 37:3,8
37:13 38:5,13
38:17 40:10
41:14,16 43:4
43:21 44:20
45:10,15,19,22
46:15 47:15
48:1,15,17
49:9,19 50:9
51:1,4,10,11
52:10 53:5,12
53:16 54:1,15
54:19 55:4,11
55:13 56:16
57:16 58:4,8
58:14,18,21
59:3 60:3,12
61:14,18 62:2
62:5,9 63:12
64:10,17,18
65:1,9 66:3,19
66:22 67:9
68:10,21 69:8
69:16,17 70:4
70:12 71:6,6
71:20 72:19
73:10,16,18
74:5,9,14 75:6

76:2,11,12,20
77:1,19 78:4
79:7 80:5,21
81:6,15 82:7
82:15,20 83:19
84:4 85:5,15
86:18 87:4,10
89:7,11,18
90:15 91:8,21
92:8 93:4,19
94:16,22 95:4
95:16,19 96:2
97:12,21 98:1
98:5,8,11,15
99:11 100:14
100:17 101:6
101:14 102:2
103:6,10 104:6
104:15 105:3,8
105:10,17
106:12 108:6
108:13 109:1,5
109:8,18 110:9
111:16 112:5
112:19 114:11
115:20
**judge's** 101:9
**judges** 21:12
**judgment**
  77:19 78:18
  94:20
**july** 21:10
**jurisdictions**
  69:6

**jurisprudence**
  36:10
**justice** 23:6
  59:14 67:6,19
  74:18 81:11
  96:12

| k | | | |
|---|---|---|---|

**kagan's** 67:19
**keep** 65:7 74:16
  91:20 100:7
**keeping** 100:20
**kick** 79:3
  107:14
**kicks** 34:19
**kids** 45:1
**killing** 46:7
**kind** 26:17
  31:12 34:10
  48:20 49:9
  51:14 64:10,14
  66:10 67:11
  74:2 77:9
  78:17 79:4
  81:21 83:1,5
  83:12 84:10
  86:4,19 87:14
  87:15 88:9,21
  89:12 93:10
  94:4 95:14
  96:7 100:8
  101:2,17
**kinds** 60:18
  87:5

**klebanov** 103:4
**knew** 65:19
**know** 32:5
  35:12 36:19
  37:5 39:1,12
  39:15 41:1
  46:14 48:20
  63:15,20,21,22
  64:4,8,15,16
  66:9,22 67:10
  69:17,18,18,20
  72:22 75:6,11
  75:12 76:3,5
  77:17,20,21,21
  79:6 80:8
  82:13 83:15
  84:8,20,21
  85:8,21,21
  86:17 87:6,7
  87:22 88:3,5,8
  90:12,13,20,21
  90:22 91:2,4
  92:2 93:12,15
  94:3,14,22
  99:3,17,18
  100:4,18,21
  103:17 104:1,7
  109:11,15
  111:8,19 112:3
  114:2
**knowing** 90:18
**knowledge**
  117:6

**knows** 78:21
**kratovil** 28:12
  28:14 69:1
  85:1 91:22
  102:4,6,7
**kratovil's**
  104:8

**l**

**l** 1:1 22:4 23:3
**labels** 6:6
**lack** 42:22
  55:17,21 68:11
  68:13
**land** 75:4 92:4
  92:5,16
**lanham** 80:19
**large** 39:2
  114:3
**law** 25:16 26:5
  26:11 28:14
  31:20 32:5,19
  35:18 37:16
  42:4 43:17
  51:12 52:8,12
  52:19 53:2,7
  53:12 54:7
  56:3 63:19
  64:3 66:8 69:6
  77:5 79:13
  83:14 84:13
  88:5 89:18
  91:6,10,11
  93:14 95:20

  96:1 98:18,22
  100:13 102:2
  103:1,3 104:16
  105:20 106:15
  106:17 107:3
  108:18 114:21
**law's** 52:15
**lawful** 40:6,6
**lawfully** 34:14
  34:18 50:16
**laws** 26:6 79:8
  79:12 83:15,16
  85:9 87:5
  107:1
**lawyers** 89:2,4
**laying** 36:8
**learn** 77:20
**leave** 78:22
**leaves** 54:6
**left** 55:5 61:10
**legislative**
  26:15 46:5,10
  84:6
**legislators**
  113:10
**legislature**
  26:12,13 46:4
  84:5 86:1 97:2
  102:14 103:20
  106:16 113:9
**legitimate** 44:3
  65:4 67:21
  68:9

**length** 114:1
**lesser** 92:11
**level** 40:13 44:8
  49:11 57:10
  80:22 93:5
**liability** 55:17
  69:10,14 71:7
  72:7,9,10
  73:11 103:2,2
  106:4,17
**liable** 52:1
  69:22 73:4
  104:21
**liaison** 23:11
**license** 89:5
**lie** 90:5
**liens** 96:4,17
**lies** 83:13
**life** 103:17
  104:2
**lighthouse** 20:6
**likely** 78:1
**limited** 8:15
  39:17 58:6
  97:13
**limiting** 58:5
**limits** 112:15
**line** 27:20
  32:15 41:9
  67:11 77:11
  95:21
**lines** 35:12
**liquidated** 54:3
  54:6 70:6 71:8

72:1,5

**list** 20:6 84:12

**listing** 96:22

**lists** 6:6 95:21
96:17

**literally** 38:8
46:4 57:18
107:2

**litigation** 72:4

**little** 44:17 47:4
48:15 67:9
78:6 79:12
83:2,10 90:15

**live** 28:15
79:19 84:19
90:11 93:22

**lives** 28:13 90:6
92:2 102:14
109:13

**llc** 1:9,17 2:6
3:14,15 4:14
5:6,14,15 9:15
10:6,14,15,16
11:14 12:14
14:14 16:6
18:6,7,16 19:6
20:6 22:11
23:2,10

**llp** 22:5,13

**location** 21:13

**logged** 95:8

**long** 35:2 87:20
93:20

**look** 32:16 35:6
49:6 56:18,20
57:14 67:13,22
68:12 75:21
76:10 82:4
83:1 92:10
104:20

**looked** 42:8
80:17,19

**looking** 53:8
82:9

**lose** 89:3 90:9

**lot** 44:7 47:20
85:22 95:6
109:14,14
114:15

**lots** 83:16
101:4

**low** 80:4 104:3

**lower** 33:14

## m

**made** 38:11
42:7 52:7
60:13 65:17,19
65:22 66:1
73:5 89:10
93:3 95:20
106:22 108:6
109:10 113:6

**madness** 83:13

**mail** 26:19 28:6
29:21 32:7
34:4 38:22

63:5 77:11
80:9 82:22
90:20 92:10
101:3,10 115:6

**mailing** 58:9
74:1 84:12

**main** 22:14
41:16,18 78:19
80:7 85:9 90:6
90:11 92:3,3
94:16

**majority** 59:22
66:2 67:4
80:22 81:16

**majority's**
44:22

**make** 29:9
43:17 46:17
47:7 65:22
68:14 73:19,20
73:21 93:12
94:7 98:2
100:15 101:13
102:1,14 103:6
107:20 114:12

**makes** 31:19
34:9 37:5
42:15 49:21
50:3 54:12
59:2 69:6
74:19 85:17
97:4 101:18
102:21,22
107:15 111:7

**making** 42:12
71:1 86:20
89:3 92:16
93:8,9 94:10

**malice** 33:9

**man** 101:6

**management**
10:14,16

**mandatory**
26:13 43:1
53:15

**manner** 37:7
60:15

**maris** 1:2 21:13

**marked** 24:12
24:14

**market** 22:6
23:5

**marshal** 31:21

**marshall** 103:3

**marshals** 84:20

**martin** 84:8

**matter** 26:22
27:6,9,11
29:12 30:8,13
30:18 31:1,3,9
32:8 33:3,11
33:15,22 34:6
34:19,22 38:3
38:16,18 40:20
42:1,2,3 48:3
68:7,17 71:15
71:15,18,21
72:15,15,16

74:9 109:8
115:22
**matters** 26:20
27:7 30:5
40:19 42:5
**mean** 30:12
37:8 50:13
53:20 58:21
59:1 60:13
62:11 63:4
65:1 66:14,20
68:11 71:22
73:21 78:12
79:20 81:4
82:8,10,14
85:15 86:10
88:22 94:19
95:19,22 96:2
101:4,6 112:22
**meaning** 70:11
109:20
**meaningful**
68:3
**means** 42:16
59:15 61:10,15
92:12 97:3
101:1 104:12
108:10 111:11
113:1
**media** 56:10
75:8
**medium** 93:5
**meet** 63:7

**melissa** 9:6
**mens** 26:12
33:8,12,15,16
33:17 42:22
46:18,22 47:2
47:8 48:9,16
53:17 54:4,5
55:7,10,13,17
55:21 56:2,4
64:5 68:12,13
70:5,8 79:2
85:6,8,14,16
101:21,22
103:8,11 104:7
106:8,13,15
**mental** 51:11
51:12,13
**merely** 42:7
52:7,21
**merges.com**
13:15
**message** 60:10
61:12
**messages** 115:7
**metal** 84:20
**method** 34:16
41:17
**methods** 101:5
**michael** 22:4
23:3 76:15
89:8
**michael.zuck...**
23:7

**mike** 25:8
**mind** 65:7
74:16
**mine** 27:7
31:14 56:18,18
56:19 57:1,17
57:18,20 71:3
77:2,4 78:2
113:13
**minimal** 109:22
**minors** 45:10
**minutes** 25:12
105:11
**misremember...**
81:13
**mistaken** 52:16
**mix** 80:11
**mobile** 45:2
**model** 41:7,9
91:12
**moderating**
115:3
**modern** 85:3
**mom** 79:1
**monetizing**
77:7
**month** 35:9
**moody** 57:8
58:3 59:9
65:15 66:1
67:5 114:16,17
115:1,7
**morning** 25:2,7
76:14,17

**mortgage**
95:11 96:4
**mortgages**
95:16,21
**motion** 65:10
65:13 66:4
77:6
**multiple** 89:14
110:7 112:20
**municipalities**
94:15
**murdered**
101:6
**mused** 40:11
**myheritage**
13:6,6

**n**

**n** 1:1,1,1 22:1
23:1 24:1,1
25:1
**name** 25:8 59:5
61:15,20 62:4
62:7,12,14,16
62:17 64:11
89:13 90:21
95:5,9,11
**names** 36:3
64:19 73:3
77:8
**narrow** 45:17
54:20 55:11
56:13 69:4
70:18,18 82:8

95:12 107:18 109:4

**narrower** 47:15

**narrowly** 41:6 41:10,19 42:16 58:12 68:8 72:18 84:22 111:13

**national** 5:15

**natural** 87:4

**nature** 73:1 77:15 82:17

**necessary** 27:16 29:4 30:19,20 73:3 112:1

**need** 28:1 33:12 54:5,10 65:3 73:2 79:1,5 80:16 91:2,19

**needed** 26:16 33:9 104:20

**needs** 36:21

**negligence** 33:13 51:18,20 52:2,21 53:5 54:2 102:5 104:19 105:2

**negligent** 52:18 70:13 86:12 102:19 103:14

**neither** 117:7

**net** 59:10 67:11 79:5

**neutral** 35:8,19 62:1,21 63:1

**never** 87:13

**nevertheless** 100:22

**new** 22:15 23:4 23:14 25:15 26:9,15 31:22 38:5 41:5,21 44:10 46:4,8 46:14 48:13 56:3 58:12 68:4,18 69:5 72:12 76:15 79:12 80:17,18 84:5,7,22 87:7 91:10 92:19 102:3 103:1,2 103:7 104:7 105:1,5 106:6 106:18 110:15 112:1,9,13 113:9 115:13

**news** 75:8,12 92:4

**newsfeeds** 115:4

**newspaper** 52:8,17 75:11 86:15

**newspaper's** 52:18

**newspapers** 75:8,9,12,14 76:6

**newsworthy** 28:22

**nixon** 39:9

**njoag.gov** 23:7

**non** 61:12 96:4 114:6

**normal** 102:18

**normally** 60:12 70:10 90:3 95:5

**note** 43:4 79:7

**notice** 48:12 51:15,17,21,22 52:10 64:7,10 64:14 69:15,17 69:20,20 70:9 70:10,11,21,22 72:11,22 75:14 77:12 85:10,22 86:3,13,18 89:9,18 90:1 91:1 94:3 98:3 99:21 102:11 104:10 114:9

**noticed** 54:3

**notified** 51:18

**number** 27:14 42:20 43:11 47:5,19 48:9 58:13 59:10 60:17 64:1,14

74:7 75:16 82:1 88:13 89:17,20 90:22 97:13 106:22

**numbers** 25:4 27:11,16 28:2 29:14 33:3 57:22 77:9 92:19 111:5

**nuwber** 14:6

**o**

**o** 24:1 25:1

**objective** 68:9

**obscene** 47:5,6

**obscenity** 47:1

**obtain** 98:18 101:2,5

**obtained** 34:14 34:18 42:7 50:5,17 97:16

**obtaining** 34:16

**obviously** 68:17 71:4

**occasion** 102:4

**occupy** 82:18

**occurs** 37:21 115:14

**odd** 66:5 88:21

**offering** 37:20

**office** 23:4 31:21 64:21 76:15 94:5

99:19 113:6
**officer** 27:8
**officials** 25:17
32:3 41:5,12
112:8
**oh** 79:17 88:12
91:18 100:5
103:17 114:14
**okay** 26:1 30:4
33:17 34:12,14
36:4,13 38:5
44:9 45:15,19
47:5,15 48:1
51:10 70:3
72:19 73:16
76:11 109:2
110:9
**old** 84:7 102:18
102:21
**older** 86:6
**once** 88:8
**ones** 77:9 83:20
**online** 73:1
74:21 75:5,9
75:17 92:17
**open** 61:10
**operated** 39:10
**opinion** 66:2
67:4,19 71:13
82:20 104:15
**opinions** 59:11
59:11 63:10
67:4

**opportunities**
94:10
**opportunity**
66:11 68:22
87:6
**opt** 38:22 48:22
49:7,12,22
51:6 99:1
**opted** 98:5,9
110:1
**opts** 49:2 97:22
**oral** 115:21
**order** 40:8 44:3
47:12
**ordinarily** 85:8
103:6
**organization**
57:6 113:16
**organizations**
114:6 115:16
**ought** 43:16
**outcome**
117:12
**outs** 98:13
**outset** 41:11
**outside** 44:12
58:22 100:18
**outweigh** 67:2
67:20
**overbreadth**
95:15 101:14
**overrule** 32:12
114:17,18,19

**oversell** 79:10
**own** 48:22
52:18,19 88:11
88:11 103:22
109:9,19,20
110:6,18
**owner's** 95:5
**owners** 106:14

**p**

**p** 1:1 22:1,1
23:1,1 25:1
**page** 24:2
71:12
**pages** 96:9
**paper** 92:16,22
**paperless** 100:6
**papers** 29:3
106:1,11 108:3
**paragraph**
96:15
**paragraphs**
96:15
**parcel** 92:5
**part** 34:9 49:9
81:7 87:4 92:3
**particular**
29:13 31:11
54:9 60:20
61:7,9 68:7
83:14
**particularly**
37:4

**parties** 78:15
116:1 117:8,11
**party** 40:8 96:3
99:19,21 100:4
100:9 116:1
**passed** 26:6
**past** 75:9,15
**path** 46:14
**paxton** 35:9
44:15 45:7
48:19 80:10,17
81:1,3 111:18
**pearl** 23:13
**penalties** 72:10
**pennsylvania**
21:15 22:7
**penumbra** 39:3
**people** 2:6 28:1
32:11 50:18,19
56:8 60:19,20
61:9 63:20
64:6,8 85:19
90:17 101:4
103:21 108:7
110:22 111:12
111:21 114:4
115:15
**people's** 31:11
36:2 79:9
**percent** 76:21
**perimetria**
87:15
**period** 75:14
115:10

**person**  32:20
  48:6 49:3,16
  50:14 52:14
  57:6,19 60:17
  64:20 77:16,17
  77:18 78:3,3,6
  79:18 84:1
  86:11,20,21,22
  86:22 87:8
  88:17 89:4
  90:6,7,21
  91:17 95:10
  97:5 98:4
  99:18,22 100:2
  100:5 103:15
  107:15,17,21
  108:4 109:9,13
  110:1,2 113:16
**person's**  51:7
  75:16 99:17
**persons**  1:6,14
  2:3,11 3:3,11
  4:3,11 5:3,11
  6:3,11 7:3,11
  8:3,11 9:3,11
  10:3,11 11:3
  11:11 12:3,11
  13:3,12 14:3
  14:11 15:3,12
  16:3,11 17:3
  17:11 18:3,12
  19:3,11 20:3
  20:11 21:3
  93:15

**persuaded**
  101:22
**pertinent**  39:16
**perverse**  88:12
**ph**  52:6
**phelps**  28:20
**philadelphia**
  21:15 22:7
**phone**  27:11,14
  27:14,16 28:2
  29:14 33:3
  47:5,19 48:8
  57:22 60:17
  64:1,1,13
  75:16 77:9
  89:20 90:22
  92:19 111:5
**phones**  45:2
**phrase**  81:2
**physical**  39:22
  75:11
**picketing**  38:21
**picture**  49:19
**piece**  72:5
**place**  37:7 56:6
  60:14
**places**  30:16
**plainly**  74:22
**plaintiff**  59:6
**plaintiffs**  56:11
  108:2
**play**  28:10
**playboy**  114:19

**plays**  27:22
**please**  25:6,8
  59:5 76:16
  79:16 84:11,15
  84:16 87:17
  88:20 93:17,21
  94:6 100:5
  103:16
**plus**  72:3
**podium**  96:13
  96:21
**point**  31:4
  40:15 62:18
  74:1 75:2
  85:16 89:10
  92:5 94:7
  101:14 105:14
  105:18 108:7
  109:10 111:11
  111:22 112:2,6
  114:12
**pointed**  63:3
  64:4 66:5 85:6
**points**  76:20
  78:17 81:5
  85:8,14 93:12
  102:1 105:13
  112:18
**police**  27:8
  42:17
**policies**  52:18
  52:19
**politic**  29:16

**political**  30:19
**pomianek**
  106:7
**pop**  79:1
**position**  43:7,8
  49:2,13 50:11
  56:17 73:18
  112:8,9
**possessor**  40:6
  40:7
**possibilities**
  101:18
**possibility**  82:5
**possible**  39:6
  44:18 84:2
  90:19
**post**  100:6
**posted**  69:21
  113:2
**posting**  56:9
  58:10,11
**posture**  77:7
  80:3
**potential**  43:2
  70:19 73:12
**power**  112:15
**powerless**
  112:14
**pre**  80:16
**precedent**
  28:20 80:19
  81:3 83:14
  84:3

**precedents**
35:17 44:4
71:17
**precise** 102:5
103:14 104:6
106:7
**precisely** 45:20
**prefilled** 82:22
**premises** 60:15
**prepare** 116:2
**prepared** 117:3
**prescriber** 61:4
**presence** 51:6
**presents** 67:17
**press** 86:15
92:14
**presumably**
45:1
**presumed**
30:17 44:16
71:14
**pretty** 80:12
**prevent** 42:17
46:19
**preventing**
84:18
**previously**
75:10 108:9
**primarily**
102:15
**principle** 32:7
32:13
**printed** 75:11
75:13

**prior** 87:10
**privacy** 1:4,12
2:1,9 3:1,9 4:1
4:9 5:1,9 6:1,9
7:1,9 8:1,9 9:1
9:9 10:1,9 11:1
11:9 12:1,9
13:1,10 14:1,9
15:1,10 16:1,9
17:1,9 18:1,10
19:1,9 20:1,9
21:1 22:2 25:4
36:15,16 37:13
37:19 38:3,7
38:15,15,20
39:2,19 42:4
50:2 79:13
80:6 82:11,12
82:14,17 83:8
83:12,16,20
87:5 91:11
94:6 105:16
106:21 107:1,1
107:3,5,7,11,12
109:7 110:4
111:2,10
**private** 29:12
32:15 33:11
34:1,22 36:19
37:17,18,18,21
37:22 38:1,6
38:18 42:3
87:16 100:7
107:18

**privilege** 25:10
39:12,13
**privity** 100:10
**probably** 76:8
77:21 95:2
96:12 97:11
99:15 100:12
**probative**
104:10
**problem** 46:1
53:17,18 54:21
55:11 56:13
67:5 71:4 72:6
79:11,22
108:11 109:4
110:1
**problems** 55:16
56:7 84:8 85:4
88:2 107:19
**procedural**
65:7
**proceed** 25:6
**proceeding**
116:7 117:4
**proceedings**
117:6
**process** 87:20
88:7 95:10
108:8
**processes** 66:10
**product** 31:19
113:4,5
**products** 4:14
36:3

**profit** 114:6
**program** 73:2
**programmers**
73:2
**prohibition**
57:21
**prohibits** 32:19
57:5 58:9,10
58:10
**property** 94:18
98:12 109:15
**propertyradar**
15:15
**prophylactic**
85:17
**proprietorship**
114:9
**proprietorships**
114:5
**prosecute** 32:1
**prosecutors**
31:22
**protect** 32:3
47:8 65:21
110:4
**protected** 34:1
43:3 45:11,13
47:21 48:18
49:4,14 50:12
51:5,7 55:2
115:3
**protecting**
25:17 39:7,22
41:12 43:22

44:19 101:15
**protection**
111:2
**protections**
36:7
**protective**
64:22
**protects** 42:4
47:1,2
**prove** 73:7,15
88:13
**provide** 42:20
64:13 87:11,14
114:9
**provided** 64:11
96:14
**provides** 32:2
94:4 113:8
**providing**
64:21 77:8
93:11 110:12
**provision** 42:22
71:8 106:8
**provisions** 49:1
**prurient** 37:20
**public** 25:17
26:3,20,21,22
27:6,9,11,22
28:7,10,12,18
28:22 29:20
30:5,9,10,12,13
30:17,18 31:2
31:3,10,18
32:3,8,9 33:1,3

33:15 34:6,14
34:18,19,21
36:19 38:4,17
40:12,14,19,21
41:12 43:22
52:11 60:1,1
68:7 71:16,19
71:21 72:16,17
111:6 112:8
**publication**
26:3 112:7
**publicly** 27:17
74:17 75:3
99:1 110:22
113:2
**publish** 102:7
108:20 112:22
**published**
102:10
**publishes** 31:19
86:15
**publishing** 8:18
25:10 49:14
**punish** 40:5
**punished** 48:4
**punishes** 42:11
**punishment**
55:18
**punitive** 51:14
54:4 55:5
71:14
**purely** 37:20
45:12

**purpose** 39:5
83:15 102:5
**purposes** 43:14
**pursuant** 98:12
99:6,8
**put** 51:16 56:6
84:15 85:18
86:14 92:21
111:9
**puts** 32:14,14
**putting** 84:7

**q**

**qualitative**
93:2
**quantum** 3:14
3:15
**question** 28:12
31:9 33:6
39:19 41:4,11
45:17 47:16
50:9 51:11
60:6 61:3
62:18 65:7
75:2,7,18 96:5
98:2 99:11
102:2 104:17
105:19,21,21
110:8 113:20
**questionable**
115:5
**questions** 25:19
59:21 72:20
85:7 101:21

105:13,16,17
107:13 114:16
**quickly** 78:22
**quite** 66:17
77:22 79:10,22
80:4,4 88:12
90:19 91:16
103:20 104:21
**quoting** 32:7

**r**

**r** 22:1 23:1,11
25:1
**rails** 97:18
98:16
**raise** 66:4,15
105:2
**raised** 85:16
**rape** 28:4
**rare** 78:22 79:4
103:2
**rather** 29:1
88:8
**ratification**
80:16
**rcx** 24:7
**rdx** 24:7
**rea** 26:12 33:8
33:12,15,16,17
42:22 46:18,22
47:2,8 48:9,16
53:17 54:4,5
55:7,10,13,17
55:21 56:2,4

64:5 68:12,13
70:5,8 79:2
85:6,9,15,16
101:21,22
103:8,11 104:7
106:8,13,15
**reach** 61:5
**read** 32:6 51:14
53:3 58:14,21
68:19 96:7
97:1 105:6
**ready** 25:5
**real** 44:13
46:22 86:11
88:18 98:11,12
99:7,13,14,19
100:10 114:8
**realistic** 82:5
**really** 40:12
54:13 75:4,19
77:1 78:21
80:6 83:9,21
85:20 89:5
90:7 92:1
93:18 95:14
100:7 103:17
111:10
**reason** 27:18
32:20 35:22
41:22 50:21
57:7 59:20
60:22 63:17
78:16 99:12
102:9

**reasonable**
37:18 38:2,6
66:9 72:4 74:2
74:12 104:22
**reasonably**
86:1 103:20
**reasons** 52:3
56:2,14 72:11
**rebuttal** 25:12
59:4 105:11
**recall** 54:7
75:12 81:16
**receive** 69:19
69:20 72:22
99:5
**received** 70:13
98:3 102:11
**receives** 77:12
114:9
**receiving** 99:7
**recent** 35:4
64:3
**recently** 41:9
68:4
**recipient** 91:1
**reckless** 55:6
**recklessly** 55:7
**recklessness**
55:9
**recognize**
38:19
**recognized**
27:15 29:4

**record** 26:15
30:11,12,17
38:4 46:5,10
64:16 67:22
68:11 78:18
94:20 116:3,6
117:5
**recording**
117:4
**records** 75:4
92:16 93:1
94:17,18 96:17
98:12 108:4,8
**recover** 56:9
**recoveries**
56:12
**redact** 94:6
95:9 111:9
**redacted** 89:22
95:11,17
**redaction**
107:15
**redressability**
79:11,22
**reed** 60:13
114:18
**refer** 63:2
**reference** 9:15
95:19 96:7,14
96:21
**references**
75:15
**reflects** 81:7

**reg** 87:7
**regarding**
97:15 111:14
**regardless**
50:21 111:15
**regime** 26:17
**regimes** 79:21
106:5
**regions** 94:14
**relate** 60:9
**related** 61:12
75:2 83:6
117:7
**relatedly**
113:13
**relationship**
49:17
**relative** 117:10
**relevant** 69:2
74:7 75:22
**relief** 53:6,8,13
**relinquishing**
94:9
**remaining**
97:12
**remedy** 107:21
**remember**
66:18 67:18
**remind** 70:2
**remove** 64:12
64:20 75:15
**removed** 26:11
84:1

| | | | |
|---|---|---|---|
| **renew** 77:18 | 56:4 68:13 | **restoration** | 37:10,11 38:19 |
| **reno** 111:20 | 69:15 70:5,8,9 | 9:14 | 39:1 42:1 |
| **repealed** 26:12 | 104:10 106:13 | **restrict** 26:3 | 43:22 44:6 |
| **report** 30:3 | 106:15 107:16 | 40:6 112:7 | 46:15 51:13 |
| **reporter** 52:17 | **requirements** | **restricted** | 52:15 60:17 |
| **reporters** 74:18 | 102:13 107:14 | 113:20,21,22 | 62:2,6 65:9 |
| 92:14 | 107:14 | **restriction** 37:2 | 66:20 69:18 |
| **reporting** 30:9 | **requires** 79:13 | 37:4 45:4 55:1 | 73:16 75:8 |
| **reports** 30:5 | 91:13 100:19 | 55:19 57:12,21 | 76:17 82:8,10 |
| **represent** 25:9 | **requiring** | 60:4,6 85:20 | 82:12 87:3 |
| 59:6 | 73:14 97:5,5 | 113:19 114:20 | 92:8 93:16 |
| **republishes** | **reread** 81:11 | 115:14,17 | 96:13,20 97:7 |
| 38:10 | **research** 5:6 | **restrictions** | 97:9,13 99:11 |
| **request** 49:21 | **reserve** 25:12 | 60:8 | 102:3 103:22 |
| 50:4 86:20 | **reserved** | **restrictive** | 105:4 110:4 |
| 91:17 94:11 | 105:10 106:19 | 92:12 104:12 | **rights** 94:10 |
| 107:15,21 | **residence** 48:8 | 108:10 | **risk** 45:13 |
| **requests** 65:3 | **respect** 36:9 | **restricts** 115:10 | 104:3 109:21 |
| 78:15 | 41:3,21 48:14 | **result** 107:20 | 109:22 110:5 |
| **require** 33:16 | 52:19 55:15 | **reticulated** | **risking** 35:12 |
| 52:15 53:7 | 60:2 65:6 88:1 | 93:8 | **rocketreach** |
| 79:8 80:15 | 105:19 106:21 | **return** 112:20 | 14:14 |
| 87:11 89:18 | 110:10,14 | **returning** | **rockwell** 12:6 |
| 108:18 | 111:6 112:18 | 113:4 | **rodie** 117:2,15 |
| **required** 33:9 | **respectfully** | **reuters** 8:14,15 | **role** 27:21 |
| 46:11,12 48:10 | 69:5 | 8:16 25:9 | 28:10 |
| 87:13 103:14 | **respond** 84:14 | 31:19 113:4 | **roles** 39:15 |
| 107:12 109:1,3 | **responded** | 114:3 | **rolls** 94:18 |
| **requirement** | 72:22 | **review** 68:17 | **room** 86:15 |
| 33:13 42:22 | **responding** | **revisions** 64:3 | 111:19 |
| 47:13 48:9 | 51:21 84:13 | **reyes** 115:11 | **rowan** 38:19,22 |
| 51:15 52:6 | **response** 44:7 | **richard** 23:6 | 84:9 110:1,10 |
| 53:1,6 55:4,7 | 44:22 85:9 | **right** 31:17 | **rule** 33:20 36:9 |
| 55:17,21 56:3 | 92:13 | 33:2,21 34:20 | |

**run** 27:8 31:14
45:13 56:18,19
56:19 57:1,17
57:18,20 71:3
77:2,4 78:2
83:11 101:2
113:14
**running** 89:2
**runs** 112:11

**s**

**s** 1:1,1 22:1
23:1 24:1,11
25:1 31:21
38:9 113:6
117:14
**sacrifice** 43:11
43:16
**safe** 99:9
101:11
**safety** 4:14
25:17 31:18
41:12 44:19
110:17
**sake** 83:4
**salas** 101:6
**sample** 90:1
**san** 28:20
**sanction** 47:12
**sanctioning**
38:10
**sanctity** 83:21
**saved** 37:14
99:14,15

**saw** 95:19
**saying** 26:21
27:7,10 29:8
29:10 30:4
43:4 44:2,6
50:19 51:5
64:19,21 67:12
79:22 82:11
86:2 88:19
92:15 112:13
112:14 113:2
**says** 29:2 35:5
48:10 50:5
58:18 59:14
61:5 66:2
67:19 70:21
79:16 81:3
84:15 93:15
95:17 97:3,16
98:18 100:5
108:14 111:18
111:19
**scalable** 5:14
**scale** 76:6
**scheme** 86:6
93:8
**schiller** 22:13
23:12
**schrader** 42:13
63:4 107:4
**schwab** 82:21
**scienter** 52:6
53:1 55:15
102:13

**scope** 54:18
72:20 75:7
**scrutiny** 27:3
35:3,15,17,20
36:1,21 37:11
40:13,21 41:3
44:16 55:20
56:1 57:10
60:21 63:2,3,6
63:13 80:13,22
81:12,15,22
82:3,13 83:11
107:2,5,8
115:8,18
**se** 51:18 52:3
52:21
**seal** 87:21
**searchable**
92:22 95:5,7,9
**searchbug**
16:14
**searchers** 2:6
**searches** 95:3
**searching**
74:21
**second** 42:11
55:18 65:14
78:16 88:9
106:21 110:14
**section** 95:20
97:15
**sections** 98:20
**sectors** 30:6

**security** 88:13
110:17
**see** 32:4 49:7
63:10 66:22
73:16 75:10
**seem** 34:2
49:13
**seemed** 35:2
39:5 64:18
**seems** 36:14
39:2,4,5 47:3
48:21 72:1
81:22 89:5
90:8 114:15
**selling** 36:3
77:8
**sells** 101:9
**sending** 48:7
**sends** 96:16
**sense** 28:7 68:3
80:14 97:4
102:21,22
103:7
**sent** 64:19
70:12 99:21
100:3
**separate** 33:17
91:10 94:9
99:12 104:15
**separately** 97:1
**servant** 28:13
**servants** 26:4
26:21 43:22

served  45:6
    103:13
serves  43:22
service  31:21
services  32:2
    57:1 65:1
serving  43:9
session  25:3
set  28:11,21
    52:11 53:10
    70:18,18
sets  111:1
setting  36:12
    71:20
several  56:10
    108:2
severed  54:3,8
    54:11 71:9,22
sex  83:17
shady  92:4
share  93:20
    99:16,17 100:1
sharing  100:20
shaw  23:11
shift  93:2
shop  79:1
show  33:9 53:1
    78:18 104:20
showed  36:5
shown  108:2
side  63:16 76:6
    85:7 95:14
sidebar  116:5

sign  84:15
    87:11
signature
    117:14
significance
    32:9,10,15
    33:1 34:19
significant
    29:15,15,18
signs  84:14
silence  103:10
    105:3
simple  78:20
simplest  97:11
simply  30:2
    95:21 113:2
single  94:4
situation  68:6
    70:20 71:1,16
    75:1 81:21
    86:13 103:19
    106:7 111:4
    115:1
situations  92:1
    106:14
skills  117:6
slightly  79:21
    85:13
small  62:13
smarty  18:6
smartystreets
    18:6
smith  46:20
    47:11 80:8

89:15 90:21
smiths  89:14,17
    90:10
snyder  28:20
    37:8 38:14
    39:20 83:8
social  56:10
    88:13
society  27:16
    29:4
software  106:2
soil  102:18,21
sole  114:4,8
solely  113:22
solicitation
    84:11,14
solutions  6:14
solve  55:11
somebody
    49:21 70:21
    73:14 107:20
    110:12 111:3,7
somebody's
    37:21 61:12
someone's
    93:19
son  101:6
sorrell  61:2,10
sorry  54:14
    61:17 89:16
    98:1 100:5
sort  56:22
    78:14 82:10
    84:6 87:21

90:13 93:7
    94:7,13 95:18
    100:19 101:17
    102:12
sorts  83:6
sounds  78:14
    82:11 90:12
source  104:2
sources  94:17
south  23:13
southern
    115:12
space  82:18
    86:5
spahr  22:5 25:9
speak  39:15
speakers  61:7
    90:17
speaking  25:11
    48:3 67:13
special  97:6,7,9
species  103:1
specific  26:8
    27:13 33:8
    54:4 78:14,15
speech  29:13
    30:1 33:22
    34:10 35:9
    37:5 38:10
    40:1,2,20 43:2
    43:3,20,21
    44:3,17,20
    45:3,5,8,13,14
    47:13,20 49:15

50:12 51:7
52:22 55:1,2
55:18,19 61:4
83:6 90:16
104:4 107:18
110:13 111:12
114:20 115:10
115:14
**split** 85:2
104:11 116:2
**splitting** 107:10
**spoken** 106:7
**spread** 43:14
**spy** 19:14
**square** 61:14
61:18
**stage** 46:2
65:14 66:4
**stamp** 43:19,21
**stamped** 45:14
**standard** 26:12
28:21 52:3
68:19,19
**standpoint**
74:12
**stands** 48:13
**star** 26:19
27:20 28:4,6
29:21 30:13,15
31:2 32:7 34:3
34:12,19 52:4
52:9,11 63:5
77:11 80:9
86:14 92:10

**start** 38:12
76:19 85:15
**started** 112:3
**state** 26:3
44:10 51:11,12
51:13 61:6
83:11 86:4
92:20 94:4,14
102:1 104:16
105:20
**statement**
103:3
**states** 42:20
53:11 58:13
83:16 112:12
113:18
**statute** 26:8
35:22 39:5
41:6 44:16
46:6,8 48:5
50:19 54:10
55:16,22 56:1
56:15 57:4,5,7
57:20 58:16
59:1,16 61:3
68:8,20 70:1,5
70:7,9 72:13
72:21 73:4,9
73:14,20 75:7
76:9 78:13,16
87:10 93:7
96:8 101:3,8
101:16 102:20
105:7 107:5,11

107:11,16
109:6,7 112:9
113:15,21
115:2,9
**statute's**
103:13
**statutes** 50:2
106:3 107:7
**statutory** 73:10
74:10,11
100:15 102:11
103:10 105:2
**steering** 85:19
**step** 72:17
83:22 88:7,9
108:19
**steps** 108:4
**stevens** 41:2
**stop** 43:13
92:12 94:5
108:16
**story** 92:4
**streamline**
66:10
**street** 22:6,14
23:5,13 90:6
90:11 92:3,3
**strict** 27:3 35:3
35:14,16,19
36:1,21 37:11
40:21 41:3
44:16 55:17,20
55:22 60:21
63:3,6,13 69:9

69:14 71:7
72:6,9,10
80:13 81:22
82:3,13 83:11
103:1 104:10
106:4,16 107:2
107:4,8 115:8
115:18
**strike** 69:10
78:16
**striking** 56:14
**strong** 102:12
**strongest** 35:1
**strongly** 59:18
65:15
**struck** 55:22
56:1 106:3
115:18
**structure** 93:13
102:12
**struthers** 84:9
**stuck** 66:1
**stuff** 32:16
44:22 92:7,11
108:20
**sub** 96:15
**subject** 37:11
40:21 57:19
**submit** 77:4
78:5
**subsection**
96:16 99:4
**subsections**
98:19 106:9

**substantially**
67:1,20
**successful** 73:8
**sudden** 86:16
**sue** 111:11
**sued** 114:4
**sufficient** 52:20
52:22
**suggest** 36:18
43:15 63:7
69:5 79:10
97:1
**suggested** 86:7
**suggests** 95:14
**suit** 86:16
**suite** 22:14
**summary** 77:19
78:18 94:20
**support** 84:3
**supposed** 56:20
90:2 108:16
**suppress**
107:17
**suppressing**
35:12
**suppression**
82:6
**supreme** 28:19
30:7 35:2,10
40:4,22 42:14
44:14 46:12,18
46:20 57:8,13
58:2 59:10
61:2,10 68:4

71:18 74:17
80:12 85:1
102:3,16 104:7
105:1,5 106:6
110:2 114:17
**sure** 40:12
44:10 46:17
68:4 74:5
79:18,19 81:6
93:4,8,9 98:2
99:4
**survive** 55:19
**suspect** 77:18
95:2
**suspected**
91:22
**synaptix** 11:14
**system** 53:10
93:8 94:12
**systems** 4:6
18:15

**t**

**t** 1:1,1 24:1,1
24:11
**tactical** 65:17
65:22
**tailing** 55:11
107:19
**tailored** 41:6
41:10,18 42:16
43:10 58:13
68:8 72:18
84:22 100:13

101:7 111:14
**tailoring** 32:22
44:1,5 45:17
54:20 56:13
63:15 69:4
80:1 109:4
**take** 28:16 41:3
52:15 65:3
68:5 71:22
72:5 73:3 79:8
79:14,17 84:11
85:13 86:22
87:6,17,22
88:20,22 89:9
91:2,13,19
100:12 102:21
103:16 108:4,7
108:15,19
115:22
**taken** 51:19
90:2 117:9
**takes** 87:20
**talk** 28:6 36:13
39:4 61:8
63:15 79:2,3
83:19 102:4,9
**talked** 34:13
46:15 48:17
54:13 59:7
**talking** 27:6
28:13 38:14
40:18 46:16
49:19 50:13,14
52:12 54:1,19

54:20 55:12
63:12 70:17
74:20 90:15
106:12
**target** 113:15
**technological**
77:12
**technology**
11:14 78:17
86:5 114:2
**tell** 44:11 48:6
48:7,8 56:17
57:17 77:16
81:8 92:4
93:22
**telling** 63:18
**tells** 44:4 79:5
80:12 82:17
96:16
**ten** 51:16 70:14
**term** 51:13
**terms** 27:19
28:9 47:8
92:18
**terrorize** 84:16
**test** 29:20 63:6
63:7
**tests** 63:5,8,11
**tethered** 48:11
**tethering** 48:12
**text** 57:4 81:7,9
102:11 115:2
**thank** 25:14
59:3 76:12,13

105:8,9,12
115:20,20
116:5
**theoretically**
96:6
**theory** 81:6
89:1
**thin** 96:19
**thing** 28:5
34:17 41:18
42:9,21 46:17
101:19 104:5
**things** 34:13
36:6 40:18
41:21 43:1
68:15 74:8,15
78:5 97:13
100:18,21
101:12 111:1
**think** 32:12
34:4 39:18
40:9 41:16,20
43:20 44:6
47:17 49:6
53:19,20 54:9
59:2 60:5,10
60:22 61:10
62:5,8,11,13,17
63:1 65:6,14
66:15,17 67:16
68:15 69:9,13
70:10,15,16
71:12,17 72:8
72:10,14 73:8

73:12,17 74:2
74:11 75:18,20
76:1,7,7,9,18
76:21 78:1,12
78:17 79:3,7,9
80:3,6,7,9,13
81:7,10 82:3
82:15,16,17
83:12,13 84:4
84:5,21 85:3
85:12 86:7,9
87:3,4,17 88:2
88:5 89:6,11
90:7,11 91:6,9
91:12,18 92:13
93:11 94:19
95:2,13 96:3,9
96:10,19,22
99:6,14 100:8
100:12,17,19
100:20 101:1
101:12,16,18
102:3,11 103:9
103:20 104:7,8
104:18 105:1,3
105:10 107:10
108:6 110:7
112:21
**thinking** 83:9
**thinks** 97:2
**third** 40:8
42:21 88:15
99:19 100:9
111:6

**this's** 60:6
**thomas** 81:11
**thomson** 8:14
8:15,16 25:9
31:18 113:4
114:2
**thought** 33:15
55:13 75:19
81:11
**thousand** 51:2
72:3
**thread** 40:18
**threat** 32:2
40:8 46:22
47:6,7 85:22
**threats** 32:4
85:20
**three** 41:20
43:8,12,17
44:12
**tied** 114:16
**time** 21:11 35:2
37:7 42:14
46:11,12 51:20
59:17 60:14
67:8 83:11
102:13 112:4
114:11
**times** 112:20
**title** 93:8 97:6
97:10
**today** 25:10
111:21 113:12

**together** 43:1
116:1
**told** 87:1
**took** 55:14
**tool** 85:17
**tools** 77:13
78:20 88:15
**topic** 60:9
**topics** 76:18
**tort** 36:15,16
36:21 38:7,15
40:17 83:12
86:16 102:20
103:3
**torts** 37:13
38:15 39:2
80:6 82:12,12
82:17 83:6,8
83:20
**total** 38:20
99:20 102:21
**totally** 102:17
**town** 60:13
**trade** 43:7,12
44:5,13
**trademark**
62:13 82:9,19
111:18
**trademarks**
35:6 36:9
**tradeoff** 43:9
43:11,13 44:1
**tradeoffs** 46:16

**tradition** 36:11
36:14 39:3,6,7
40:18 80:19
81:2,3 84:3
**traditional**
38:7
**traditionally**
60:21
**traditions**
39:13
**trafficking**
83:18
**tranches** 77:8
**transaction**
34:9
**transcriber**
117:1
**transcript**
116:2 117:3,5
**transmitting**
115:6
**transplanted**
106:10
**trap** 104:9
**treat** 30:8
**treated** 35:7
96:18
**treating** 97:2
**trial** 21:9
**tried** 65:20
**tripping** 52:21
**trouble** 52:8
78:2 89:16

**true** 70:15 71:5
83:13 84:8
85:20 87:6
101:16 117:5
**trump** 62:13
**truthful** 32:8
**try** 26:18 27:20
93:5 95:14
96:20 101:5
**trying** 34:4
39:14 50:10
88:5 91:15
94:1 100:7
**tuesday** 21:10
**turn** 107:11
**two** 34:13
39:18 43:12
44:6,7 55:16
56:14 63:4
68:15 72:11
74:15 77:14
78:11,17 86:2
88:2,7,9 90:10
93:12 102:1
112:17
**type** 34:5 74:1
77:11 103:2
**types** 39:13

| u |
|---|

**u** 31:21 38:9
113:6
**uh** 49:20 58:8
64:17 98:7,10

98:14 109:17
112:5
**unanswerable**
45:18,22 46:3
**uncertainty**
91:7
**unconstitutio...**
25:16 36:22
37:14 44:17
52:5 56:22
66:8,12 67:1
67:14,20 68:14
69:11 76:4
114:21 115:19
**under** 28:19,20
32:19 33:9
37:16 41:5
44:16 48:5
55:7 56:8
59:17 65:12
67:8 69:22
71:17 73:4
86:6 95:22
107:16 111:14
112:16 115:22
**understand**
34:5 50:10
51:17 77:6
86:9 92:18
93:2,13 94:8
98:2
**understanding**
77:2 78:19
80:15 90:3

**understandings**
94:8
**understood**
80:4 86:1
**unethical** 89:2
**unique** 36:2
82:18 90:13
**uniquely** 77:16
**unlisted** 27:14
63:22 92:19
**unprecedented**
38:9
**unprotected**
45:9,11 48:18
**unpublished**
48:9 57:22
64:13
**unredacted**
97:7,8 99:1,5,8
**unsure** 48:2
**unusual** 28:11
40:5
**unwanted**
110:3
**unwary** 104:9
**updating** 84:6
**upheld** 45:4
**urge** 85:2
104:11
**usa** 13:7
**usage** 61:20
**use** 32:11 36:2
44:21,22 49:13
57:1 61:15

88:16 101:4
**used** 28:17,22
  31:20 41:17
  81:2 86:6
**useful** 29:8
**uses** 56:19
**using** 111:12
**usual** 57:9
**usually** 26:22
  31:1 85:16
**utah** 115:12

<b>v</b>

**v** 1:1,8,16 2:5
  2:13 3:5,13 4:5
  4:13 5:5,13 6:5
  6:13 7:5,13 8:5
  8:13 9:5,13
  10:5,13 11:5
  11:13 12:5,13
  13:5,14 14:5
  14:13 15:5,14
  16:5,13 17:5
  17:13 18:5,14
  19:5,13 20:5
  20:13 21:5
**vacation** 69:19
  70:22
**valid** 86:3
**validation**
  88:10
**validity** 78:13
**valuable** 29:10
  29:11 30:6

**value** 29:2,7
  77:10 104:4
**various** 26:5
**vast** 54:11
  59:22 74:22
**vastly** 113:17
**venture** 21:6
**verification**
  45:3 64:22
  78:7 86:19
**vermont** 61:3,6
**version** 25:15
  103:7
**versions** 87:10
**versus** 25:5
  28:20 35:5,9
  48:18 60:13,15
  66:7,12 67:14
  76:4 80:8,10
  80:17,18 82:21
  84:9 92:14,16
  103:4 104:16
  115:10
**victims** 83:17
  83:17
**vidal** 35:5,21
  61:15,19,21
  62:19 80:9,19
  80:22 81:1,11
  81:13,19 82:2
  82:8 111:17,19
**video** 41:2
  106:2 111:2

**view** 72:20
  110:5
**viewed** 72:14
**viewpoint** 35:8
  35:18,19 62:1
  62:21,22
**violated** 52:17
  99:22
**violating** 52:7
  59:17 64:9
**violation** 42:8
**violative** 106:3
**violence** 83:17
**virtue** 94:10
**vite** 100:6
**volitional** 51:19
**voluntary**
  48:22 49:12
**vote** 62:20
  82:21
**voter** 9:15
  94:17
**voterrecords....**
  11:15
**votes** 81:12
  82:2
**voting** 82:21
**vppa** 50:1
**vulnerable**
  84:19

<b>w</b>

**wait** 88:6

**walmart**
  104:16
**want** 32:9
  45:16 46:16
  50:6 59:7
  70:16 72:19
  77:21 79:2,3,7
  79:10 80:5
  85:15,19 88:6
  88:7 90:2
  91:20 92:2
  93:2,12 96:10
  101:19 102:1
  108:15 110:4
  112:20 114:11
**wanted** 102:7
**wants** 78:8
  87:18 96:17
  101:1 110:5
**warning** 52:14
**warren** 36:15
**washington**
  80:10
**waterfall** 94:13
**waterfront**
  88:8
**way** 29:10,17
  30:13 32:11
  35:4,11 43:6
  43:22 45:4
  48:5,6,8 58:12
  69:3,6 72:12
  83:13 84:21,22
  86:8 97:11

113:11

**ways** 112:13

**we've** 63:13
89:17 106:1
108:2

**web** 32:3

**website** 50:7

**weeds** 93:7

**weeks** 44:15
68:22 77:14
86:2

**weigh** 43:10,15
66:7 67:15,18
67:18 68:2

**weighing** 67:10
76:3

**went** 56:3
103:15 114:1

**west** 8:17 25:10

**whatsoever**
26:15 50:21
58:1 113:3

**wide** 85:19

**willful** 55:6,9

**willfully** 55:6

**wine** 84:7

**wire** 52:21

**wisconsin** 41:9
42:19

**witness** 24:7

**witnesses** 24:9

**word** 102:15

**words** 67:6
73:19

**work** 58:5 85:3
85:22 93:9
116:1

**world** 86:11
88:18

**worried** 94:2

**worry** 93:19

**would've** 44:21

**wrap** 114:13

**write** 73:2
102:14

**written** 56:4
86:3

**wrong** 34:22
96:6

### x

**x** 1:3,11,19 2:8
2:16 3:8,17 4:8
4:16 5:8,17 6:8
6:16 7:8,17 8:8
8:20 9:8,17
10:8,18 11:8
11:17 12:8,16
13:9,17 14:8
14:16 15:9,17
16:8,16 17:8
17:16 18:9,18
19:8,16 20:8
20:16 21:8
24:11 90:6
115:10

### y

**y** 1:1

**yardi** 4:6

**yeah** 35:10
50:16 61:21
85:12 95:18
100:17

**year** 59:9

**years** 48:10
58:3

**york** 22:15
23:14 80:17,18
115:13

### z

**zanetich**
104:16

**zeros** 77:9

**zillow** 7:14,14

**zone** 85:19

**zuckerman**
23:3 24:5
76:14,15 78:11
81:5,18 82:15
84:4 85:12
87:3,13 89:10
89:21 91:8
93:4 94:19
95:1,7,18 96:2
97:20 98:1,7
98:10,14 99:3
99:12 100:17
103:9 105:8,9
105:15 107:1

108:6 112:21
113:13 114:1
116:4

**zuckerman's**
89:8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system on July 22, 2025.

I hereby certify that I caused three copies of the foregoing to be sent via Overnight mail to the Clerk's Office of the United States Court of Appeals for the Third Circuit at 21400 United States Courthouse, 651 Market Street, Philadelphia, PA 19106-1790.

Dated: July 22, 2025

*/s/ Adam Shaw*
Adam Shaw
**BOIES SCHILLER FLEXNER LLP**
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

*Counsel for Appellees*